```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
 2                         NORTHERN DIVISION

 3    CHELSEA GILLIAM, et al.,          )
                                        )
 4              Plaintiffs,             )
           vs.                          )
 5                                      ) CIVIL NO.:
      DEPARTMENT OF PUBLIC SAFETY AND   ) 1:23-cv-01047-MJM
 6    CORRECTIONAL SERVICES, et al.,    )
                                        )
 7              Defendants.             ) VOLUME III (Excerpt)
      _____)

 8

 9                                         Baltimore, Maryland
                                           December 1, 2023
10                                         10:19 a.m.

11                     TRANSCRIPT OF PROCEEDINGS
               MOTIONS HEARING EXCERPT - COURT'S RULING
12              BEFORE THE HONORABLE MATTHEW J. MADDOX
                          Via Videoconference
13
      For the Plaintiffs:
14
           JESSICA P. WEBER, Esquire
15         LAUREN A. DIMARTINO, Esquire
           SHARON K. WEISBAUM, Esquire
16         EVAN MONOD, Esquire
             Brown Goldstein and Levy LLP
17           120 E. Baltimore Street, Suite 1700
             Baltimore, MD 21202
18
           DEBORAH M. GOLDEN, Esquire
19           The Law Office of Deborah M. Golden
             700 Pennsylvania Ave. SE, 2nd Floor
20           Washington, DC 20003

21    For the Defendants:

22         KELLY M. DONOHO, Esquire
           MERRILYN E. RATLIFF, Esquire
23           Office of the Attorney General
             6776 Reisterstown Road, Suite 313
24           Baltimore, MD 21215

25    Also Present:  Chloe Grey
           (Computer-aided transcription of stenotype notes)
```

1              P R O C E E D I N G S

2        (Excerpt from December 1, 2023 Motions Hearing)

3              THE COURT:  All right.  So moving forward, currently

4    pending is a motion by the plaintiff, Chloe Grey, for temporary

5    restraining order or preliminary injunction.  That motion is

6    opposed by the defendants in this case.  The motion is fully

7    briefed and each of the parties have attached several exhibits

8    to their briefs.  At the plaintiff's request, an evidentiary

9    hearing was scheduled, and we have just concluded that hearing

10   which began last week.  During the hearing, each of the parties

11   presented additional evidence and testimony and provided oral

12   arguments for their respective positions.

13              I note at the outset that the hearing was not one in

14   which the Federal Rules of Evidence strictly applied.  For that

15   I'm going to cite Supreme Court case *University of Texas v.*

16   *Camenisch*, 451 U.S. 390, from 1981.  There's also the Fourth

17   Circuit case, *Grimm v. Gloucester County School Board*, 822 F.3d

18   709, Fourth Circuit case from 2016.  There's also District

19   Court of Maryland cases on the same issue.

20              Furthermore, I recognize that the parties have not

21   had a full opportunity to conduct meaningful discovery in this

22   case as of yet.  For these reasons, I will emphasize here that

23   the findings of fact that I'm about to make will be made solely

24   for purposes of deciding the pending motion, and those findings

25   and my decision on the matter will be made without prejudice to

1   any later motion, trial or other court proceeding.

2          Now making these findings has required me to resolve

3   certain controversies in the evidence that's been presented

4   here, including material inconsistencies potentially between

5   the testimonies of different witnesses.  Any credibility

6   determinations I have made are based on having sat for and paid

7   attention to the presentation of the evidence at this hearing

8   which was conducted by video teleconference and reviewed the

9   parties' exhibits attached to their briefs, and I've also noted

10  impeachment of some of the witnesses presented here.  With all

11  of that said, I'll make the following findings.

12          On the plaintiff, Ms. Grey is a transgender woman

13  with gender dysphoria and other mental health disorders and a

14  feminine appearance, serving a life sentence in the custody of

15  the Department of Public Safety and Correctional Services, and

16  she's serving that sentence for the murder of two women.  Her

17  biological sex at birth was male.

18          Gender dysphoria is a disability and a serious

19  medical condition due in part to the risk of suicide,

20  autocastration and negative emotional presentation.  Pain and

21  suffering and suicidality are associated with gender dysphoria,

22  and gender dysphoria has been treated and addressed in medical

23  interventions like hormone therapy, sex reassignment surgery,

24  facial hair inhibition and what's been termed as social

25  transition.

1          The plaintiff has an individualized treatment plan to

2   address not just the gender dysphoria but potentially other

3   medical conditions that she is contending with.

4          In 2017 the plaintiff was incarcerated at the

5   facility WCI, and in December of 2020 she began her transition;

6   the plaintiff began her transition while still housed at WCI.

7   In March of 2021 the plaintiff was diagnosed with gender

8   dysphoria.  In December of 2021 the plaintiff began hormone

9   treatment and has since developed breasts, decreased muscle

10  tone and strength, shrunken and sexually nonfunctional external

11  genitalia, and less facial hair and less body hair.

12         I understand that the standard of care for the

13  administration of hormone therapies specifically requires

14  consistency.  Missed doses can have serious consequences for a

15  patient, including what Dr. Lowell described as an accelerated

16  menopause, mood swings, dysphoric feelings, spikes in blood

17  pressure, increased blood flow and functionality of male

18  genitalia which can, in turn, result in worsening dysphoric

19  feelings.

20         At some point, the plaintiff wrote to the warden at

21  WCI to request placement at a women's facility, having suffered

22  from sexual harassment and threats from male prisoners at that

23  facility.  Plaintiff also contends that she was sexually

24  assaulted at WCI and was placed on administrative segregation

25  following that for approximately one month.

1          Around late April, early May of 2023, the plaintiff

2    submitted an ARP complaining about her placement in a male

3    institution and requesting transfer to a women's institution.

4    She was told to speak with a staff member at WCI who rejected

5    the request, and I understand that there may have been some

6    expression of animus or animosity towards transgender persons

7    in that denial.  She never withdrew that request.

8          In late July of 2023, the plaintiff submitted an ARP

9    complaining about discrimination at WCI, including slurs

10   against transgender persons.  She never withdrew that complaint

11   either.  She was told that it was not enough information

12   provided in that complaint and -- [audio gap] -- specific

13   examples in order for it to be investigated, and ultimately it

14   was found unfounded by the department.

15         In late July of 2023 also, the plaintiff was

16   prescribed facial hair inhibitor cream, but in the following

17   month it was determined that that inhibitor cream was no longer

18   available in the United States or the prescription ceased at

19   that point.  Plaintiff contends that she never received that

20   treatment cream.  But some evidence was presented during the

21   course of this hearing to suggest that there are comparable

22   products on the market on an open counter basis.

23         On September 7, 2023, the plaintiff was placed at

24   Patuxent Institution on the male Georgetown University tier to

25   participate in an education program there.  She was not

1   assigned a cellmate at that point, but she was told that

2   assignment of a male cellmate was being contemplated or

3   planned.  She then requested to share a cell with a cisgender

4   male inmate, Scott Brill, who also had been transferred from

5   WCI.  She contends that Brill was the only male inmate that she

6   felt safe sharing a cell with.  She has referred to Brill as

7   her husband and does not dispute that there was some form of

8   sexual relationship between her and Mr. Brill.

9          On September 8 of this year, Assistant Warden Stewart

10  received a request from the plaintiff and Mr. Brill to share a

11  cell, and she also received information regarding their sexual

12  relationship and on that basis denied the request.  Indeed she

13  contended that it would have been negligent or incompetent on

14  her part to have granted such a request given the potential

15  risk that sexual relationships present to inmates' safety

16  including risk of nonconsensual sex or sexual assault.

17         The plaintiff requested again to be housed -- the

18  plaintiff then requested to be housed alone if not housed with

19  Mr. Brill, and Assistant Warden Stewart approved that request

20  on a temporary basis.  According to Assistant Warden Stewart,

21  the plaintiff never made any request to be placed on the

22  women's tier of Patuxent Institution, and no evidence has been

23  presented to suggest that that request was made to A.W.

24  Stewart.  Actually insofar as the plaintiff claims she made

25  that request to A.W. Stewart, I find A.W. Stewart's testimony

1   on that matter to be more credible.

2          I understand that in mid September 2023, there were

3   issues surrounding the Georgetown University program involving

4   the plaintiff and there were some discussions between Assistant

5   Warden Stewart and the plaintiff about her involvement in that

6   program.  And in connection with that, the plaintiff made

7   allegations about being on the receiving end of abusive

8   language and slurs at Patuxent, and A.W. Stewart spoke to the

9   tier about those allegations and made admonitions against the

10  mistreatment that the plaintiff had claimed that she was

11  suffering from.

12         Also around that same time, the plaintiff signed for

13  a 30-day supply of Estrace.  And she also signed for a 30-day

14  supply of Aldactone.

15         Assistant Warden Stewart, toward the end of

16  September, contacted a mental health professional so that the

17  plaintiff could be seen based upon complaints that she had

18  made, and an arrangement was made for her to meet the social

19  worker, Ms. Decker, at Patuxent.  The plaintiff reported to

20  Ms. Decker that she had been assaulted at WCI but did not

21  provide specific information about those assaults.  The matter

22  was referred for investigation, but ultimately the plaintiff

23  decided not to pursue those allegations.

24         And then the plaintiff complained to Assistant Warden

25  Stewart that she was being sexually harassed and threatened

1   with violence by male inmates, but she did not provide specific

2   details -- or specific enough details about those instances in

3   order for it to be investigated.  And, in fact, later on I do

4   recall seeing written statements by the plaintiff indicating

5   that she had not been threatened, that she didn't have concerns

6   about being threatened or any danger that she faced among the

7   male population at Patuxent.

8          It sounds like on a serial basis, Assistant Warden

9   Stewart denied requests that plaintiff had made to be housed

10  with Mr. Brill.

11         In late September 2023, the plaintiff met with

12  counsel regarding potentially joining this lawsuit.

13         Around October 7, 2023, the plaintiff signed for

14  another 30-day supply of Estrace.

15         On October 13th, a confidential informant reported a

16  disciplinary infraction by the plaintiff, specifically sexual

17  contact between the plaintiff and a cisgender male inmate whose

18  last name is Bell, and there was also a report that the Muslim

19  community there at Patuxent was upset about what was perceived

20  as an act of disrespect through that encounter.  According to

21  the plaintiff, that allegation was false.

22         The investigation of the matter revealed rumors about

23  potential retribution or retaliation by Brill or members -- and

24  members of the Muslim community against Mr. Bell or the

25  plaintiff, and it also revealed that rumors about sexual

1    encounter between the plaintiff and Bell were believed -- was

2    conducted into whether or not a sex act had indeed occurred and

3    whether or not it was not consensual.

4              At that point the plaintiff was placed in

5    administrative segregation for her protection which was I

6    understand to be the ordinary response, and at that point her

7    medications were taken, medications that she had in her

8    possession on a keep-on-person basis pursuant to prison

9    policies.

10             The plaintiff reports uncomfortable conditions while

11   in administrative segregation and she also reports

12   inconsistencies in her receipt of hormone treatment during that

13   time period.  Unfortunately, the cameras on that tier are

14   nonfunctional, so there's been no camera or surveillance

15   evidence presented in this case one way or the other to address

16   the dispute between the parties about how consistent the

17   medical treatment has been.

18             The plaintiff also contends that she was denied

19   access to educational materials from the time that she entered

20   segregation.  It does appear that based upon the testimony of

21   Assistant Warden Stewart that the plaintiff had access to

22   recreation and also access to the day room, showers multiple

23   times per week, medical services, pens, papers, a tablet,

24   access to the educational materials as those materials became

25   available from Georgetown University.

 1            Plaintiff contends that she was subject to random

 2    strip searches during her time in administrative segregation

 3    and following her legal visits with her counsel.

 4            In mid October of 2023, the plaintiff was sexually

 5    harassed by a male inmate named Williamston who exposed his

 6    penis and demanded oral sex.  He was permitted to leave his

 7    cell apparently because he was on a sanitation detail.  The

 8    plaintiff called for assistance but claims that there was no

 9    response.  A few days later -- the next day the plaintiff

10    refused a PREA assessment according to the affidavit submitted

11    by Dr. Jerkins.

12            The day after that on October 17, the administrative

13    segregation review team met to discuss plaintiff's status on

14    that administrative segregation and decided to continue her on

15    administrative segregation pending the investigation about the

16    threat to her safety due to the rumor surrounding whether she

17    had had sex with Bell during a Muslim service.  The plaintiff

18    reported to the social worker, a Ms. Decker -- had reported the

19    encounter with Mr. Williamston during a meeting with

20    Ms. Decker, and that matter was then referred for

21    investigation.

22            On October 20, 2023, a disciplinary infraction as to

23    the assault by Williamston on Ms. Grey was found to be

24    unfounded after -- I'm sorry.  The assault as to the -- any

25    alleged assault between the plaintiff and Mr. Bell was found to

1    be unfounded due to those two individuals declining to pursue

2    charges.  But the plaintiff remained in segregation according

3    to the department because of a rumor about whether or not those

4    two individuals had sexual contact, and that's a matter that

5    remained under investigation at the time.  Around that same

6    time, Mr. Bell was released from segregation.

7            Around the same time, an investigation of any sexual

8    assault against the plaintiff at WCI was closed when the

9    plaintiff stated lack of interest in pursuing those charges.

10           On October 24, Captain Carter met with the plaintiff

11   about her complaints.  At that point according to his document,

12   there was a denial that there was -- denial by the plaintiff

13   that she had been denied writing implements and lack of

14   access -- there was no complaint about being denied writing

15   implements or lacking access to razors at that point in time,

16   and she also, according to Captain Carter's report, denied --

17   confirmed that she had access to pens and paper and a tablet

18   and showers, but she reported that she was still retaliated

19   against and made other complaints about missing documentation

20   and having been placed on administrative segregation.

21           On October 30, the plaintiff was given access to a

22   packet of Georgetown University program school work, and this

23   reportedly was the first packet that was submitted by

24   Georgetown University since the time she had entered

25   administrative segregation.  The plaintiff was strip-searched

1    after a legal visit that she had with her counsel on

2    October 30, but apparently that's a routine procedure at the

3    facility.  On that same date, plaintiff's counsel made a

4    request to defendant's counsel that the plaintiff be

5    transferred to a women's general population facility.

6            In early November, plaintiff contends that a heater

7    was directed at her cell and turned up.  I understand this is a

8    disputed issue, but plaintiff testified that this situation

9    made the cell unbearably hot.  Also around this same time

10   there's no dispute that she missed a dose of Estrace.

11           Dr. Jerkins testified earlier today that blood work

12   conducted in October showed normal levels of estrogen, but it's

13   unknown when in October that blood work was conducted.  No

14   witness has been presented who observed the plaintiff receiving

15   her hormone medication on a consistent basis.

16           Another dose of Estrace was missed on the following

17   day on November 2nd, but Estrace administration was resumed on

18   October 3rd.  Plaintiff contends that this was the first time

19   that she had received Estrace since the time that she entered

20   administrative segregation.

21           Around that same time, Assistant Warden Stewart

22   learned that the alleged sexual encounter between Mr. Bell and

23   the plaintiff did not occur during a Muslim service but during

24   an AA meeting.  Plaintiff contends that she was denied access

25   to razors during this time period and hair started to grow

1    back, and she was not allowed to shave.

2          Two days later, Patuxent officials determined that

3    the plaintiff was aware of the identity of the confidential

4    informant that had reported her alleged conduct with Mr. Bell.

5    The plaintiff indicates in those messages a potential intent to

6    retaliate based upon information received from the internal

7    intelligence department in a recorded phone contact between the

8    plaintiff and other individuals.

9          Patuxent's officials also learned that the plaintiff

10   and Mr. Brill passed messages to each other through a third

11   party which would be a disciplinary infraction.  These were

12   messages about sex, about money transactions, about gang

13   activity, and also at least veiled threats against the

14   confidential informant, discussion about gang leaders and other

15   matters that raised concerns in light of the observations by

16   Brill that the confidential informant was still breathing,

17   quote/unquote.  So based upon that, a decision was made not to

18   return the plaintiff to general population due to a risk of

19   retaliation by either the plaintiff or Mr. Brill against the

20   confidential informant.

21          Around that same time Georgetown University provided

22   the second packet of school work that was conveyed to the

23   plaintiff.

24          Now on or around the date that the plaintiff had a

25   legal visit around November 8 or November 9 of 2023, she

1   contends that she was pushed down a flight of stairs while in

2   handcuffs, maybe not a full flight of stairs but several steps,

3   and that her face was pushed against the wall and that she was

4   groped and received threats from correctional officers.

5          Also around the same time period, there was a

6   reported incident in the yard, in the recreation yard where the

7   plaintiff was allegedly asking other inmates to expose

8   themselves and offering sexual favors.  A violation allegation

9   was made at that point in time, and an investigation was

10  conducted.  Assistant Warden Stewart observed at least part of

11  this incident but did not observe all of it.

12         Plaintiff was then strip-searched and allegedly there

13  was indication of the plaintiff reaching for possible

14  contraband which is the reason for the strip search.  There

15  was, I believe, testimony offered that the strip search may

16  have lasted about five minutes.

17         The plaintiff also again had a legal visit on that

18  date around 10:20 a.m.  Some issues were raised during the

19  course of this hearing about the implausibility of the timing

20  here.  As to the department's position on the events in the

21  yard and the circumstances of the strip search, I don't find

22  that the timing is implausible based upon the evidence that was

23  presented here, and I do find that the events are -- the events

24  surrounding the strip search are consistent with them having

25  potentially happened before the legal visit.  The plaintiff did

1    complain about the strip search, but a written complaint was

2    not completed.

3           On November 10, the plaintiff was served two

4    infraction notices about her use of the tablet to convey

5    messages and about sexual solicitation during the yard

6    incident.  The plaintiff demanded to be allowed to file a PREA

7    complaint, and she also made allegations about the assault that

8    she contends occurred the day before.

9           She refused to be seen by medical staff at Patuxent,

10   was transferred to Mercy for a safe evaluation, and during that

11   evaluation some bruising was found around her left breast.

12   When she was returned to the facility, the nursing notes at the

13   facility did not reflect any indication of sexual assault.

14   There was no indication that anyone from the facility or anyone

15   from the department reviewed the medical records from Mercy.

16          On November 11 the plaintiff alleged that she was

17   denied hormone therapy and received only one meal that day, and

18   she contends a course of retaliatory actions, including the

19   denial of the hormone treatment, from that date forward.

20          On November 15, the plaintiff received disciplinary

21   hearings on impending infractions and was found in violation of

22   having made the three-way messages and having engaged in that

23   way in sexual conduct but was not found liable for any threats.

24   She was sanctioned with 50 days in disciplinary segregation,

25   the loss of a phone or tablet for 30 days, and I understand

1   that she remains in disciplinary segregation to this date.

2           The defendant Brill was found guilty of threats and

3   misuse of the tablet.  However, he was not -- he did not face

4   any charges surrounding the sexual solicitation that had

5   allegedly occurred in the yard.

6           There may be other factual findings that I make in

7   the course of my ruling on this matter which I will now turn

8   to.  So as I understand it, various forms of injunctive relief

9   are being requested by the plaintiff in this case, including

10  consistent treatment for the hormone medication that the

11  plaintiff has been prescribed, ceasing of retaliatory actions,

12  and transfer to a women's institution.

13          The purpose of a temporary restraining order or

14  preliminary injunction is to protect the status quo and to

15  prevent irreparable harm during the pendency of a lawsuit and

16  ultimately to preserve the Court's ability to render a

17  meaningful judgment on the merits.  It should not be availed to

18  secure a piecemeal trial.  This holds especially true in cases

19  involving prisoners challenging the conditions of their

20  confinement where judicial relief is further limited by the

21  Prison Litigation Reform Act which states that a Court shall

22  not grant or approve any prospective relief unless the Court

23  finds that such relief is narrowly drawn, extends no further

24  than necessary to the correct the violation of the federal

25  right, and is the least intrusive means necessary to correct

1    the violation of the federal right.

2            The Court is also required to give substantial weight

3    to any adverse impact on public safety or the proper

4    administration or operation of the criminal justice system.

5            There are four factors to be considered when deciding

6    to grant preliminary injunctive relief: the likelihood of

7    irreparable harm to the plaintiff if the preliminary injunction

8    is denied, the likelihood that the plaintiff will proceed on

9    the merits of her claims, the balance of the equities and the

10   public interest.

11           The Fourth Circuit has held that the authority of the

12   district court to issue an injunction should be sparingly

13   exercised.  A mandatory preliminary injunction may not preserve

14   the status quo and normally should be granted only in those

15   circumstances that the exigencies of the situation demand such

16   relief.

17           To address likelihood of irreparable harm, the

18   existence of irreparable harm is a prerequisite to the issuance

19   of injunctive relief.  The irreparable harm that the plaintiff

20   would suffer should the Court deny injunctive relief must be

21   both actual and immediate.  That the plaintiff may have

22   suffered past injuries is not enough to rise to the level of

23   irreparable injury.  A higher standard of irreparable injury is

24   applied in situations where courts traditionally give

25   deference.

1              I do believe that the plaintiff has demonstrated

2      likelihood of irreparable harm should her hormone therapy not

3      be administered on a consistent basis as she has testified has

4      been prescribed to her.  But I believe the plaintiff has failed

5      to establish the likelihood of irreparable harm that would

6      result if she is not transferred to a facility designated for

7      women.  The plaintiff has claimed a need for social transition

8      in the form of a transfer to a women's facility as a sort of

9      treatment for gender dysphoria.  Dr. Lowell's testimony has

10     been offered to support this claim.  I'm not persuaded by that

11     testimony.

12             I find more credible and compelling the indication in

13     the department's gender dysphoria policy that gender dysphoria

14     as a diagnosis calls for individualized treatment, based upon

15     consultation with the inmate's treating psychiatrist and other

16     service providers, as well as experts on mental health

17     treatment in correctional settings.  Additionally, the DOJ PREA

18     Prison and Jail Standards rule provides that agencies must make

19     individualized determinations about how to ensure the safety of

20     each inmate and to make determinations on a case-by-case basis

21     whether a placement at a facility designated for the

22     transgender inmate's gender identity would ensure the inmate's

23     health and safety and whether such a placement would present

24     management or security problems.

25             Dr. Lowell has not examined, treated or provided

1   services to the plaintiff and is not offered as an expert on

2   mental health treatment in correctional settings.  The

3   plaintiff has presented no evidence that social transition has

4   been prescribed to her by a medical profession who has examined

5   her, and I do not find that social transition in the form of

6   transfer to a women's facility is medically necessary to the

7   plaintiff based upon the record in front of me.

8          However, irreparable harm would likely result if the

9   department fails to make an individualized assessment regarding

10  her housing placement, including whether it should place the

11  plaintiff in a women's facility and whether social transition

12  is medically necessary for her.

13         The department's policy on gender dysphoria is

14  designed to "diagnose, treat and manage inmates diagnosed with

15  gender dysphoria in a manner consistent with appropriate

16  treatment, custody and security standards."  If the policy is

17  not followed in the plaintiff's case, it could pose serious

18  risks to her personal health and safety.  Following this policy

19  is necessary to ensure the plaintiff's health and safety.

20         The plaintiff has alleged additionally alarming

21  physical abuse by members of correctional staff at Patuxent

22  Institution, including an incident in November of 2023

23  regarding being pushed down steps and being assaulted and

24  threatened.  I am not sure that the alleged abusers were

25  specifically identified in the plaintiff's testimony.  It does

1    not appear the department has completed its investigation of

2    that matter.  However, plaintiff's testimony at this juncture

3    is sufficient to establish a likelihood of irreparable harm in

4    the absence of injunctive relief, given that the plaintiff in

5    her current placement likely remains accessible to her alleged

6    abusers.

7              Assuming her allegations to be true as she has

8    testified, I do not find the transfer to a women's tier or

9    women's facility would redress the concerns of physical abuse.

10   I'm speaking specifically about the women's tier at Patuxent

11   because allegedly the alleged abusers also work there.

12   Placement at MCIW may provide redress, but there may be more

13   narrowly drawn alternatives to ordering her to be transferred

14   to MCIW at this time.

15             Moving on to likelihood of success on the merits, the

16   complaint in this case has set forth several claims, several

17   bases, several legal grounds for relief.  Taking them one by

18   one, at Count 4 there is a claim made under § 1983 for an

19   Eighth Amendment failure to protect allegation, based upon the

20   defendants having disregarded the safety risk by placing the

21   plaintiff with male inmates.

22             This 1983 claim calls for a two-part test.  First,

23   there must be a serious deprivation of the plaintiff's rights

24   in the form of a serious or significant physical or emotional

25   injury or a substantial risk thereof.  This is an objective

1   inquiry.  It requires the Court to assess whether society

2   considers the risk that the prisoner complains of to be so

3   great that it violates contemporary standards of decency to

4   expose anyone unwillingly to such a risk.

5          Second, the plaintiff must establish that the prison

6   official had deliberate indifference to the inmate's health or

7   safety, and that requires actual knowledge of an excessive risk

8   to the plaintiff's safety.  The defendant must be aware of

9   facts from which the inference could be drawn that a

10  substantial risk of serious harm exists, and the defendant must

11  also draw that inference.  However, prison officials who

12  actually knew of a substantial risk to inmate health or safety

13  may be found free of liability if they responded reasonably to

14  the risk.  And for all of that, I would rely upon the Fourth

15  Circuit case *Raynor v. Pugh* at 817 F.3d 123, a decision from

16  2016.

17         So I do not find a likelihood of success on the

18  merits of this claim at this stage of the litigation.  The

19  plaintiff has failed to make a showing that the defendants had

20  actual knowledge of an excessive risk to her safety by placing

21  her on the male Georgetown U tier at Patuxent adequate to

22  demonstrate a likelihood of success on the merits of that claim

23  in Count 4.

24         To the contrary, when the defendants -- meaning the

25  facility, the officials at Patuxent became aware of the safety

1    risk that would be posed by the plaintiff being among other

2    inmates at Patuxent, the defendants elected to keep her in

3    administrative segregation to protect her on a temporary basis.

4    Over at least one -- or perhaps even multiple complaints that

5    were made by the plaintiff disclaimed any threats against her

6    or dangers that she faced among the general male population at

7    Patuxent.

8           Next on Count 5 which is a 1983 claim, Eighth

9    Amendment failure to provide medical care.  That claim is based

10   upon the defendant having refused to give the plaintiff hormone

11   therapy and disregarded her health risk that would attend that

12   refusal.  The Eighth Amendment's prohibition on cruel and

13   unusual punishment imposes duties on prison officials to

14   provide adequate medical care.  To establish a deliberate

15   indifference claim, the plaintiff must demonstrate that the

16   defendant prison official acted with deliberate indifference to

17   the plaintiff's serious medical needs.  That's both a

18   subjective and an objective component.  There must be a serious

19   medical condition that needs to be addressed, and that's one

20   that's been diagnosed by a physician as mandating treatment or

21   it's so obvious that even a layperson would easily recognize

22   the necessity for a doctor's attention.

23          The defendant acts with deliberate indifference if he

24   had actual knowledge of the plaintiff's serious medical needs

25   and the related risk but nevertheless disregarded them.  Once

1    prison officials are aware of a serious medical need, they need

2    only respond reasonably to the risk.  The prisoner does not

3    enjoy the constitutional right to treatment of his or her

4    choice so long as the medical treatment provided is adequate.

5    The treatment must be given and must not be so grossly

6    incompetent, inadequate or excessive as to shock the conscience

7    or to be intolerable to fundamental fairness.  And for that --

8    well, one additional point.

9         To establish liability based upon a delay in medical

10   treatment, a plaintiff must show deliberate indifference to

11   serious medical needs that resulted in substantial harm.  I'm

12   citing a case called *Lowe v. Johnson* which is a Fourth Circuit

13   case from earlier this month -- actually at the beginning of

14   November.

15        So I do find the likelihood of success on the merits

16   of this claim at this stage of the litigation.  I've been

17   presented with evidence of the plaintiff through her testimony

18   having received inconsistent and spotty hormone therapy and

19   having made complaints to prison officials at Patuxent based

20   upon that deprivation which would establish the defendant's

21   actual knowledge.  Now I understand this is a disputed matter

22   but the only competent evidence that I had in front of me was

23   that the hormone therapy had been intermittent and

24   inconsistent.

25        Moving on to Count 6 which is the Section 1983 claim

1    for cruel and unusual punishment under the Eighth Amendment.
2    That's based upon the defendants having placed the plaintiff in
3    administrative segregation based on her transgender status and
4    in retaliation and having disregarded that risk.
5          Like any Eighth Amendment claim, an Eighth Amendment
6    claim against conditions of confinement has both objective and
7    subjective opponents.  To satisfy the objective prong, a
8    plaintiff inmate must demonstrate that the deprivation alleged
9    was objectively and sufficiently serious.  To be sufficiently
10   serious, the deprivation must be extreme, meaning that it poses
11   a serious or significant physical or emotional injury resulting
12   from the challenged conditions or a substantial risk of serious
13   harm resulting from exposure to the challenged conditions.
14         To satisfy the objective prong, the plaintiff must
15   demonstrate that the prison officials acted with deliberate
16   indifference and that the official knew of and disregarded
17   excessive risk to inmate health or safety.  I'm citing the case
18   *Porter v. Clarke* which is at 923 F.3d 348, Fourth Circuit case
19   from 2019.
20         I do not find a likelihood of success of merits on
21   this claim at this stage of the litigation.  The plaintiff
22   failed to make an adequate showing that her confinement in
23   segregation has posed objectively sufficiently serious or
24   extreme risk to her health or safety.  Notably, the plaintiff
25   testified that she wished to be placed in the women's facility

1    or the women's tier even if it meant being placed in

2    segregation, suggesting that segregation itself does not carry

3    an extreme risk of health or safety.

4              There is one caveat to this finding, however.  There

5    is the matter of about whether or not excessive heat has been

6    directed to the plaintiff in her cell while in segregation.

7    The plaintiff contends that is a condition that's ongoing.  I

8    believe that the evidence is too incomplete from my purposes to

9    really make any ruling on that.  I believe that I can address

10   that through requiring further testimonial statements from

11   prison officials at Patuxent about the status of that heater.

12             Beyond that, beyond the heater issue, as to the

13   subjective prong, the plaintiff failed to make an adequate

14   showing that the defendants were aware but disregarded an

15   excessive risk to her health or safety.  Moreover, the Court is

16   disinclined from second-guessing the defendant's decision to

17   place the plaintiff in administrative segregation in the

18   circumstances of this case.  She was placed in segregation

19   apparently for legitimate security and safety-related reasons,

20   and the department has engaged in regular deliberations

21   regarding whether she should remain in segregation and made

22   apparently reasonable decisions to keep her in segregation for

23   the period that she was there before she was placed in

24   disciplinary segregation.

25             Turning to the next claim, Count 7, Section 1983, sex

1   discrimination.  That is based upon the defendants having

2   housed the plaintiff with male inmates in spite of her gender

3   identity and having risked sexual assault and the defendants

4   having denied medical treatment.  The Equal Protection Clause

5   under the Fourteenth Amendment keeps governmental decision

6   makers from treating differently persons who are in all

7   relevant respects alike.  So to state a claim for a violation

8   of this clause, the plaintiff must plausibly allege first that

9   she has been treated differently from others with whom she is

10  similarly situated and that the unequal treatment was a result

11  of intentional, purposeful discrimination.

12          She must also plausibly allege that disparity was not

13  justified under the appropriate level of scrutiny.  And to

14  account for unique health or welfare concerns in the prison

15  context or the court's review of a plaintiff's challenge to a

16  prison decision or policy is more demanding because courts

17  accord deference to the appropriate prison authorities.  Under

18  a deferential standard, the prisoner must allege disparate

19  treatment was not reasonably related to legitimate penological

20  interests.  The factors to be considered in making this

21  determination by the Court include the fact that there must be

22  a valid rational connection between the prison regulation or

23  the prison action and the legitimate governmental interests put

24  forward to justify it.

25          Second, a Court must consider the impact that an

1   accommodation of the asserted constitutional right will have on

2   guards and other inmates and on the allocation of prison

3   resources generally and, third, the absence of ready

4   alternatives is evidence of the reasonableness of a prison

5   regulation.  For that I'm citing *Fauconier v. Clarke,* 966 F.3d

6   265, a Fourth Circuit case from 2020.

7           Additionally, claims of gender discrimination are

8   analyzed under a heightened judicial standard of level of

9   scrutiny typically called intermediate scrutiny.  However,

10  prison inmate's rights under the Equal Protection Clause may be

11  subject to restrictions that are reasonably related to a

12  legitimate penological interest.  I'm citing *Wilson v. United*

13  *States*, a case out of the Southern District of West Virginia,

14  332 F.R.D. 505, and also *Veney v. Wyche,* 293 F.3d 726, a Fourth

15  Circuit case from 2002.  When equal protection challenges are

16  raised in the prison context, courts must adjust the level of

17  scrutiny to ensure that prison officials are afforded the

18  necessary discretion to operate their facilities in a safe and

19  secure manner.

20          I do find the likelihood of success on the merits of

21  this claim insofar as the department has failed and continues

22  to fail to conduct the individualized housing assessment it now

23  claims it's conducting.  Now the department's gender dysphoria

24  policy calls for a case-by-case assessment of whether

25  transgender inmates should be placed in facilities designated

 1  for their gender identity, and that appears to be reasonably

 2  related to legitimate penological interests.  There's a valid

 3  rational connection between the policy and interest in safety,

 4  interest in treatment of a person's gender dysphoria, and the

 5  Court recognizes there's reasons that assessment needs to take

 6  place for persons with gender dysphoria because -- for various

 7  reasons, including safety to other inmates at either

 8  facility.

 9          Now the plaintiff's requested accommodation to be

10  placed at a women's facility may have a significant impact on

11  correctional personnel and other inmates and on the allocation

12  of prison resources generally, and that is the reason why the

13  policy must be followed.  And there is an allegation in this

14  case -- in fact, I think all the evidence showed that that

15  assessment has not yet taken place even though the plaintiff

16  has been -- had previously asked to be placed at a women's

17  facility when she was placed at WCI.  But I find that the

18  deference due the prison officials in the context of a prison

19  case warrants giving them an opportunity to make the assessment

20  without the judicial mandate as to what the outcome of that

21  assessment should be.

22          Finally as to the last two counts, the ADA

23  discrimination claim and the Rehab Act, Section 504 disability

24  discrimination claim, those claims are based upon a denial of

25  medical services again, placement of the plaintiff in

1   administrative segregation, defendant's failure to modify its

2   housing policies to accommodate the plaintiff, and the

3   defendant's placement of the plaintiff in administrative

4   segregation in retaliation for complaints that she had made and

5   for consulting attorneys.

6          Title II of the ADA provides that no qualified

7   individual with a disability shall by reason of such disability

8   be excluded from participation in or denied the benefits of the

9   services, programs or activities of a public entity or be

10  subjected to discrimination by any such entity.  Section 504 of

11  the Rehabilitation Act provides that no otherwise qualified

12  individual with a disability shall be solely, or by reason of

13  her own disability, excluded from participation in or denied

14  the benefits of or be subjected to discrimination under any

15  program activity receiving federal financial assistance.

16         In general, a plaintiff seeking recovery for a

17  violation of either statute must allege first that she has a

18  disability; second, she is otherwise qualified to receive

19  benefits of a public service program or activity; and, three,

20  that she was excluded from participation or denied benefits --

21  discriminated against on the basis of her disability.

22         Although the ADA and the Rehabilitation Act

23  generally are construed to impose the same requirements, they

24  do have different causation standards that I recognize.  For

25  all of this, I'm citing *Constantine v. Rectors and Visitors of*

1    *George Mason University*, 411 F.3d 474, Fourth Circuit case from

2    2005.

3            States are obliged to make reasonable modifications

4    to enable a disabled person to receive the services or

5    participation that they would otherwise receive in various

6    programs and activities.  The public entity is obligated to

7    make those modifications that do not fundamentally alter the

8    nature of the service or the activity of the public entity or

9    impose an undue burden.  For that I'm citing *Miller v. Hinton*,

10   Fourth Circuit case from 2008, although unpublished, is

11   288 F.App'x 901.

12           Now as to the retaliation claim, there's three

13   elements of prima facie case of retaliation under the ADA:

14   that the plaintiff engaged in protected conduct, that she

15   suffered an adverse action, and that a causal link exists

16   between the protected conduct and the adverse action.

17           For the first element, the plaintiff must also show

18   that the defendant had actual awareness that the plaintiff was

19   engaged in protected activity.

20           For the second element, an adverse action is defined

21   as significant detriment or one that might well have dissuaded

22   a reasonable individual from making or supporting a charge of

23   discrimination.  That's an objective fact-specific inquiry.

24           The third element is that the plaintiff must show a

25   but-for relationship between the adverse action in the

1  protected activity, and a close temporal relationship will give

2  rise to a sufficient inference of causation to satisfy the

3  prima facie requirement.  However, once a prima facie case of

4  retaliation is made, the burden of proof shifts to the

5  defendant to provide a nonretaliatory justification for having

6  taken the adverse action.

7          I find some degree of likelihood of success on the

8  merits of these claims.  The plaintiff has made a showing that

9  she was excluded from specifically medically necessary

10  treatment, and there was also a failure to conduct an

11  individualized housing assessment and that there were

12  expressions of animus that she received at least from WCI and

13  continuing into Patuxent with regards to the medical treatment.

14  Animus towards transgender persons were made in connection with

15  her contacts with certain staff while she was being denied

16  these benefits.

17          Now as to any retaliation, retaliation associated

18  with at least being placed in administrative segregation, I do

19  note that the defendants have proffered a nonretaliatory

20  justification for that placement.  I don't think the plaintiff

21  has made an adequate showing that that justification is

22  pretextual, but her complaints go beyond simply placement in

23  administrative segregation and include the denial of medically

24  necessary services as well as failure to make an individualized

25  housing assessment.

1          Turning to the balance of the equities, I note that

2     the plaintiff has asserted several claims of injuries,

3     including continued alleged abuse at the hands of correctional

4     staff, continued denial of medical services and medical

5     treatment, and also increased dysphoria by being placed in a

6     male facility; I do think that the balance of equities favor

7     some form of injunctive relief here.  The plaintiff's claims of

8     injury I note are depriving the department of its use of its

9     own discretion in making its decisions with respect to the

10    housing of the plaintiff.  However, I don't find that the

11    injunctive relief that I am contemplating at this point would

12    deprive them of that discretion.  In fact, it would require

13    them to exercise that discretion in making an individualized

14    housing assessment.

15          Turning to the public interest, there is a public

16    interest in ensuring the health and safety of prison inmates

17    irrespective of their status with respect to gender dysphoria

18    or any disability or medical condition or their status as

19    either cisgender or transgender.  There's also a public

20    interest in ensuring that any special medical or mental health

21    needs that transgender or gender dysphoric inmates have, any

22    needs that they have are met and satisfied while they are

23    incarcerated.

24          Also for the defendants, I recognize public interest

25    in the safe administration of the prison system.  There's also

1   a public interest in leaving to prison officials and treating

2   medical service providers the determination of whether it is

3   appropriate to place a transgender or gender dysphoric inmate

4   in the facility allowing for their gender identity.  There's

5   also a public interest ensuring that courts are not enmeshed in

6   the minutiae of prison operations.

7           So the conclusion I have come to based upon that

8   analysis is to grant some form of injunctive relief here, so

9   the motion will be granted in part.  That injunction will be

10  directed toward ensuring that the department conducts the

11  individualized housing assessment that it has claimed through

12  its counsel here today that it is already under way and has

13  already started to conduct.  I will provide a time limitation

14  for that assessment subject to any request for extension for

15  good cause; that assessment must take place within the next 30

16  days.

17          There will also be an injunction to ensure that

18  Ms. Grey receives consistent hormonal treatment as she is

19  prescribed.  I do have concerns about ensuring verification as

20  far as this goes because I don't want to be back here every

21  week based upon every dispute regarding every day of treatment

22  where Ms. Grey is claiming she has not received something that

23  the department contends she received.  So I believe that the

24  most practicable way to effectuate that verification process is

25  to ensure that a department employee or official records the

1    administration of each hormone treatment.  That I imagine has

2    to be conducted on a daily basis, perhaps even twice a day.

3         I am concerned about the accessibility of Ms. Grey's

4    alleged abusers to her while she's at Patuxent.  I understand

5    this is matter the department still has under investigation,

6    and I imagine they have already undertaken to identify who

7    those alleged abusers are and to make sure they have no contact

8    with the plaintiff but I'm going to back that up with a court

9    order.  So there will be injunctive relief to ensure that there

10   is no contact between Ms. Grey's alleged abusers, meaning the

11   correctional staff who are alleged to have assaulted her and to

12   have groped her for which there is medical evidence to support

13   and substantiate her claims, have no access to Ms. Grey pending

14   further order of the Court.

15        Now when I say pending further order of the court is

16   that I understand that this is a matter that the department is

17   investigating.  If the department wants relief from this

18   injunction, they'll have to ask for it and it may be that

19   they'll have an opportunity to present evidence to determine --

20   or to support the notion that Ms. Grey's allegations are

21   unfounded.

22        Finally, there will be an injunction that the

23   department conduct a case-by-case individualized housing

24   assessment for Ms. Grey to determine whether or not she should

25   be placed at a women's facility.  I think I've already touched

1    on that so I may be repeating myself on that regard.

2            As to the heater issue which is the sole basis upon

3    which I find an intolerable condition in segregation in

4    Ms. Grey's current situation, I'm going to ask for the

5    department to supplement its briefing on the motion as to that

6    issue.  What I am contemplating is a potential affidavit from

7    Ms. Stewart about the status of any heating provisions in the

8    segregation unit.

9            First let me turn to counsel for the plaintiff to

10   make sure that the injunctive relief I prescribed here is

11   understood.  Obviously I have not read verbatim the written

12   order I will issue to memorialize this injunction, but I want

13   to make sure you understand the general terms of it.  You're on

14   mute, Ms. Weber.

15           MS. WEBER:  Thank you.  Thank you, Your Honor.  The

16   one clarification we had, the part of the injunction about

17   recording the administration of medication, we just want to

18   clarify that's video recording?

19           THE COURT:  Yes.

20           MS. WEBER:  Thank you.

21           THE COURT:  Thank you for requesting clarification.

22   Any request for clarification or questions from defendant's

23   counsel?

24           MS. RATLIFF:  Your Honor, only just one tiny bit.

25   You indicated you'd like an affidavit from Ms. Stewart

 1   regarding the status of the heater or the heating arrangements.

 2   Do you want additional argument as well or is an affidavit

 3   sufficient?

 4          THE COURT:  It may be that the affidavit is

 5   sufficient.  I would entertain any argument you want to make.

 6   I'd ask that the brief not be exhaustive in length, but it

 7   doesn't sound like it's something you really need to spend a

 8   whole lot of time talking about, but you're free to make any

 9   argument you feel is necessary and appropriate.

10          MS. RATLIFF:  I appreciate it, Your Honor.  Thank

11   you.

12          THE COURT:  I'll set a deadline for that in the

13   written order that I issue.

14          MS. RATLIFF:  Wonderful.  Thank you, Your Honor.

15          THE COURT:  Ms. Weber.

16          MS. WEBER:  I'm sorry, Your Honor.  My colleague

17   pointed out and I just want to make sure it wasn't an

18   oversight.  The order doesn't mention anything about Ms. Grey's

19   access to razors and I just wanted to see --

20          THE COURT:  Thank you for pointing that out.  I did

21   specifically -- I was talking about hormone treatment as having

22   been medically prescribed.  I do find that based upon the

23   testimony of Dr. Lowell and also the testimony of Assistant

24   Warden Stewart that razors should be provided to the plaintiff.

25   I'm not sure if this is an ongoing issue.  I think the way

1    things were left with Assistant Warden Stewart is that now that

2    she was aware of the issue, she was going to do something about

3    it.  In case she hasn't, I can include a provision in the order

4    that ensure that razors are provided.

5              MS. WEBER:  Thank you, Your Honor.

6              MS. RATLIFF:  Your Honor, I would respectfully ask

7    that that portion of the order say that it's provided within

8    applicable policies on disciplinary segregation with respect to

9    the safety and security of the institution.

10             THE COURT:  Right.  So I don't recall what the

11   testimony was on this point.  I do recall Assistant Warden

12   Stewart essentially saying that persons on administrative

13   segregation have access to razors.  I don't know if the same

14   applies to persons on disciplinary segregation.  As I sit here

15   today, I don't remember whether there was any testimony in that

16   regard.

17             But I guess what I'll do, Ms. Ratliff, is include

18   some provision to say to the extent consistent with department

19   policies.  There may be there's an assessment that Ms. Grey is

20   a security risk and she shouldn't have access to razors.  This

21   is something I'm taking a close look at, so I don't want the

22   department to feel free to just make that up as an excuse.  As

23   long as it's consistent with department security policies for

24   persons in disciplinary segregation to have access to razors or

25   for Ms. Grey specifically to have access to razors, then that

1    order will be made.

2              MS. RATLIFF:  Thank you, Your Honor.

3              MS. WEBER:  Your Honor, the discussion of the razors

4    brings up Ms. Grey was prescribed facial cream for hair

5    removal.  There was testimony that there are substitutes over

6    the counter; we'd ask that that be included as well.

7              THE COURT:  Okay.

8              MS. WEBER:  Thank you.

9              THE COURT:  I think some time will need to be

10   provided to the department in order to satisfy that condition,

11   at least.  I don't know what's necessary in terms of the

12   procurement process for those over-the-counter medications.

13   I'll give them some time to do it and it will be subject to the

14   availability of any such over-the-counter medication.

15             MS. WEBER:  Thank you.

16             THE COURT:  Anything else from either party?  I'll

17   also address the request for an injunction against retaliatory

18   conduct.  Retaliatory conduct is illegal anyway and I don't

19   feel it's necessary for me to back this up with a court order.

20   The department should understand its legal obligations in this

21   regard and should not be engaged in any retaliatory conduct, so

22   the reason why the injunction as to that was not ordered is

23   because I don't find it specific enough.  I don't find it

24   sufficiently narrowly drawn, and I find that it's unnecessary

25   because there's already legal obligations on the department

1    with respect to retaliation.

2              Anything else, Ms. Weber?

3              MS. WEBER:  Not from plaintiffs.  Thank you, Your

4    Honor.

5              THE COURT:  Anything from you, Ms. Ratliff or

6    Ms. Donoho?

7              MS. RATLIFF:  Your Honor, just one very small point

8    and I apologize for going back to the facial cream.  I don't

9    know that the over-the-counter medication was ever identified

10   that it was the prospective substitution.  I don't want the

11   department to be in a position where we're ordered to give

12   something, but we don't know what it is.

13             THE COURT:  Right, yes.  There was testimony that

14   these things exist, that these products exist so I did hear

15   that, but you're right.  I don't believe that it was ever

16   specified.  So the order that I will make will be subject to

17   the availability of any such facial inhibitor cream on an

18   over-the-counter basis.  I think that will require the

19   department will need to make an assessment of whether or not

20   any such cream is available, and if they find it is available,

21   they need to start providing it.

22             MS. RATLIFF:  Understood, Your Honor.  I appreciate

23   the clarification.

24             THE COURT:  Okay.  And that's based upon the fact

25   that evidence has been presented, not in the form of

1   documentary evidence but testimony that the plaintiff was

2   prescribed a facial inhibitor cream, and it has not been

3   provided due to lack of availability.  But I think that it

4   would be reasonable for the department to provide the

5   over-the-counter medication substitute if it's available.

6           Anything else from you, Ms. Ratliff?

7           MS. RATLIFF:  No, Your Honor.  Thank you very much.

8           THE COURT:  Thank you-all.  Thank you for sticking

9   around.  I know it's late in the day, but I thought it would be

10  most efficient for me to render my ruling at the hearing rather

11  than have you wait around a few weeks for me to issue a written

12  ruling.  A written order will follow, if not today, it will

13  follow early next week, and I guess we can conclude the

14  proceeding at this point.  Ms. Moye.

15          THE CLERK:  This Honorable Court now stands

16  adjourned.

17      (Proceedings concluded at 2:14 p.m.)

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2              I, Patricia G. Mitchell, Registered Merit Reporter,

3    Certified Realtime Reporter, in and for the United States

4    District Court for the District of Maryland, do hereby certify,

5    pursuant to 28 U.S.C. § 753, that the foregoing is a true and

6    correct transcript of the stenographically-reported proceedings

7    held in the above-entitled matter and the transcript page

8    format is in conformance with the regulations of the Judicial

9    Conference of the United States.

10             Dated this 10th day of January 2024.

11

12                    *Patricia G. Mitchell*

13    _____
                Patricia G. Mitchell, RMR, CRR
14              Federal Official Reporter

15

16

17

18

19

20

21

22

23

24

25

**< Dates >.**
**April,** 5:1.
**December** 4:5, 4:8.
**December 1, 2023** 1:18, 2:2.
**January 2024.** 41:10.
**July** 5:8, 5:15.
**March** 4:7.
**May** 5:1.
**November** 19:22, 23:14.
**November 10,** 15:3.
**November 11** 15:16.
**November 15,** 15:20.
**November 2nd,** 12:17.
**November 8** 13:25.
**November 9** 13:25.
**November,** 12:6.
**October** 8:15, 10:4, 12:12, 12:13, 12:18.
**October 17,** 10:12.
**October 20, 2023,** 10:22.
**October 24,** 11:10.
**October 30,** 11:21, 12:2.
**October 7, 2023,** 8:13.
**September 2023,** 7:2, 8:11.
**September 7, 2023,** 5:23.
**September 8** 6:9.
**September,** 7:16.
.

**< 1 >.**
**10** 1:19, 14:18.
**10th** 41:10.
**120** 1:33.
**123** 21:15.
**13th** 8:15.
**14** 40:17.
**1700** 1:33.
**19** 1:19.
**1981** 2:16.
**1983** 20:18, 20:22, 22:8, 23:25, 25:25.
**1:** 1:10.
.

.
**< 2 >.**
**2** 40:17.
**20** 14:18.
**20003** 1:39.
**2002** 27:15.
**2005** 30:2.
**2008** 30:10.
**2016** 2:18, 21:16.
**2017** 4:4.
**2019** 24:19.
**2020** 4:5, 27:6.
**2021** 4:7, 4:8.
**2023** 5:1, 5:8, 5:15, 10:4, 13:25, 19:22.
**21202** 1:34.
**21215** 1:47.
**265** 27:6.
**28** 41:5.
**288** 30:11.
**293** 27:14.
**2nd** 1:38.
.

.
**< 3 >.**
**3-cv-01047-mjm** 1:10.
**30** 15:25, 33:15.
**30-day** 7:13, 8:14.
**313** 1:46.
**332** 27:14.
**348** 24:18.
**390** 2:16.
**3rd** 12:18.
.

.
**< 4 >.**
**4** 20:18, 21:23.
**411** 30:1.
**451** 2:16.
**474** 30:1.
.

.
**< 5 >.**
**5** 22:8.
**50** 15:24.
**504** 28:23, 29:10.
**505** 27:14.
.

.
**< 6 >.**

**6** 23:25.
**6776** 1:46.
.

.
**< 7 >.**
**7** 25:25.
**700** 1:38.
**709** 2:18.
**726** 27:14.
**753** 41:5.
.

.
**< 8 >.**
**817** 21:15.
**822** 2:17.
.

.
**< 9 >.**
**901** 30:11.
**923** 24:18.
**966** 27:5.
**[audio** 5:12.
.

.
**< A >.**
**A.** 1:29.
**a.m.** 1:19, 14:18.
**AA** 12:24.
**ability** 16:16.
**above-entitled** 41:7.
**absence** 20:4, 27:3.
**abuse** 19:21, 20:9, 32:3.
**abusers** 19:24, 20:6, 20:11, 34:4, 34:7, 34:10.
**abusive** 7:7.
**accelerated** 4:15.
**access** 9:19, 9:21, 9:22, 9:24, 11:14, 11:15, 11:17, 11:21, 12:24, 34:13, 36:19, 37:13, 37:20, 37:24, 37:25.
**accessibility** 34:3.
**accessible** 20:5.
**accommodate** 29:2.
**accommodation** 27:1, 28:9.
**accord** 26:17.
**According** 6:20, 8:20, 10:10, 11:2, 11:11,

**11:16.**
**account** 26:14.
**Act** 8:20, 9:2, 16:21, 28:23, 29:11, 29:22.
**acted** 22:16, 24:15.
**action** 26:23, 30:15, 30:16, 30:20, 30:25, 31:6.
**actions** 15:18, 16:11.
**activities** 29:9, 30:6.
**activity** 13:13, 29:15, 29:19, 30:8, 30:19, 31:1.
**acts** 22:23.
**actual** 17:21, 21:7, 21:20, 22:24, 23:21, 30:18.
**Actually** 6:24, 21:12, 23:13.
**ADA** 28:22, 29:6, 29:22, 30:13.
**additional** 2:11, 23:8, 36:2.
**Additionally** 18:17, 19:20, 27:7.
**address** 4:2, 9:15, 17:17, 25:9, 38:17.
**addressed** 3:22, 22:19.
**adequate** 21:21, 22:14, 23:4, 24:22, 25:13, 31:21.
**adjourned** 40:16.
**adjust** 27:16.
**administered** 18:3.
**administration** 4:13, 12:17, 17:4, 32:25, 34:1, 35:17.
**administrative** 4:24, 9:5, 9:11, 10:2, 10:12, 10:14, 10:15, 11:20, 11:25, 12:20, 22:3, 24:3, 25:17, 29:1, 29:3, 31:18, 31:23, 37:12.
**admonitions** 7:9.
**adverse** 17:3, 30:15, 30:16, 30:20, 30:25, 31:6.
**affidavit** 10:10, 35:6, 35:25, 36:2, 36:4.
**afforded** 27:17.
**agencies** 18:18.
**al** 1:5, 1:11.

alarming 19:20.
Aldactone 7:14.
alike 26:7.
allegation 8:21, 14:8, 20:19, 28:13.
allegations 7:7, 7:9, 7:23, 15:7, 20:7, 34:20.
allege 26:8, 26:12, 26:18, 29:17.
alleged 10:25, 12:22, 13:4, 15:16, 19:20, 19:24, 20:5, 20:11, 24:8, 32:3, 34:4, 34:7, 34:10, 34:11.
allegedly 14:7, 14:12, 16:5, 20:11.
allocation 27:2, 28:11.
allowed 13:1, 15:6.
allowing 33:4.
alone 6:18.
already 33:12, 33:13, 34:6, 34:25, 38:25.
alter 30:7.
alternatives 20:13, 27:4.
Although 29:22, 30:10.
Amendment 20:19, 22:9, 22:12, 24:1, 24:5, 26:5.
among 8:6, 22:1, 22:6.
analysis 33:8.
analyzed 27:8.
animosity 5:6.
Animus 5:6, 31:12, 31:14.
anyway 38:18.
apologize 39:8.
apparently 10:7, 12:2, 25:19, 25:22.
appear 9:20, 20:1.
appearance 3:14.
appears 28:1.
applicable 37:8.
applied 2:14, 17:24.
applies 37:14.
appreciate 36:10, 39:22.
appropriate 19:15, 26:13, 26:17, 33:3, 36:9.
approve 16:22.

approved 6:19.
approximately 4:25.
argument 36:2, 36:5, 36:9.
arguments 2:12.
Around 5:1, 7:12, 8:13, 11:5, 11:7, 12:9, 12:21, 13:21, 13:24, 13:25, 14:5, 14:18, 15:11, 40:9, 40:11.
ARP 5:2, 5:8.
arrangement 7:18.
arrangements 36:1.
assault 6:16, 10:23, 10:24, 10:25, 11:8, 15:7, 15:13, 26:3.
assaulted 4:24, 7:20, 19:23, 34:11.
assaults 7:21.
asserted 27:1, 32:2.
assess 21:1.
assessment 10:10, 19:9, 27:22, 27:24, 28:5, 28:15, 28:19, 28:21, 31:11, 31:25, 32:14, 33:11, 33:14, 33:15, 34:24, 37:19, 39:19.
assigned 6:1.
assignment 6:2.
assistance 10:8, 29:15.
Assistant 6:9, 6:19, 6:20, 7:4, 7:15, 7:24, 8:8, 9:21, 12:21, 14:10, 36:23, 37:1, 37:11.
associated 3:21, 31:17.
Assuming 20:7.
attached 2:7, 3:9.
attend 22:11.
attention 3:7, 22:22.
Attorney 1:45.
attorneys 29:5.
authorities 26:17.
authority 17:11.
autocastration 3:20.
availability 38:14, 39:17, 40:3.
available 5:18, 9:25, 39:20, 40:5.

availed 16:17.
Ave. 1:38.
aware 13:3, 21:8, 21:25, 23:1, 25:14, 37:2.
awareness 30:18.

.
.
< B >.
back 13:1, 33:20, 34:8, 38:19, 39:8.
balance 17:9, 32:1, 32:6.
Baltimore 1:17, 1:33, 1:34, 1:47.
based 3:6, 7:17, 9:20, 13:6, 13:17, 14:22, 18:14, 19:7, 20:19, 22:9, 23:9, 23:19, 24:2, 24:3, 26:1, 28:24, 33:7, 33:21, 36:22, 39:24.
bases 20:17.
basis 5:22, 6:12, 6:20, 8:8, 9:8, 12:15, 18:3, 18:20, 22:3, 29:21, 34:2, 35:2, 39:18.
became 9:24, 21:25.
began 2:10, 4:5, 4:6, 4:8.
beginning 23:13.
believe 14:15, 18:1, 18:4, 25:8, 25:9, 33:23, 39:15.
believed 9:1.
Bell 8:18, 8:24, 9:1, 10:17, 10:25, 11:6, 12:22, 13:4.
benefits 29:8, 29:14, 29:19, 29:20, 31:16.
Beyond 25:12, 31:22.
biological 3:17.
birth 3:17.
bit 35:24.
blood 4:16, 4:17, 12:11, 12:13.
Board 2:17.
body 4:11.
breast 15:11.
breasts 4:9.
breathing 13:16.
brief 36:6.

briefed 2:7.
briefing 35:5.
briefs 2:8, 3:9.
Brill 6:4, 6:5, 6:6, 6:8, 6:10, 6:19, 8:10, 8:23, 13:10, 13:16, 13:19, 16:2.
brings 38:4.
Brown 1:32.
bruising 15:11.
burden 30:9, 31:4.
but-for 30:25.

.
.
< C >.
C. 41:5.
called 10:8, 23:12, 27:9.
calls 18:14, 20:22, 27:24.
Camenisch 2:16.
camera 9:14.
cameras 9:13.
Captain 11:10, 11:16.
care 4:12, 22:9, 22:14.
carry 25:2.
Carter 11:10, 11:16.
case 2:6, 2:15, 2:17, 2:18, 2:22, 9:15, 16:9, 19:17, 20:16, 21:15, 23:12, 23:13, 24:17, 24:18, 25:18, 27:6, 27:13, 27:15, 28:14, 28:19, 30:1, 30:10, 30:13, 31:3, 37:3.
case-by-case 18:20, 27:24, 34:23.
cases 2:19, 16:18.
causal 30:15.
causation 29:24, 31:2.
cause 33:15.
caveat 25:4.
ceased 5:18.
ceasing 16:11.
cell 6:3, 6:6, 6:11, 10:7, 12:7, 12:9, 25:6.
cellmate 6:1, 6:2.
certain 3:3, 31:15.
CERTIFICATE 41:1.
Certified 41:3.
certify 41:4.

challenge 26:15.
challenged 24:12, 24:13.
challenges 27:15.
challenging 16:19.
charge 30:22.
charges 11:2, 11:9, 16:4.
CHELSEA 1:5.
Chloe 1:49, 2:4.
choice 23:4.
Circuit 2:17, 2:18, 17:11, 21:15, 23:12, 24:18, 27:6, 27:15, 30:1, 30:10.
circumstances 14:21, 17:15, 25:18.
cisgender 6:3, 8:17, 32:19.
cite 2:15.
citing 23:12, 24:17, 27:5, 27:12, 29:25, 30:9.
CIVIL 1:9.
claim 18:10, 20:18, 20:22, 21:18, 21:22, 22:8, 22:9, 22:15, 23:16, 23:25, 24:5, 24:6, 24:21, 25:25, 26:7, 27:21, 28:23, 28:24, 30:12.
claimed 7:10, 18:7, 33:11.
claiming 33:22.
claims 6:24, 10:8, 17:9, 20:16, 27:7, 27:23, 28:24, 31:8, 32:2, 32:7, 34:13.
clarification 35:16, 35:21, 35:22, 39:23.
clarify 35:18.
Clarke 24:18, 27:5.
Clause 26:4, 26:8, 27:10.
CLERK 40:15.
close 31:1, 37:21.
closed 11:8.
colleague 36:16.
community 8:19, 8:24.
comparable 5:21.
compelling 18:12.
competent 23:22.

complain 15:1.
complained 7:24.
complaining 5:2, 5:9.
complains 21:2.
complaint 5:10, 5:12, 11:14, 15:1, 15:7, 20:16.
complaints 7:17, 11:11, 11:19, 22:4, 23:19, 29:4, 31:22.
completed 15:2, 20:1.
component 22:18.
Computer-aided 1:50.
concerned 34:3.
concerns 8:5, 13:15, 20:9, 26:14, 33:19.
conclude 40:13.
concluded 2:9, 40:17.
conclusion 33:7.
condition 3:19, 22:19, 25:7, 32:18, 35:3, 38:10.
conditions 4:3, 9:10, 16:19, 24:6, 24:12, 24:13.
conduct 2:21, 13:4, 15:23, 27:22, 30:14, 30:16, 31:10, 33:13, 34:23, 38:18, 38:21.
conducted 3:8, 9:2, 12:12, 12:13, 14:10, 34:2.
conducting 27:23.
conducts 33:10.
Conference 41:9.
confidential 8:15, 13:3, 13:14, 13:16, 13:20.
confinement 16:20, 24:6, 24:22.
confirmed 11:17.
conformance 41:8.
connection 7:6, 26:22, 28:3, 31:14.
conscience 23:6.
consensual 9:3.
consequences 4:14.
consider 26:25.
considered 17:5, 26:20.
considers 21:2.
consistency 4:14.

consistent 9:16, 12:15, 14:24, 16:10, 18:3, 19:15, 33:18, 37:18, 37:23.
Constantine 29:25.
constitutional 23:3, 27:1.
construed 29:23.
consultation 18:15.
consulting 29:5.
contact 8:17, 11:4, 13:7, 34:7, 34:10.
contacted 7:16.
contacts 31:15.
contemplated 6:2.
contemplating 32:11, 35:6.
contemporary 21:3.
contended 6:13.
contending 4:3.
contends 4:23, 5:19, 6:5, 9:18, 10:1, 12:6, 12:18, 12:24, 14:1, 15:8, 15:18, 25:7, 33:23.
context 26:15, 27:16, 28:18.
continue 10:14.
continued 32:3, 32:4.
continues 27:21.
continuing 31:13.
contraband 14:14.
contrary 21:24.
controversies 3:3.
convey 15:4.
conveyed 13:22.
correct 16:24, 16:25, 41:6.
Correctional 1:11, 3:15, 14:4, 18:17, 19:2, 19:21, 28:11, 32:3, 34:11.
counsel 8:12, 10:3, 12:1, 12:3, 12:4, 33:12, 35:9, 35:23.
Count 20:18, 21:23, 22:8, 23:25, 25:25.
counter 5:22, 38:6.
counts 28:22.
County 2:17.
course 5:21, 14:19, 15:18, 16:7.

COURT'S 1:22.
courts 17:24, 26:16, 27:16, 33:5.
cream 5:16, 5:17, 5:20, 38:4, 39:8, 39:17, 39:20, 40:2.
credibility 3:5.
credible 7:1, 18:12.
criminal 17:4.
CRR 41:16.
cruel 22:12, 24:1.
current 20:5, 35:4.
currently 2:3.
custody 3:14, 19:16.
.
.

< D >.
D. 27:14.
daily 34:2.
danger 8:6.
dangers 22:6.
date 12:3, 13:24, 14:18, 15:19, 16:1.
Dated 41:10.
day 9:22, 10:9, 10:12, 12:17, 15:8, 15:17, 33:21, 34:2, 40:9, 41:10.
days 10:9, 13:2, 15:24, 15:25, 33:16.
DC 1:39.
deadline 36:12.
Deborah 1:36, 1:37.
decency 21:3.
decided 7:23, 10:14.
deciding 2:24, 17:5.
decision 2:25, 13:17, 21:15, 25:16, 26:5, 26:16.
decisions 25:22, 32:9.
Decker 7:19, 7:20, 10:18, 10:20.
declining 11:1.
decreased 4:9.
defendant 12:4, 16:2, 21:8, 21:10, 22:10, 22:16, 22:23, 23:20, 25:16, 29:1, 29:3, 30:18, 31:5, 35:22.
Defendants 1:13, 1:41, 2:6,

20:20, 21:19, 21:24, 22:2, 24:2, 25:14, 26:1, 26:3, 31:19, 32:24 .
**deference** 17:25, 26:17, 28:18 .
**deferential** 26:18 .
**defined** 30:20 .
**degree** 31:7 .
**delay** 23:9 .
**deliberate** 21:6, 22:14, 22:16, 22:23, 23:10, 24:15 .
**deliberations** 25:20 .
**demand** 17:15 .
**demanded** 10:6, 15:6 .
**demanding** 26:16 .
**demonstrate** 21:22, 22:15, 24:8, 24:15 .
**demonstrated** 18:1 .
**denial** 5:7, 11:12, 15:19, 28:24, 31:23, 32:4 .
**denied** 6:12, 8:9, 9:18, 11:13, 11:14, 11:16, 12:24, 15:17, 17:8, 26:4, 29:8, 29:13, 29:20, 31:15 .
**deny** 17:20 .
**deprivation** 20:23, 23:20, 24:8, 24:10 .
**deprive** 32:12 .
**depriving** 32:8 .
**described** 4:15 .
**designated** 18:6, 18:21, 27:25 .
**designed** 19:14 .
**detail** 10:7 .
**details** 8:2 .
**determination** 26:21, 33:2 .
**determinations** 3:6, 18:19, 18:20 .
**determine** 34:19, 34:24 .
**determined** 5:17, 13:2 .
**detriment** 30:21 .
**developed** 4:9 .
**diagnose** 19:14 .
**diagnosed** 4:7, 19:14, 22:20 .
**diagnosis** 18:14 .

**different** 3:5, 29:24 .
**differently** 26:6, 26:9 .
**DIMARTINO** 1:29 .
**directed** 12:7, 25:6, 33:10 .
**disability** 3:18, 28:23, 29:7, 29:12, 29:13, 29:18, 29:21, 32:18 .
**disabled** 30:4 .
**disciplinary** 8:16, 10:22, 13:11, 15:20, 15:24, 16:1, 15:24, 37:8, 37:14, 37:24 .
**disclaimed** 22:5 .
**discovery** 2:21 .
**discretion** 27:18, 32:9, 32:12, 32:13 .
**discriminated** 29:21 .
**discrimination** 5:9, 26:1, 26:11, 27:7, 28:23, 28:24, 29:10, 29:14, 30:23 .
**discuss** 10:13 .
**discussion** 13:14, 38:3 .
**discussions** 7:4 .
**disinclined** 25:16 .
**disorders** 3:13 .
**disparate** 26:18 .
**disparity** 26:12 .
**dispute** 6:7, 9:16, 12:10, 33:21 .
**disputed** 12:8, 23:21 .
**disregarded** 20:20, 22:11, 22:25, 24:4, 24:16, 25:14 .
**disrespect** 8:20 .
**dissuaded** 30:21 .
**District** 1:1, 1:2, 2:18, 17:12, 27:13, 41:4 .
**DIVISION** 1:3 .
**doctor** 22:22 .
**document** 11:11 .
**documentary** 40:1 .
**documentation** 11:19 .
**DOJ** 18:17 .
**Donoho** 1:43, 39:6 .
**dose** 12:10, 12:16 .
**doses** 4:14 .
**down** 14:1, 19:23 .

**draw** 21:11 .
**drawn** 16:23, 20:13, 21:9, 38:24 .
**due** 3:19, 10:16, 11:1, 13:18, 28:18, 40:3 .
**During** 2:10, 5:20, 9:12, 10:2, 10:17, 10:19, 12:23, 12:25, 14:18, 15:5, 15:10, 16:15 .
**duties** 22:13 .
**dysphoria** 3:13, 3:18, 3:21, 3:22, 4:2, 4:8, 18:9, 18:13, 19:13, 19:15, 27:23, 28:4, 28:6, 32:5, 32:17 .
**dysphoric** 4:16, 4:18, 32:21, 33:3 .

. 

**< E >.**
**E.** 1:33, 1:44 .
**earlier** 12:11, 23:13 .
**early** 5:1, 12:6, 40:13 .
**easily** 22:21 .
**education** 5:25 .
**educational** 9:19, 9:24 .
**effectuate** 33:24 .
**efficient** 40:10 .
**Eighth** 20:19, 22:8, 22:12, 24:1, 24:5 .
**either** 5:11, 13:19, 28:7, 29:17, 32:19, 38:16 .
**elected** 22:2 .
**element** 30:17, 30:20, 30:24 .
**elements** 30:13 .
**emotional** 3:20, 20:24, 24:11 .
**emphasize** 2:22 .
**employee** 33:25 .
**enable** 30:4 .
**encounter** 8:20, 9:1, 10:19, 12:22 .
**end** 7:7, 7:15 .
**engaged** 15:22, 25:20, 30:14, 30:19, 38:21 .
**enjoy** 23:3 .
**enmeshed** 33:5 .
**enough** 5:11, 8:2, 17:22,

38:23 .
**ensure** 18:19, 18:22, 19:19, 27:17, 33:17, 33:25, 34:9, 37:4 .
**ensuring** 32:16, 32:20, 33:5, 33:10, 33:19 .
**entered** 9:19, 11:24, 12:19 .
**entertain** 36:5 .
**entity** 29:9, 29:10, 30:6, 30:8 .
**Equal** 26:4, 27:10, 27:15 .
**equities** 17:9, 32:1, 32:6 .
**especially** 16:18 .
**Esquire** 1:28, 1:29, 1:30, 1:31, 1:36, 1:43, 1:44 .
**essentially** 37:12 .
**establish** 18:5, 20:3, 21:5, 22:14, 23:9, 23:20 .
**Estrace** 7:13, 8:14, 12:10, 12:16, 12:17, 12:19 .
**estrogen** 12:12 .
**et** 1:5, 1:11 .
**evaluation** 15:10, 15:11 .
**EVAN** 1:31 .
**events** 14:20, 14:23 .
**Evidence** 2:11, 2:14, 3:3, 3:7, 5:20, 6:22, 9:15, 14:22, 19:3, 23:17, 23:22, 25:8, 27:4, 28:14, 34:12, 34:19, 39:25, 40:1 .
**evidentiary** 2:8 .
**examined** 18:25, 19:4 .
**examples** 5:13 .
**Excerpt** 1:13, 1:22, 2:2 .
**excessive** 21:7, 21:20, 23:6, 24:17, 25:5, 25:15 .
**excluded** 29:8, 29:13, 29:20, 31:9 .
**excuse** 37:22 .
**exercise** 32:13 .
**exercised** 17:13 .
**exhaustive** 36:6 .

exhibits 2:7, 3:9 .
exigencies 17:15 .
exist 39:14 .
existence 17:18 .
exists 21:10, 30:15 .
expert 19:1 .
experts 18:16 .
expose 14:7, 21:4 .
exposed 10:5 .
exposure 24:13 .
expression 5:6 .
expressions 31:12 .
extends 16:23 .
extension 33:14 .
extent 37:18 .
external 4:10 .
extreme 24:10, 24:24, 25:3 .
.
.
< F >.
F.3d 2:17, 21:15, 24:18, 27:5, 27:14, 30:1 .
F.app'x 30:11 .
face 14:3, 16:3 .
faced 8:6, 22:6 .
facial 3:24, 4:11, 5:16, 38:4, 39:8, 39:17, 40:2 .
facie 30:13, 31:3 .
facilities 27:18, 27:25 .
facility 4:5, 4:21, 4:23, 12:3, 12:5, 15:12, 15:13, 15:14, 18:6, 18:8, 18:21, 19:6, 19:11, 20:9, 21:25, 24:25, 28:8, 28:10, 28:17, 32:6, 33:4, 34:25 .
fact 2:23, 8:3, 26:21, 28:14, 32:12, 39:24 .
fact-specific 30:23 .
factors 17:5, 26:20 .
facts 21:9 .
factual 16:6 .
fail 27:22 .
failed 18:4, 21:19, 24:22, 25:13, 27:21 .
fails 19:9 .
failure 20:19, 22:9, 29:1, 31:10, 31:24 .

fairness 23:7 .
false 8:21 .
far 33:20 .
Fauconier 27:5 .
favor 32:6 .
favors 14:8 .
Federal 2:14, 16:24, 17:1, 29:15, 41:17 .
feel 36:9, 37:22, 38:19 .
feelings 4:16, 4:19 .
felt 6:6 .
feminine 3:14 .
few 10:9, 40:11 .
file 15:6 .
Finally 28:22, 34:22 .
financial 29:15 .
find 6:25, 14:21, 14:23, 18:12, 19:5, 20:8, 21:17, 23:15, 24:20, 27:20, 28:17, 31:7, 32:10, 35:3, 36:22, 38:23, 38:24, 39:20 .
finding 25:4 .
findings 2:23, 2:24, 3:2, 3:11, 16:6 .
finds 16:23 .
First 11:23, 12:18, 20:22, 26:8, 29:17, 30:17, 35:9 .
five 14:16 .
flight 14:1, 14:2 .
Floor 1:38 .
flow 4:17 .
follow 40:12, 40:13 .
followed 19:17, 28:13 .
Following 3:11, 4:25, 5:16, 10:3, 12:16, 19:18 .
foregoing 41:5 .
form 6:7, 18:8, 19:5, 20:24, 32:7, 33:8, 39:25 .
format 41:8 .
forms 16:8 .
forth 20:16 .
forward 2:3, 15:19, 26:24 .
found 5:14, 10:23, 10:25, 15:11, 15:21, 15:23, 16:2, 21:13 .
four 17:5 .
Fourteenth 26:5 .

Fourth 2:16, 2:18, 17:11, 21:14, 23:12, 24:18, 27:6, 27:14, 30:1, 30:10 .
free 21:13, 36:8, 37:22 .
front 19:7, 23:22 .
full 2:21, 14:2 .
fully 2:6 .
functionality 4:17 .
fundamental 23:7 .
fundamentally 30:7 .
.
.
< G >.
G. 41:2, 41:16 .
gang 13:12, 13:14 .
gap] 5:12 .
Gender 3:13, 3:18, 3:21, 3:22, 4:2, 4:7, 18:9, 18:13, 18:22, 19:13, 19:15, 26:2, 27:7, 27:23, 28:1, 28:4, 28:6, 32:17, 32:21, 33:3, 33:4 .
General 1:45, 12:5, 13:18, 22:6, 29:16, 35:13 .
generally 27:3, 28:12, 29:23 .
genitalia 4:11, 4:18 .
George 30:1 .
Georgetown 5:24, 7:3, 9:25, 11:22, 11:24, 13:21, 21:21 .
GILLIAM 1:5 .
give 17:2, 17:24, 22:10, 31:1, 38:13, 39:11 .
given 6:14, 11:21, 20:4, 23:5 .
giving 28:19 .
Gloucester 2:17 .
Golden 1:36, 1:37 .
Goldstein 1:32 .
governmental 26:5, 26:23 .
grant 16:22, 17:6, 33:8 .
granted 6:14, 17:14, 33:9 .
great 21:3 .
Grey 1:49, 2:4, 3:12, 10:23, 33:18, 33:22, 34:3,

34:10, 34:13, 34:20, 34:24, 35:4, 36:18, 37:19, 37:25, 38:4 .
Grimm 2:17 .
groped 14:4, 34:12 .
grossly 23:5 .
grounds 20:17 .
grow 12:25 .
guards 27:2 .
guess 37:17, 40:13 .
guilty 16:2 .
.
.
< H >.
hair 3:24, 4:11, 5:16, 12:25, 38:4 .
handcuffs 14:2 .
hands 32:3 .
happened 14:25 .
harassed 7:25, 10:5 .
harassment 4:22 .
harm 16:15, 17:7, 17:17, 17:18, 17:19, 18:2, 18:5, 19:8, 20:3, 21:10, 23:11, 24:13 .
health 3:13, 7:16, 18:16, 18:23, 19:2, 19:18, 19:19, 21:6, 21:12, 22:11, 24:17, 24:24, 25:3, 25:15, 26:14, 32:16, 32:20 .
hear 39:14 .
Hearing 1:22, 2:2, 2:9, 2:10, 2:13, 3:7, 5:21, 14:19, 40:10 .
hearings 15:21 .
heat 25:5 .
heater 12:6, 25:11, 25:12, 35:2, 36:1 .
heating 35:7, 36:1 .
heightened 27:8 .
held 17:11, 41:7 .
hereby 41:4 .
higher 17:23 .
Hinton 30:9 .
holds 16:18 .
Honor 35:15, 35:24, 36:10, 36:14, 36:16, 37:5, 37:6, 38:2, 38:3, 39:4, 39:7, 39:22, 40:7 .

**Honorable** 1:23, 40:15.
**hormonal** 33:18.
**hormone** 3:23, 4:8, 4:13, 9:12, 12:15, 15:17, 15:19, 16:10, 18:2, 22:10, 23:18, 23:23, 34:1, 36:21.
**hot** 12:9.
**housed** 4:6, 6:17, 6:18, 8:9, 26:2.
**housing** 19:10, 27:22, 29:2, 31:11, 31:25, 32:10, 32:14, 33:11, 34:23.
**husband** 6:7.
.
.
**< I >.**
**identified** 19:25, 39:9.
**identify** 34:6.
**identity** 13:3, 18:22, 26:3, 28:1, 33:4.
**II** 29:6.
**III** 1:13.
**illegal** 38:18.
**imagine** 34:1, 34:6.
**immediate** 17:21.
**impact** 17:3, 26:25, 28:10.
**impeachment** 3:10.
**impending** 15:21.
**implausibility** 14:19.
**implausible** 14:22.
**implements** 11:13, 11:15.
**impose** 29:23, 30:9.
**imposes** 22:13.
**inadequate** 23:6.
**incarcerated** 4:4, 32:23.
**incident** 14:6, 14:11, 15:6, 19:22.
**include** 26:21, 31:23, 37:3, 37:17.
**included** 38:6.
**including** 3:4, 4:15, 5:9, 6:16, 15:18, 16:9, 19:10, 19:22, 28:7, 32:3.
**incompetent** 6:13, 23:6.

**incomplete** 25:8.
**inconsistencies** 3:4, 9:12.
**inconsistent** 23:18, 23:24.
**increased** 4:17, 32:5.
**indicated** 35:25.
**indicates** 13:5.
**indicating** 8:4.
**indication** 14:13, 15:13, 15:14, 18:12.
**indifference** 21:6, 22:15, 22:16, 22:23, 23:10, 24:16.
**individual** 29:7, 29:12, 30:22.
**individualized** 4:1, 18:14, 18:19, 19:9, 27:22, 31:11, 31:24, 32:13, 33:11, 34:23.
**individuals** 11:1, 11:4, 13:8.
**inference** 21:9, 21:11, 31:2.
**informant** 8:15, 13:4, 13:14, 13:16, 13:20.
**information** 5:11, 6:11, 7:21, 13:6.
**infraction** 8:16, 10:22, 13:11, 15:4.
**infractions** 15:21.
**inhibition** 3:24.
**inhibitor** 5:16, 5:17, 39:17, 40:2.
**injunction** 2:5, 16:14, 17:7, 17:12, 17:13, 33:9, 33:17, 34:18, 34:22, 35:12, 35:16, 38:17, 38:22.
**injunctive** 16:8, 17:6, 17:19, 17:20, 20:4, 32:7, 32:11, 33:8, 34:9, 35:10.
**injuries** 17:22, 32:2.
**injury** 17:23, 20:25, 24:11, 32:8.
**inmate** 6:4, 6:5, 8:17, 10:5, 18:15, 18:20, 18:22, 21:6, 21:12, 24:8, 24:17, 27:10, 33:3.

**inmates** 6:15, 8:1, 14:7, 19:14, 20:21, 22:2, 26:2, 27:2, 27:25, 28:7, 28:11, 32:16, 32:21.
**inquiry** 21:1, 30:23.
**insofar** 6:24, 27:21.
**instances** 8:2.
**Institution** 5:3, 5:24, 6:22, 16:12, 19:22, 37:9.
**intelligence** 13:7.
**intent** 13:5.
**intentional** 26:11.
**interest** 11:9, 17:10, 27:12, 28:3, 28:4, 32:15, 32:16, 32:20, 32:24, 33:1, 33:5.
**interests** 26:20, 26:23, 28:2.
**intermediate** 27:9.
**intermittent** 23:23.
**internal** 13:6.
**interventions** 3:23.
**intolerable** 23:7, 35:3.
**intrusive** 16:25.
**investigated** 5:13, 8:3.
**investigating** 34:17.
**investigation** 7:22, 8:22, 10:15, 10:21, 11:5, 11:7, 14:9, 20:1, 34:5.
**involvement** 7:5.
**involving** 7:3, 16:19.
**irreparable** 16:15, 17:7, 17:17, 17:18, 17:19, 17:23, 18:2, 18:5, 19:8, 20:3.
**irrespective** 32:17.
**issuance** 17:18.
**issue** 2:19, 12:8, 17:12, 25:12, 35:2, 35:6, 35:12, 36:13, 36:25, 37:2, 40:11.
**issues** 7:3, 14:18.
**itself** 25:2.
.
.
**< J >.**
**J.** 1:23.
**Jail** 18:18.
**Jerkins** 10:11, 12:11.
**JESSICA** 1:28.

**Johnson** 23:12.
**joining** 8:12.
**judgment** 16:17.
**Judicial** 16:20, 27:8, 28:20, 41:8.
**juncture** 20:2.
**justice** 17:4.
**justification** 31:5, 31:20, 31:21.
**justified** 26:13.
**justify** 26:24.
.
.
**< K >.**
**K.** 1:30.
**keep** 22:2, 25:22.
**keep-on-person** 9:8.
**keeps** 26:5.
**KELLY** 1:43.
**knowledge** 21:7, 21:20, 22:24, 23:21.
.
.
**< L >.**
**lack** 11:9, 11:13, 40:3.
**lacking** 11:15.
**language** 7:8.
**last** 2:10, 8:18, 28:22.
**lasted** 14:16.
**late** 5:1, 5:8, 5:15, 8:11, 40:9.
**later** 3:1, 8:3, 10:9, 13:2.
**LAUREN** 1:29.
**Law** 1:37.
**lawsuit** 8:12, 16:15.
**layperson** 22:21.
**leaders** 13:14.
**learned** 12:22, 13:9.
**least** 13:13, 14:10, 16:25, 22:4, 31:12, 31:18, 38:11.
**leave** 10:6.
**leaving** 33:1.
**left** 15:11, 37:1.
**legal** 10:3, 12:1, 13:25, 14:17, 14:25, 20:17, 38:20, 38:25.
**legitimate** 25:19, 26:19, 26:23, 27:12, 28:2.

**length** 36:6 .
**less** 4:11 .
**level** 17:22, 26:13, 27:8, 27:16 .
**levels** 12:12 .
**Levy** 1:32 .
**liability** 21:13, 23:9 .
**liable** 15:23 .
**life** 3:14 .
**light** 13:15 .
**likelihood** 17:6, 17:8, 17:17, 18:2, 18:5, 20:3, 20:15, 21:17, 21:22, 23:15, 24:20, 27:20, 31:7 .
**likely** 19:8, 20:5 .
**limitation** 33:13 .
**limited** 16:20 .
**link** 30:15 .
**Litigation** 16:21, 21:18, 23:16, 24:21 .
**LLP** 1:32 .
**long** 23:4, 37:23 .
**longer** 5:17 .
**look** 37:21 .
**loss** 15:25 .
**lot** 36:8 .
**Lowe** 23:12 .
**Lowell** 4:15, 18:9, 18:25, 36:23 .
.
.
**< M >** .
**M.** 1:36, 1:37, 1:43 .
**MADDOX** 1:23 .
**makers** 26:6 .
**male** 3:17, 4:17, 4:22, 5:2, 5:24, 6:2, 6:4, 6:5, 8:1, 8:7, 8:17, 10:5, 20:21, 21:21, 22:6, 26:2, 32:6 .
**manage** 19:14 .
**management** 18:24 .
**mandate** 28:20 .
**mandating** 22:20 .
**mandatory** 17:13 .
**manner** 19:15, 27:19 .
**market** 5:22 .
**Maryland** 1:2, 1:17, 2:19, 41:4 .

**Mason** 30:1 .
**material** 3:4 .
**materials** 9:19, 9:24 .
**matter** 2:25, 7:1, 7:21, 8:22, 10:20, 11:4, 16:7, 20:2, 23:21, 25:5, 34:5, 34:16, 41:7 .
**matters** 13:15 .
**MATTHEW** 1:23 .
**MCIW** 20:12, 20:14 .
**MD** 1:34, 1:47 .
**meal** 15:17 .
**meaning** 21:24, 24:10, 34:10 .
**meaningful** 2:21, 16:17 .
**means** 16:25 .
**meant** 25:1 .
**medical** 3:19, 3:22, 4:3, 9:17, 9:23, 15:9, 15:15, 19:4, 22:9, 22:14, 22:17, 22:19, 22:24, 23:1, 23:4, 23:9, 23:11, 26:4, 28:25, 31:13, 32:4, 32:18, 32:20, 33:2, 34:12 .
**medically** 19:6, 19:12, 31:9, 31:23, 36:22 .
**medication** 12:15, 16:10, 35:17, 38:14, 39:9, 40:5 .
**medications** 9:7, 38:12 .
**meet** 7:18 .
**meeting** 10:19, 12:24 .
**member** 5:4 .
**members** 8:23, 8:24, 19:21 .
**memorialize** 35:12 .
**menopause** 4:16 .
**mental** 3:13, 7:16, 18:16, 19:2, 32:20 .
**mention** 36:18 .
**Mercy** 15:10, 15:15 .
**Merit** 41:2 .
**merits** 16:17, 17:9, 20:15, 21:18, 21:22, 23:15, 24:20, 27:20, 31:8 .
**MERRILYN** 1:44 .
**messages** 13:5, 13:10, 13:12, 15:5, 15:22 .

**met** 8:11, 10:13, 11:10, 32:22 .
**mid** 7:2, 10:4 .
**Miller** 30:9 .
**minutes** 14:16 .
**minutiae** 33:6 .
**Missed** 4:14, 12:10, 12:16 .
**missing** 11:19 .
**mistreatment** 7:10 .
**misuse** 16:3 .
**Mitchell** 41:2, 41:16 .
**modifications** 30:3, 30:7 .
**modify** 29:1 .
**money** 13:12 .
**MONOD** 1:31 .
**month** 4:25, 5:17, 23:13 .
**mood** 4:16 .
**motion** 2:4, 2:5, 2:6, 2:24, 3:1, 33:9, 35:5 .
**Motions** 1:22, 2:2 .
**Moving** 2:3, 20:15, 23:25 .
**Moye** 40:14 .
**multiple** 9:22, 22:4 .
**murder** 3:16 .
**muscle** 4:9 .
**Muslim** 8:18, 8:24, 10:17, 12:23 .
**mute** 35:14 .
**myself** 35:1 .
.
.
**< N >** .
**name** 8:18 .
**named** 10:5 .
**narrowly** 16:23, 20:13, 38:24 .
**nature** 30:8 .
**necessary** 16:24, 16:25, 19:6, 19:12, 19:19, 27:18, 31:9, 31:24, 36:9, 38:11, 38:19 .
**necessity** 22:22 .
**need** 18:7, 23:1, 36:7, 38:9, 39:19, 39:21 .
**needs** 22:17, 22:19, 22:24, 23:11, 28:5, 32:21,

**met** 32:22 .
**negative** 3:20 .
**negligent** 6:13 .
**nevertheless** 22:25 .
**Next** 10:9, 22:8, 25:25, 33:15, 40:13 .
**NO.** 1:9 .
**nonconsensual** 6:16 .
**nonfunctional** 4:10, 9:14 .
**nonretaliatory** 31:5, 31:19 .
**normal** 12:12 .
**normally** 17:14 .
**NORTHERN** 1:3 .
**Notably** 24:24 .
**note** 2:13, 31:19, 32:1, 32:8 .
**noted** 3:9 .
**notes** 1:50, 15:12 .
**notices** 15:4 .
**notion** 34:20 .
**nursing** 15:12 .
.
.
**< O >** .
**objective** 20:25, 22:18, 24:6, 24:7, 24:14, 30:23 .
**objectively** 24:9, 24:23 .
**obligated** 30:6 .
**obligations** 38:20, 38:25 .
**obliged** 30:3 .
**observations** 13:15 .
**observe** 14:11 .
**observed** 12:14, 14:10 .
**obvious** 22:21 .
**Obviously** 35:11 .
**occur** 12:23 .
**occurred** 9:2, 15:8, 16:5 .
**offered** 14:15, 18:10, 19:1 .
**offering** 14:8 .
**Office** 1:37, 1:45 .
**officers** 14:4 .
**Official** 21:6, 22:16, 24:16,

33:25, 41:1, 41:17 .
**officials** 13:2, 13:9, 21:11,
21:25, 22:13, 23:1,
23:19, 24:15, 25:11,
27:17, 28:18, 33:1 .
**Okay** 38:7, 39:24 .
**Once** 22:25, 31:3 .
**one** 2:13, 4:25, 9:15, 15:17,
20:17, 20:18, 22:4,
22:19, 23:8, 25:4, 30:21,
35:16, 35:24, 39:7 .
**ongoing** 25:7, 36:25 .
**open** 5:22 .
**operate** 27:18 .
**operation** 17:4 .
**operations** 33:6 .
**opponents** 24:7 .
**opportunity** 2:21, 28:19,
34:19 .
**opposed** 2:6 .
**oral** 2:11, 10:6 .
**order** 2:5, 5:13, 8:3, 16:13,
34:9, 34:14, 34:15,
35:12, 36:13, 36:18,
37:3, 37:7, 38:1, 38:10,
38:19, 39:16, 40:12 .
**ordered** 38:22, 39:11 .
**ordering** 20:13 .
**ordinary** 9:6 .
**others** 26:9 .
**otherwise** 29:11, 29:18,
30:5 .
**outcome** 28:20 .
**outset** 2:13 .
**over-the-counter** 38:12,
38:14, 39:9, 39:18,
40:5 .
**oversight** 36:18 .
**own** 29:13, 32:9 .

.

.

**< P >.**
**P.** 1:28 .
**p.m.** 40:17 .
**packet** 11:22, 11:23,
13:22 .
**page** 41:7 .
**paid** 3:6 .
**Pain** 3:20 .
**paper** 11:17 .

**papers** 9:23 .
**part** 3:19, 6:14, 14:10,
33:9, 35:16 .
**participate** 5:25 .
**participation** 29:8, 29:13,
29:20, 30:5 .
**parties** 2:7, 2:10, 2:20, 3:9,
9:16 .
**party** 13:11, 38:16 .
**passed** 13:10 .
**past** 17:22 .
**patient** 4:15 .
**Patricia** 41:2, 41:16 .
**Patuxent** 5:24, 6:22, 7:8,
7:19, 8:7, 8:19, 13:2,
13:9, 15:9, 19:21, 20:10,
21:21, 21:25, 22:2, 22:7,
23:19, 25:11, 31:13,
34:4 .
**pendency** 16:15 .
**pending** 2:4, 2:24, 10:15,
34:13, 34:15 .
**penis** 10:6 .
**Pennsylvania** 1:38 .
**penological** 26:19, 27:12,
28:2 .
**pens** 9:23, 11:17 .
**per** 9:23 .
**perceived** 8:19 .
**perhaps** 22:4, 34:2 .
**period** 9:13, 12:25, 14:5,
25:23 .
**permitted** 10:6 .
**person** 28:4, 30:4 .
**personal** 19:18 .
**personnel** 28:11 .
**persons** 5:6, 5:10, 26:6,
28:6, 31:14, 37:12,
37:14, 37:24 .
**persuaded** 18:10 .
**phone** 13:7, 15:25 .
**physical** 19:21, 20:9,
20:24, 24:11 .
**physician** 22:20 .
**piecemeal** 16:18 .
**place** 19:10, 25:17, 28:6,
28:15, 33:3, 33:15 .
**placed** 4:24, 5:23, 6:21,
9:4, 11:20, 24:2, 24:25,
25:1, 25:18, 25:23,

27:25, 28:10, 28:16,
28:17, 31:18, 32:5,
34:25 .
**Placement** 4:21, 5:2,
18:21, 18:23, 19:10,
20:5, 20:12, 28:25, 29:3,
31:20, 31:22 .
**placing** 20:20, 21:20 .
**Plaintiffs** 1:7, 1:26,
39:3 .
**plan** 4:1 .
**planned** 6:3 .
**plausibly** 26:8, 26:12 .
**point** 4:20, 5:19, 6:1, 9:4,
9:6, 11:11, 11:15, 14:9,
23:8, 32:11, 37:11, 39:7,
40:14 .
**pointed** 36:17 .
**pointing** 36:20 .
**policies** 9:9, 29:2, 37:8,
37:19, 37:23 .
**policy** 18:13, 19:13, 19:16,
19:18, 26:16, 27:24,
28:3, 28:13 .
**population** 8:7, 12:5,
13:18, 22:6 .
**Porter** 24:18 .
**portion** 37:7 .
**pose** 19:17 .
**posed** 22:1, 24:23 .
**poses** 24:10 .
**position** 14:20, 39:11 .
**positions** 2:12 .
**possession** 9:8 .
**possible** 14:13 .
**potential** 6:14, 8:23, 13:5,
35:6 .
**potentially** 3:4, 4:2, 8:12,
14:25 .
**practicable** 33:24 .
**PREA** 10:10, 15:6,
18:17 .
**prejudice** 2:25 .
**preliminary** 2:5, 16:14,
17:6, 17:7, 17:13 .
**prerequisite** 17:18 .
**prescribed** 5:16, 16:11,
18:4, 19:4, 33:19, 35:10,
36:22, 38:4, 40:2 .
**prescription** 5:18 .

**Present** 1:49, 6:15, 18:23,
34:19 .
**presentation** 3:7, 3:20 .
**presented** 2:11, 3:3, 3:10,
5:20, 6:23, 9:15, 12:14,
14:23, 19:3, 23:17,
39:25 .
**preserve** 16:16, 17:13 .
**pressure** 4:17 .
**pretextual** 31:22 .
**prevent** 16:15 .
**previously** 28:16 .
**prima** 30:13, 31:3 .
**Prison** 9:8, 16:21, 18:18,
21:5, 21:11, 22:13,
22:16, 23:1, 23:19,
24:15, 25:11, 26:14,
26:16, 26:17, 26:22,
26:23, 27:2, 27:4, 27:10,
27:16, 27:17, 28:12,
28:18, 32:16, 32:25,
33:1, 33:6 .
**prisoner** 21:2, 23:2,
26:18 .
**prisoners** 4:22, 16:19 .
**problems** 18:24 .
**procedure** 12:2 .
**proceed** 17:8 .
**proceeding** 3:1, 40:14 .
**Proceedings** 1:21, 40:17,
41:6 .
**process** 33:24, 38:12 .
**procurement** 38:12 .
**products** 5:22, 39:14 .
**profession** 19:4 .
**professional** 7:16 .
**proffered** 31:19 .
**program** 5:25, 7:3, 7:6,
11:22, 29:15, 29:19 .
**programs** 29:9, 30:6 .
**prohibition** 22:12 .
**prong** 24:7, 24:14,
25:13 .
**proof** 31:4 .
**proper** 17:3 .
**prospective** 16:22,
39:10 .
**protect** 16:14, 20:19,
22:3 .
**protected** 30:14, 30:16,

30:19, 31:1 .
**Protection** 9:5, 26:4,
   27:10, 27:15 .
**provide** 7:21, 8:1, 20:12,
   22:9, 22:14, 31:5, 33:13,
   40:4 .
**provided** 2:11, 5:12, 13:21,
   18:25, 23:4, 36:24, 37:4,
   37:7, 38:10, 40:3 .
**providers** 18:16, 33:2 .
**provides** 18:18, 29:6,
   29:11 .
**providing** 39:21 .
**provision** 37:3, 37:18 .
**provisions** 35:7 .
**psychiatrist** 18:15 .
**Public** 1:10, 3:15, 17:3,
   17:10, 29:9, 29:19, 30:6,
   30:8, 32:15, 32:19,
   32:24, 33:1, 33:5 .
**Pugh** 21:15 .
**punishment** 22:13,
   24:1 .
**purpose** 16:13 .
**purposeful** 26:11 .
**purposes** 2:24, 25:8 .
**pursuant** 9:8, 41:5 .
**pursue** 7:23, 11:1 .
**pursuing** 11:9 .
**pushed** 14:1, 14:3,
   19:23 .
**put** 26:23 .
   .
   .
**< Q >.**
**qualified** 29:6, 29:11,
   29:18 .
**questions** 35:22 .
**quo** 16:14, 17:14 .
**quote/unquote** 13:17 .
   .
   .
**< R >.**
**raised** 13:15, 14:18,
   27:16 .
**random** 10:1 .
**rather** 40:10 .
**rational** 26:22, 28:3 .
**RATLIFF** 1:44, 35:24,
   36:10, 36:14, 37:6,

37:17, 38:2, 39:5, 39:7,
   39:22, 40:6, 40:7 .
**Raynor** 21:15 .
**razors** 11:15, 12:25, 36:19,
   36:24, 37:4, 37:13,
   37:20, 37:24, 37:25,
   38:3 .
**reaching** 14:13 .
**read** 35:11 .
**ready** 27:3 .
**really** 25:9, 36:7 .
**Realtime** 41:3 .
**reason** 14:14, 28:12, 29:7,
   29:12, 38:22 .
**reasonable** 25:22, 30:3,
   30:22, 40:4 .
**reasonableness** 27:4 .
**reasonably** 21:13, 23:2,
   26:19, 27:11, 28:1 .
**reasons** 2:22, 25:19, 28:5,
   28:7 .
**reassignment** 3:23 .
**recall** 8:4, 37:10,
   37:11 .
**receipt** 9:12 .
**receive** 29:18, 30:4,
   30:5 .
**received** 5:19, 6:10, 6:11,
   12:19, 13:6, 14:4, 15:17,
   15:20, 23:18, 31:12,
   33:22, 33:23 .
**receives** 33:18 .
**receiving** 7:7, 12:14,
   29:15 .
**recognize** 2:20, 22:21,
   29:24, 32:24 .
**recognizes** 28:5 .
**record** 19:7 .
**recorded** 13:7 .
**recording** 35:17,
   35:18 .
**records** 15:15, 33:25 .
**recovery** 29:16 .
**recreation** 9:22, 14:6 .
**Rectors** 29:25 .
**redress** 20:9, 20:12 .
**referred** 6:6, 7:22,
   10:20 .
**reflect** 15:13 .
**Reform** 16:21 .

**refusal** 22:12 .
**refused** 10:10, 15:9,
   22:10 .
**regard** 35:1, 37:16,
   38:21 .
**regarding** 6:11, 8:12, 19:9,
   19:23, 25:21, 33:21,
   36:1 .
**regards** 31:13 .
**Registered** 41:2 .
**regular** 25:20 .
**regulation** 26:22, 27:5 .
**regulations** 41:8 .
**Rehab** 28:23 .
**Rehabilitation** 29:11,
   29:22 .
**Reisterstown** 1:46 .
**rejected** 5:4 .
**related** 22:25, 26:19, 27:11,
   28:2 .
**relationship** 6:8, 6:12,
   30:25, 31:1 .
**relationships** 6:15 .
**released** 11:6 .
**relevant** 26:7 .
**relief** 16:8, 16:20, 16:22,
   16:23, 17:6, 17:16,
   17:19, 17:20, 20:4,
   20:17, 32:7, 32:11, 33:8,
   34:9, 34:17, 35:10 .
**rely** 21:14 .
**remain** 25:21 .
**remained** 11:2, 11:5 .
**remains** 16:1, 20:5 .
**remember** 37:15 .
**removal** 38:5 .
**render** 16:16, 40:10 .
**repeating** 35:1 .
**report** 8:18, 11:16 .
**reported** 7:19, 8:15, 10:18,
   11:18, 13:4, 14:6 .
**reportedly** 11:23 .
**Reporter** 41:1, 41:2, 41:3,
   41:17 .
**reports** 9:10, 9:11 .
**request** 2:8, 4:21, 5:5, 5:7,
   6:10, 6:12, 6:14, 6:19,
   6:21, 6:23, 6:25, 12:4,
   33:14, 35:22, 38:17 .
**requested** 6:3, 6:17, 6:18,

16:9, 28:9 .
**requesting** 5:3, 35:21 .
**requests** 8:9 .
**require** 32:12, 39:18 .
**required** 3:2, 17:2 .
**requirement** 31:3 .
**requirements** 29:23 .
**requires** 4:13, 21:1,
   21:7 .
**requiring** 25:10 .
**resolve** 3:2 .
**resources** 27:3, 28:12 .
**respect** 32:9, 32:17, 37:8,
   39:1 .
**respectfully** 37:6 .
**respective** 2:12 .
**respects** 26:7 .
**respond** 23:2 .
**responded** 21:13 .
**response** 9:6, 10:9 .
**restraining** 2:5, 16:13 .
**restrictions** 27:11 .
**result** 4:18, 18:6, 19:8,
   26:10 .
**resulted** 23:11 .
**resulting** 24:11, 24:13 .
**resumed** 12:17 .
**retaliate** 13:6 .
**retaliated** 11:18 .
**retaliation** 8:23, 13:19,
   24:4, 29:4, 30:12, 30:13,
   31:4, 31:17, 39:1 .
**Retaliatory** 15:18, 16:11,
   38:17, 38:18, 38:21 .
**retribution** 8:23 .
**return** 13:18 .
**returned** 15:12 .
**revealed** 8:22, 8:25 .
**review** 10:13, 26:15 .
**reviewed** 3:8, 15:15 .
**rights** 20:23, 27:10 .
**rise** 17:22, 31:2 .
**risk** 3:19, 6:15, 6:16, 13:18,
   20:20, 20:25, 21:2, 21:4,
   21:7, 21:10, 21:12,
   21:14, 21:20, 22:1,
   22:11, 22:25, 23:2, 24:4,
   24:12, 24:17, 24:24,
   25:3, 25:15, 37:20 .
**risked** 26:3 .

risks 19:18 .
RMR 41:16 .
Road 1:46 .
room 9:22 .
routine 12:2 .
rule 18:18 .
Rules 2:14 .
RULING 1:22, 16:7, 25:9, 40:10, 40:12 .
rumor 10:16, 11:3 .
rumors 8:22, 8:25 .
.
.
< S > .
safe 6:6, 15:10, 27:18, 32:25 .
Safety 1:10, 3:15, 6:15, 10:16, 17:3, 18:19, 18:23, 19:18, 19:19, 20:20, 21:7, 21:8, 21:12, 21:20, 21:25, 24:17, 24:24, 25:3, 25:15, 28:3, 28:7, 32:16, 37:9 .
safety-related 25:19 .
sanctioned 15:24 .
sanitation 10:7 .
sat 3:6 .
satisfied 32:22 .
satisfy 24:7, 24:14, 31:2, 38:10 .
saying 37:12 .
scheduled 2:9 .
School 2:17, 11:22, 13:22 .
Scott 6:4 .
scrutiny 26:13, 27:9, 27:17 .
SE 1:38 .
search 14:14, 14:15, 14:21, 14:24, 15:1 .
searches 10:2 .
Second 13:22, 21:5, 26:25, 29:18, 30:20 .
second-guessing 25:16 .
Section 23:25, 25:25, 28:23, 29:10 .
secure 16:18, 27:19 .
security 18:24, 19:16, 25:19, 37:9, 37:20,

37:23 .
seeing 8:4 .
seeking 29:16 .
seen 7:17, 15:9 .
sentence 3:14, 3:16 .
serial 8:8 .
serious 3:18, 4:14, 19:17, 20:23, 20:24, 21:10, 22:17, 22:18, 22:24, 23:1, 23:11, 24:9, 24:10, 24:11, 24:12, 24:23 .
served 15:3 .
service 10:17, 12:23, 18:16, 29:19, 30:8, 33:2 .
Services 1:11, 3:15, 9:23, 19:1, 28:25, 29:9, 30:4, 31:24, 32:4 .
serving 3:14, 3:16 .
set 20:16, 36:12 .
settings 18:17, 19:2 .
several 2:7, 14:2, 20:16, 20:17, 32:2 .
sex 3:17, 3:23, 6:16, 9:2, 10:6, 10:17, 13:12, 25:25 .
sexual 4:22, 6:8, 6:11, 6:15, 6:16, 8:16, 8:25, 11:4, 11:7, 12:22, 14:8, 15:5, 15:13, 15:23, 16:4, 26:3 .
sexually 4:10, 4:23, 7:25, 10:4 .
shall 16:21, 29:7, 29:12 .
share 6:3, 6:10 .
sharing 6:6 .
SHARON 1:30 .
shave 13:1 .
shifts 31:4 .
shock 23:6 .
shouldn't 37:20 .
show 23:10, 30:17, 30:24 .
showed 12:12, 28:14 .
showers 9:22, 11:18 .
showing 21:19, 24:22, 25:14, 31:8, 31:21 .
shrunken 4:10 .
signed 7:12, 7:13,

8:13 .
significant 20:24, 24:11, 28:10, 30:21 .
similarly 26:10 .
simply 31:22 .
sit 37:14 .
situated 26:10 .
situation 12:8, 17:15, 35:4 .
situations 17:24 .
slurs 5:9, 7:8 .
small 39:7 .
social 3:24, 7:18, 10:18, 18:7, 19:3, 19:5, 19:11 .
society 21:1 .
sole 35:2 .
solely 2:23, 29:12 .
solicitation 15:5, 16:4 .
sorry 10:24, 36:16 .
sort 18:8 .
sound 36:7 .
sounds 8:8 .
Southern 27:13 .
sparingly 17:12 .
speaking 20:10 .
special 32:20 .
specific 5:12, 7:21, 8:1, 8:2, 38:23 .
specifically 4:13, 8:16, 19:25, 20:10, 31:9, 36:21, 37:25 .
specified 39:16 .
spend 36:7 .
spikes 4:16 .
spite 26:2 .
spoke 7:8 .
spotty 23:18 .
staff 5:4, 15:9, 19:21, 31:15, 32:4, 34:11 .
stage 21:18, 23:16, 24:21 .
stairs 14:1, 14:2 .
standard 4:12, 17:23, 26:18, 27:8 .
Standards 18:18, 21:3, 29:24 .
standards. 19:16 .
stands 40:15 .
start 39:21 .

started 12:25, 33:13 .
state 26:7 .
stated 11:9 .
statements 8:4, 25:10 .
States 1:1, 5:18, 16:21, 27:13, 30:3, 41:3, 41:9 .
status 10:13, 16:14, 17:14, 24:3, 25:11, 32:17, 32:18, 35:7, 36:1 .
statute 29:17 .
stenographically-reported 41:6 .
stenotype 1:50 .
steps 14:2, 19:23 .
Stewart 6:9, 6:19, 6:20, 6:24, 6:25, 7:5, 7:8, 7:15, 7:25, 8:9, 9:21, 12:21, 14:10, 35:7, 35:25, 36:24, 37:1, 37:12 .
sticking 40:8 .
Street 1:33 .
strength 4:10 .
strictly 2:14 .
strip 10:2, 14:14, 14:15, 14:21, 14:24, 15:1 .
strip-searched 11:25, 14:12 .
subject 10:1, 27:11, 33:14, 38:13, 39:16 .
subjected 29:10, 29:14 .
subjective 22:18, 24:7, 25:13 .
submitted 5:2, 5:8, 10:10, 11:23 .
substantial 17:2, 20:25, 21:10, 21:12, 23:11, 24:12 .
substantiate 34:13 .
substitute 40:5 .
substitutes 38:5 .
substitution 39:10 .
success 20:15, 21:17, 21:22, 23:15, 24:20, 27:20, 31:7 .
suffer 17:20 .
suffered 4:21, 17:22, 30:15 .

**suffering** 3:21, 7:11.
**sufficient** 20:3, 31:2, 36:3, 36:5.
**sufficiently** 24:9, 24:23, 38:24.
**suggest** 5:21, 6:23.
**suggesting** 25:2.
**suicidality** 3:21.
**suicide** 3:19.
**Suite** 1:33, 1:46.
**supplement** 35:5.
**supply** 7:13, 7:14, 8:14.
**support** 18:10, 34:12, 34:20.
**supporting** 30:22.
**Supreme** 2:15.
**surgery** 3:23.
**surrounding** 7:3, 10:16, 14:24, 16:4.
**surveillance** 9:14.
**swings** 4:16.
**system** 17:4, 32:25.
.
.
**< T >.**
**tablet** 9:23, 11:17, 15:4, 15:25, 16:3.
**team** 10:13.
**teleconference** 3:8.
**temporal** 31:1.
**temporary** 2:4, 6:20, 16:13, 22:3.
**termed** 3:24.
**terms** 35:13, 38:11.
**test** 20:22.
**testified** 12:8, 12:11, 18:3, 20:8, 24:25.
**testimonial** 25:10.
**testimonies** 3:5.
**testimony** 2:11, 6:25, 9:20, 14:15, 18:9, 18:11, 19:25, 20:2, 23:17, 36:23, 37:11, 37:15, 38:5, 39:13, 40:1.
**Texas** 2:15.
**themselves** 14:8.
**therapies** 4:13.
**therapy** 3:23, 15:17, 18:2, 22:11, 23:18, 23:23.

**thereof** 20:25.
**they'll** 34:18, 34:19.
**third** 13:10, 27:3, 30:24.
**though** 28:15.
**threat** 10:16.
**threatened** 7:25, 8:5, 8:6, 19:24.
**threats** 4:22, 13:13, 14:4, 15:23, 16:2, 22:5.
**three** 29:19, 30:12.
**three-way** 15:22.
**tier** 5:24, 6:22, 7:9, 9:13, 20:8, 20:10, 21:21, 25:1.
**timing** 14:19, 14:22.
**tiny** 35:24.
**Title** 29:6.
**today** 12:11, 33:12, 37:15, 40:12.
**tone** 4:10.
**touched** 34:25.
**toward** 7:15, 33:10.
**towards** 5:6, 31:14.
**traditionally** 17:24.
**transactions** 13:12.
**TRANSCRIPT** 1:21, 41:6, 41:7.
**transcription** 1:50.
**transfer** 5:3, 16:12, 18:8, 19:6, 20:8.
**transferred** 6:4, 12:5, 15:10, 18:6, 20:13.
**transgender** 3:12, 5:6, 5:10, 18:22, 24:3, 27:25, 31:14, 32:19, 32:21, 33:3.
**transition** 3:25, 4:5, 4:6, 18:7, 19:3, 19:5, 19:11.
**treat** 19:14.
**treated** 3:22, 18:25, 26:9.
**treating** 18:15, 26:6, 33:1.
**treatment** 4:1, 4:9, 5:20, 9:12, 9:17, 15:19, 16:10, 18:9, 18:14, 18:17, 19:2, 19:16, 22:20, 23:3, 23:4, 23:5, 23:10, 26:4, 26:10,

26:19, 28:4, 31:10, 31:13, 32:5, 33:18, 33:21, 34:1, 36:21.
**trial** 3:1, 16:18.
**true** 14:18, 20:7, 41:5.
**turn** 4:18, 16:7, 35:9.
**turned** 12:7.
**Turning** 25:25, 32:1, 32:15.
**twice** 34:2.
**Two** 3:16, 11:1, 11:4, 13:2, 15:3, 28:22.
**two-part** 20:22.
**typically** 27:9.
.
.
**< U >.**
**U.S.** 2:16.
**ultimately** 5:13, 7:22, 16:16.
**unbearably** 12:9.
**uncomfortable** 9:10.
**understand** 4:12, 5:5, 7:2, 9:6, 12:7, 15:25, 16:8, 23:21, 34:4, 34:16, 35:13, 38:20.
**Understood** 35:11, 39:22.
**undertaken** 34:6.
**undue** 30:9.
**unequal** 26:10.
**Unfortunately** 9:13.
**unfounded** 5:14, 10:24, 11:1, 34:21.
**unique** 26:14.
**unit** 35:8.
**United** 1:1, 5:18, 27:12, 41:3, 41:9.
**University** 2:15, 5:24, 7:3, 9:25, 11:22, 11:24, 13:21, 30:1.
**unknown** 12:13.
**unless** 16:22.
**unnecessary** 38:24.
**unpublished** 30:10.
**unusual** 22:13, 24:1.
**unwillingly** 21:4.
**upset** 8:19.
.
.

**< V >.**
**v.** 2:15, 2:17, 21:15, 23:12, 24:18, 27:5, 27:12, 27:14, 29:25, 30:9.
**valid** 26:22, 28:2.
**various** 16:8, 28:6, 30:5.
**veiled** 13:13.
**Veney** 27:14.
**verbatim** 35:11.
**verification** 33:19, 33:24.
**Via** 1:24.
**video** 3:8, 35:18.
**Videoconference** 1:24.
**violates** 21:3.
**violation** 14:8, 15:21, 16:24, 17:1, 26:7, 29:17.
**violence** 8:1.
**Virginia** 27:13.
**visit** 12:1, 13:25, 14:17, 14:25.
**Visitors** 29:25.
**visits** 10:3.
**VOLUME** 1:13.
**vs** 1:8.
.
.
**< W >.**
**W.** 6:23, 6:25, 7:8.
**wait** 40:11.
**wall** 14:3.
**wanted** 36:19.
**wants** 34:17.
**Warden** 4:20, 6:9, 6:19, 6:20, 7:5, 7:15, 7:24, 8:8, 9:21, 12:21, 14:10, 36:24, 37:1, 37:11.
**warrants** 28:19.
**Washington** 1:39.
**WCI** 4:5, 4:6, 4:21, 4:24, 5:4, 5:9, 6:5, 7:20, 11:8, 28:17, 31:12.
**WEBER** 1:28, 35:14, 35:15, 35:20, 36:15, 36:16, 37:5, 38:3, 38:8, 38:15, 39:2, 39:3.
**week** 2:10, 9:23, 33:21,

40:13.

**weeks** 40:11.

**weight** 17:2.

**WEISBAUM** 1:30.

**welfare** 26:14.

**West** 27:13.

**whether** 9:2, 9:3, 10:16,
   11:3, 18:21, 18:23,
   19:10, 19:11, 21:1, 25:5,
   25:21, 27:24, 33:2,
   34:24, 37:15, 39:19.

**whole** 36:8.

**whom** 26:9.

**will** 2:22, 2:23, 2:25, 16:7,
   17:8, 27:1, 31:1, 33:9,
   33:13, 33:17, 34:9,
   34:22, 35:12, 38:1, 38:9,
   38:13, 39:16, 39:18,
   39:19, 40:12.

**Williamston** 10:5, 10:19,
   10:23.

**Wilson** 27:12.

**wished** 24:25.

**withdrew** 5:7, 5:10.

**within** 33:15, 37:7.

**without** 2:25, 28:20.

**witness** 12:14.

**witnesses** 3:5, 3:10.

**woman** 3:12.

**women** 3:16, 4:21, 5:3,
   6:22, 12:5, 16:12, 18:7,
   18:8, 19:6, 19:11, 20:8,
   20:9, 20:10, 24:25, 25:1,
   28:10, 28:16, 34:25.

**Wonderful** 36:14.

**work** 11:22, 12:11, 12:13,
   13:22, 20:11.

**worker** 7:19, 10:18.

**worsening** 4:18.

**writing** 11:13, 11:14.

**written** 8:4, 15:1, 35:11,
   36:13, 40:11, 40:12.

**wrote** 4:20.

**Wyche** 27:14.

.
.

**< Y >.**

**yard** 14:6, 14:21, 15:5,
   16:5.

**year** 6:9.

**you-all** 40:8.