# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| CHELSEA GILLIAM, *et al.*, | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No. 1:23-cv-1047 |
| | * | |
| DEPARTMENT OF PUBLIC SAFETY | | |
| AND CORRECTIONAL SERVICES, *et al.*, | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGMENT IN THE ALTERNATIVE.

Eve L. Hill (Bar No. 19938)
Sharon Krevor-Weisbaum (Bar No. 04773)
Jessica P. Weber (Bar No. 17893)
Evan Monod (Bar No. 30541)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland  21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
skw@browngold.com
jweber@browngold.com
emonod@browngold.com

Deborah M. Golden (Bar No. 18657)
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
202-630-0332
dgolden@debgoldenlaw.com

*Attorneys for Plaintiffs*

Dated: February 13, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 1

STANDARD OF REVIEW ....................................................................................................... 1

I.      The Court should not convert Defendants' Motion to Dismiss into a Motion for
        Summary Judgment. .................................................................................................. 2

II.     Defendant Johnson should be automatically substituted under Rule 25. ................... 3

III.    The Prison Litigation Reform Act does not bar Plaintiffs' claims. ............................. 3

        A.      The PLRA's exhaustion requirement does not apply to Ms. Holland's claims. ........... 4

        B.      Ms. Grey has complied with the PLRA's exhaustion requirement. ............................ 5

IV.     The Maryland Prison Litigation Act does not bar Ms. Holland's and Ms. Grey's claims. ........ 7

V.      Sovereign immunity does not bar Plaintiffs' claims. .................................................. 9

        A.      Plaintiffs' constitutional and federal law claims for injunctive relief fit within
                the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity. ............. 9

        B.      The Eleventh Amendment does not bar Plaintiffs' claims for damages against
                the Defendants in their individual capacities. ........................................................ 11

        C.      Sovereign immunity does not bar Plaintiffs' claims for damages under Title II
                of the ADA. ...................................................................................................... 12

        D.      Defendants are not immune from Plaintiffs' common law tort claims. ..................... 17

VI.     Plaintiffs adequately allege claims under the Eighth and Fourteenth Amendments. ........ 19

        A.      Failure to provide adequate medical care. ........................................................... 19

        B.      Failure to protect. ............................................................................................. 21

        C.      Cruel and unusual punishment. .......................................................................... 23

        D.      Plaintiffs adequately allege violations of the Equal Protection Clause. .................. 25

VII.    Plaintiffs adequately allege claims under Title II of the ADA. ................................. 27

VIII.   Plaintiffs adequately allege claims under Section 504 of the Rehabilitation Act. ........ 28

IX.    Plaintiffs pleaded sufficient facts to support a finding that Defendants were negligent in complying with professional standards of care and DPSCS policies. .................................... 28

       CONCLUSION ........................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Ferguson,*
  884 F.3d 219 (4th Cir. 2018)...................................................................................11-12

*Adamson v. Corr. Med. Servs.,*
  359 Md. 238 (2000) ...................................................................................................8-9

*Aleman v. State,*
  242 Md. App. 632 (2019) ............................................................................................8

*Amisi v. Riverside Reg'l Jail Auth.,*
  555 F. Supp. 3d 244 (E.D. Va. 2021) ........................................................................30

*Amos v. Maryland Department of Public Safety and Correctional Services,*
  178 F.3d 212 (4th Cir. 1998).....................................................................................13

*Antrican v. Odom,*
  290 F.3d 178 (4th Cir. 2002).......................................................................................9

*Aquilar–Avellaveda v. Terrell,*
  478 F.3d 1223 (10th Cir. 2007)...................................................................................6

*Armstrong v. Brown,*
  768 F.3d 975 (9th Cir. 2014) .....................................................................................11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................1-2

*Barbre v. Pope,*
  402 Md. 157 (2007) .....................................................................................17, 18, 29

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................................1

*Bosiger v. U.S. Airways,*
  510 F.3d 442 (4th Cir.2007)........................................................................................2

*Bostock v. Clayton Cnty.,*
  140 S.Ct. 1731 (2020)...........................................................................................25-26

*Bowers v. Nat'l. Collegiate Athletics Ass'n,*
  475 F.3d 524 (3d Cir. 2007) ...............................................................................13, 16

*Brandon v. Holt,*
  469 U.S. 464 (1985)....................................................................................................11

*Brice v. Virginia Beach Corr. Ctr.*,
   58 F.3d 101 (4th Cir. 1995) ........................................................................................22-23

*Brown v. Plata*,
   563 U.S. 493 (2011) ...................................................................................................10-11

*Caramillo v. Correct Care Sols., LLC*,
   2020 WL 4747786 (E.D. Va. Feb. 28, 2020) .................................................................30

*Chase v. Baskerville*,
   508 F. Supp.2d 492 (E.D. Va. 2007) ............................................................................16

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) .........................................................................................12, 14, 15

*Cofield v. Bowser*,
   247 Fed. App'x. 413 (4th Cir. 2007) ........................................................................ 4, 7

*Coll. Loan Corp. v. SLM Corp.*,
   396 F.3d 588 (4th Cir. 2005) .........................................................................................28

*Constantine v. Rectors & Visitors of George Mason Univ.*,
   411 F.3d 474 (4th Cir. 2005) .......................................................................13, 14, 15, 28

*Cooper v. Rodriguez*,
   443 Md. 680 (2015) .................................................................................................18, 30

*Custis v. Davis*,
   851 F.3d 358 (4th Cir. 2017) .......................................................................................3-4

*D.T.M. ex rel. McCartney v. Cansler*,
   382 F. App'x. 334 (4th Cir. 2010) .......................................................................9, 10, 24-25

*Danser v. Stansberry*,
   772 F.3d 340 (4th Cir. 2014) .................................................................................21, 22

*De'lonta v. Angelone*,
   330 F.3d 630 (4th Cir. 2003) ..........................................................................20, 21, 30

*De'lonta v. Johnson*,
   708 F.3d 520 (4th Cir. 2013) ..................................................................................20-21

*Dixon v. Baltimore City Police Dep't*,
   345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004) ...............17

*Doe v. Dist. of Columbia*,
   215 F. Supp.3d 62 (D.D.C. 2016) .................................................................................22

*Doe v. Wash. State Dep't. of Corr.*,
  No. 4:21-CV-5059-TOR, 2021 WL 2453099 (E.D. Wash. May 17, 2021) ........................................ 22

*Durham v. Kelley*,
  82 F. 4th 217 (3d Cir. 2023) .................................................................................................... 16

*Duvall v. Hogan*,
  Civil Action No. ELH-94-2541, 2020 WL 340301 (D. Md. June 19, 2020) ................................ 5, 7

*E.I. Du Pont de Nemours and Co. v. Kolon Industries, Inc.*,
  637 F.3d 435 (4th Cir. 2011) ..................................................................................................... 2

*Edelman v. Jordan*,
  415 U.S. 651 (1974) ................................................................................................................. 11

*Endicott v. Allen*,
  2019 WL 480014 (E.D. Mo. Feb. 7, 2019) .................................................................................. 3

*Estelle* v. *Gamble*,
  429 U.S. 97 (1976) ............................................................................................................ 20, 23

*Evans v. State*,
  396 Md. 256 (2006) .................................................................................................................. 8

*Ex Parte Young*,
  209 U.S. 123 (1908) ............................................................................................................ 9, 10

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ........................................................................................................ *passim*

*Fauconier v. Clarke*,
  966 F.3d 265 (4th Cir. 2020) .......................................................................................... 9, 10, 16

*Ford v. Baltimore City Sheriff's Off.*,
  149 Md. App. 107 (2002) ............................................................................................... 17, 18, 19

*Francis v. Maryland*,
  No. ELH-21-1365, 2023 WL 2456553 (D. Md. Mar. 10, 2023) .................................................. 19

*Garrett v. Wexford Health*,
  938 F.3d 69 (3d Cir. 2019) ........................................................................................................ 4

*Goodman v. Johnson*,
  524 F. App'x 887 (4th Cir. 2013) ........................................................................................ 20, 21

*Gordon v. Schilling*,
  937 F.3d 348 (4th Cir. 2019) .................................................................................................... 19

*Grimm v. Gloucester Cnty. Sch. Bd.,*
  972 F.3d 586 (4th Cir. 2020) ........................................................................................26

*Hafer v. Melo,*
  502 U.S. 21 (1991) ........................................................................................................11

*Hammock v. Andoh,*
  No. 22-7159, 2024 WL 33694 (4th Cir. Jan. 3, 2024) ..................................................22

*Harrods Ltd. v. Sixty Internet Domain Names,*
  302 F.3d 214 (4th Cir. 2002) ..........................................................................................2

*Hill v. O'Brien,*
  387 F. App'x. 396 (4th Cir. 2010) ...................................................................................6

*Holler v. Lowery,*
  175 Md. 149 (1938) .......................................................................................................29

*Iko v. Shreve,*
  535 F.3d 225 (4th Cir. 2008) ...................................................................................19-20

*In Re Charles K.,*
  135 Md. App. 84 (2000) ..................................................................................................8

*Jackson v. Fong,*
  870 F.3d 928 (9th Cir. 2017) ..........................................................................................4

*Jackson v. Lightsey,*
  775 F.3d. 170 (4th Cir. 2014) ........................................................................................20

*Jarboe v. Md. Dept. of Pub. Safety & Corr. Servs.,*
  No. ELH–12–572 (D. Md. Mar. 13, 2013) ......................................................................3

*Johnson v. Neiman,*
  504 F. App'x 543 (8th Cir. 2013) ............................................................................13, 14

*Jones v. Bock,*
  549 U.S. 199 (2007) ........................................................................................................4

*Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.,*
  788 F.Supp.2d 431 (D. Md. 2011), *aff'd,* 684 F.3d 462 (4th Cir. 2012) ......................2

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ......................................................................................................11

*King v. Rubenstein,*
  825 F.3d 206 (4th Cir. 2016) .....................................................................................2, 25

*Kingsley v. Hendrickson,*
　576 U.S. 389 (2015)...........................................................................................................19

*Lee v. Cline,*
　384 Md. 245 (2004)...........................................................................................................17

*Liscombe v. Potomac Edison Co.,*
　303 Md. 619 (1985)...........................................................................................................29

*Louisiana ex rel. Francis v. Resweber,*
　329 U.S. 459 (1947)...........................................................................................................16

*Lowe v. Johnson,*
　No. 21-7443, 2023 WL 7179461 (4th Cir. Nov. 1, 2023)...........................................20, 21

*Makdessi v. Fields,*
　789 F.3d 126 (4th Cir. 2015).............................................................20, 21, 23, 24

*Manikhi v. Mass Transit Admin.,*
　360 Md. 333 (2000)...........................................................................................................18

*Mayor & City Council of Baltimore v. Hart,*
　395 Md. 394 (2006)...........................................................................................................29

*Mazor v. State Dept. of Corr.,*
　279 Md. 355 (1977)...........................................................................................................7-8

*Miller v. Annucci,*
　2019 WL 4688539 (S.D.N.Y. Sept. 26, 2019)..................................................................3

*Moore v. Bennette,*
　517 F.3d 717 (4th Cir. 2008)..............................................................................................5

*Morris v. Carey,*
　No. 7:17cv00093, 2018 WL 3235816 (W.D. Va. Feb. 14, 2018)......................................6

*Morrison v. Garraghty,*
　239 F.3d 648 (4th Cir. 2001)............................................................................................26

*Murphy-Taylor v. Hofmann,*
　968 F. Supp. 2d 693 (D. Md. 2013)..............................................................................18, 30

*Nat'l Fed'n of the Blind v. Lamone,*
　813 F.3d 494 (4th Cir. 2016)..........................................................................................27, 28

*Neale v. Hogan, No. 21-7287,*
　2022 WL 12325186 (4th Cir. Oct. 21, 2022).....................................................................3

*Nevada Dep't of Human Res. v. Hibbs,*
    538 U.S. 721 (2003) ................................................................................................. 12

*Newell v. Runnels,*
    407 Md. 578 (2009) ................................................................................................. 19

*Okwa v. Harper,*
    360 Md. 161 (2000) ........................................................................................... 17, 18

*Pa. Dept. of Corr. v. Yeskey,*
    524 U.S. 206 (1998) .......................................................................................... 27, 28

*Parzyck v. Prison Health Servs., Inc.,*
    627 F.3d 1215 (11th Cir. 2010) ................................................................................. 6

*Phiffer v. Columbia River Corr. Inst.,*
    384 F.3d 791 (9th Cir. 2004) .................................................................................. 13

*Pitts v. State,*
    205 Md. App. 477 (2012) .......................................................................................... 8

*Porter v. Clarke,*
    852 F.3d 358 (4th Cir. 2017) .................................................................................. 11

*Porter v. Clarke,*
    923 F.3d 358 (4th Cir. 2019) .................................................................................. 24

*Raynor v. Pugh,*
    817 F.3d 123 (4th Cir. 2016) ............................................................................ 21, 22

*Romanesk v. Rose,*
    248 Md. 420 (1968) ................................................................................................. 29

*Ross v. Blake,*
    578 U.S. 632 (2016) ............................................................................................... 5, 6

*Sanchez v. Nassau Cnty.,*
    662 F. Supp.3d 369 (E.D.N.Y. 2023) ....................................................................... 4

*Sandin v. Conner,*
    515 U.S. 472 (1995) ................................................................................................. 25

*Scinto v. Stansberry,*
    841 F.3d 219 (4th Cir. 2016) ............................................................................ 19, 23

*Scott v. Clarke,*
    64 F. Supp.3d 813 (W.D. Va. 2014) ......................................................................... 5

*Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.,*
    673 F.3d 333 (4th Cir. 2012)................................................................................28

*Short v. Hartman,*
    87 F.4th 593 (4th Cir. 2023)..............................................................................*passim*

*Sioux City Bridge Co. v. Dakota Cty.,*
    260 U.S. 441 (1923)...........................................................................................25

*Sosebee v. Murphy,*
    797 F.2d 179 (4th Cir. 1986)..............................................................................20

*South Carolina State Ports Auth. v. Fed. Maritime Comm'n.,*
    243 F.3d 165 (4th Cir. 2001)..............................................................................10

*Spencer v. Kenma,*
    523 U.S. 1 (1998)..............................................................................................10

*Stoddard v. State,*
    395 Md. 653 (2006)............................................................................................7

*Tarpley v. Bishop,*
    No. 1881, 2019 WL 385087 (Md. Ct. Spec. App. Jan. 30, 2019) .........................7

*Tay v. Dennison,*
    457 F. Supp.3d 657 (S.D. Ill 2020) .....................................................................22

*Taylor v. Harford Cnty. Dep't of Social Servs.,*
    384 Md. 213 (2004) ....................................................................................18-19

*Taylor v. Hillis,*
    2011 WL 6341090, (W.D. Mich. Nov. 28, 2011), *report and recommendation adopted,*
    2011 WL 6370094 (W.D. Mich.  Dec. 2011).........................................................3

*Tennessee v. Lane,*
    541 U.S. 509 (2004)...............................................................................12, 13, 14

*Turner v. Safley,*
    482 U.S. 78 (1987).............................................................................................26

*United States v. Georgia,*
    546 U.S. at 151 (2006).................................................................................15-16

*Veney v. Wyche,*
    293 F.3d 726 (4th Cir. 2002)..............................................................................26

*Verizon Md. Inc. v. Pub. Serv. Comm'n,*
    535 U.S. 635 (2002) .....................................................................................9, 10

*Vill. Of Willbowbrook v. Olech*,
   528 U.S. 562 (2000) .................................................................................................25

*Washington v. Maynard*,
   No. CV GLR-13-3767, 2016 WL 865359 (D. Md. Mar. 7, 2016) .......................................30

*Williams v. Kincaid*,
   45 F.4th 759, 770–71 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 2414 (2023)..................27

*Worcester Cnty. Welfare Bd. v. Wyatt*,
   219 Md. 507 (1959) ......................................................................................................8

*Young v. City of Mount Rainier*,
   238 F.3d 567 (4th Cir. 2001)..........................................................................................4

*Younger v. Crowder*,
   79 F.4th 373 (4th Cir. 2023)..........................................................................................6

*Zemedagegehu v. Arthur*,
   No. 15c57 (JCC/MSN), 2015 WL 1930539 (E.D. Va. Apr. 28, 2015)........................ 14, 16

*Zollicoffer v. Livingston*,
   169 F.Supp.3d 687 (D.S.D. Tex. 2016) ........................................................................22

**Constitutional Provisions**

U.S. Const. amend. XIV § 1 .................................................................................................25

**Statutes**

42 U.S.C. § 12132.................................................................................................................14

42 U.S.C. § 12202.................................................................................................................12

42 U.S.C. § 12211.................................................................................................................27

42 U.S.C. § 1983...................................................................................................................17

42 U.S.C. § 1997...........................................................................................................3, 4, 5

Md. Code Ann., Cts & Jud. Proc. § 5 .............................................................................. 14, 16

Md. Code Ann., Cts & Jud. Proc. § 5-1001.................................................................... 7, 8

Md. Code Ann., Cts & Jud. Proc. § 5-1003...........................................................................7

Md. Code, Ann., State Gov't, § 12–101................................................................................17

**Rules**

Fed. R. Civ. P. 25 ..................................................................................................................... 3

Fed. R. Civ. P. 56 ..................................................................................................................... 2

**Regulations**

28 C.F.R. § 35.130 ............................................................................................................ 14, 27

28 C.F.R. § 35.139 ................................................................................................................. 14

28 C.F.R. § 35.164 ................................................................................................................. 14

Md. Code Regs. § 12.02.28.02 .............................................................................................. 5

Md. Code Regs. § 12.02.28.05 .............................................................................................. 5

Md. Code Regs. § 12.02.28.09 .............................................................................................. 5

Md. Code Regs. § 12.07.01.05 .............................................................................................. 6

**Other Authorities**

Brief for United States as Intervenor, Johnson v. Neiman,
    504 Fed. App'x. 543 (8th Cir. 2013) (No. 11-3281) ..................................................... 14

Restatement (First) Torts § 282 ............................................................................................ 29

## INTRODUCTION

Transgender women with gender dysphoria in the custody of the Maryland Department of Public Safety and Correctional Services ("DPSCS") are not receiving the accommodations or medical care they are entitled to under federal law. Because of DPSCS' failures to accommodate their gender identity and disability, Plaintiffs have suffered horrific deprivations while incarcerated, including sexual assault, harassment by staff, denial of health care, and solitary confinement. Plaintiffs–one current and two former prisoners–are transgender women who filed a Third Amended Complaint against DPSCS, its employees, healthcare contractor, and medical providers arising from disability discrimination, sex discrimination, failure to protect, denials of medical care, and state common law tort claims.

## STATEMENT OF FACTS

Plaintiffs are three transgender women who, at all relevant times, were incarcerated within DPSCS. Plaintiffs Chelsea Gilliam and Kennedy Holland began to transition before their incarceration, while Plaintiff Chloe Grey transitioned while incarcerated. Third Am. Compl., ECF No. 46, at ¶¶ 42–44, 49–51, 60-61 [TAC]. All have been diagnosed with gender dysphoria, a condition "marked by a significant incongruence between one's experienced/expressed gender and the gender assigned at birth, lasting at least 6 months, and associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Id.* ¶¶ 3–6.

Ms. Gilliam was a pretrial detainee from December 2021 to May 2022, and is now on probation. *Id.* ¶¶ 7–8. Ms. Holland was incarcerated from August 2019 to August 2023, and is now on parole. *Id.* ¶¶ 11, 112. Ms. Grey has been incarcerated from 2016 to the present. *Id.* ¶ 10.

## STANDARD OF REVIEW

A party moving to dismiss a complaint pursuant to Rule 12(b)(6) bears the burden of demonstrating that the plaintiff's claims are legally insufficient, and that the plaintiff has stated no claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

## ARGUMENT

**I.     The Court should not convert Defendants' Motion to Dismiss into a Motion for Summary Judgment.**

As an initial matter, Defendants styled their motion as a Motion to Dismiss or Motion for Summary Judgment. *See* ECF No. 87. Ordinarily, a court does not "consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). A court may consider materials outside of the four corners of the complaint at its discretion pursuant to Federal Rule of Civil Procedure 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. Du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002) (discussing Rule 56(d) requirement). Here, Plaintiffs have submitted such a declaration. *See* Decl. of Eve L. Hill, Ex. 1. As laid out in that declaration, no discovery has been made in this case and the information at issue is within the Defendants' custody and control. *Id.* Therefore, Plaintiffs have been unable to obtain the essential facts they would need to mount an effective opposition to any motion for summary judgment. *See id.*[1]

---

[1] Ms. Grey previously moved for expedited discovery, but that motion was not granted. *See* ECF No. 51.

Several courts have cited lack of discovery as a reason for denying a summary judgment motion in similar circumstances. *See, e.g. Jarboe v. Md. Dept. of Pub. Safety & Corr. Servs.*, No. ELH–12–572, , at *17 (D. Md. Mar. 13, 2013) (denying conversion into motion for summary judgment on PLRA exhaustion before discovery as premature); *Miller v. Annucci*, 2019 WL 4688539 at *13 (S.D.N.Y. Sept. 26, 2019) (denying conversion based on lack of discovery and ordering limited discovery concerning exhaustion); *Endicott v. Allen*, 2019 WL 480014, at *3 (E.D. Mo. Feb. 7, 2019) (citing lack of discovery in refusing to convert); *Taylor v. Hillis*, 2011 WL 6341090, at *4 (W.D. Mich. Nov. 28, 2011), *report and recommendation adopted*, 2011 WL 6370094 (W.D. Mich.  Dec. 2011) (same). *Cf. Neale v. Hogan,* No. 21-7287, 2022 WL 12325186 at *2 (4th Cir. Oct. 21, 2022) (holding that the district court erred in granting a motion to dismiss without taking procedural steps such as an evidentiary hearing on exhaustion). Defendants' attempt to convert their Motion to Dismiss into a Motion for Summary Judgment should be rejected.

## II.    Defendant Johnson should be automatically substituted under Rule 25. [2]

Defendants seek summary judgment in favor of Orlando Johnson because he is no longer Acting Warden of Patuxent Institution. *See* Defs.' Mot. at 12. However, Mr. Johnson was sued in his official capacity. TAC ¶ 20. "An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Because Mr. Johnson is no longer in his capacity as Acting Warden of Patuxent, his successor should be automatically substituted for him. *Id.*

## III.    The Prison Litigation Reform Act does not bar Plaintiffs' claims.

The PLRA sets out exhaustion requirements that govern actions brought by prisoners under federal law regarding prison conditions. 42 U.S.C. § 1997e(a). Lack of exhaustion is an affirmative defense. As the Fourth Circuit has explained, "an inmate does not need to demonstrate exhaustion of administrative remedies in his complaint." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) (citing

---

[2] Ms. Grey agrees to dismiss Mr. Johnson in his individual capacity with respect to her Fourteenth Amendment sex discrimination claim.

*Jones v. Bock*, 549 U.S. 199, 216 (2007)). Rather, Defendants must raise and prove that remedies were both available and not exhausted. *Id.* Defendants have not met their burden.

A.    **The PLRA's exhaustion requirement does not apply to Ms. Holland's claims.**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983. . .by a prisoner confined in [a] correctional facility until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a). The Fourth Circuit has held in an unpublished decision that a former prisoner who has been released is no longer considered incarcerated or detained for purposes of the PLRA's exhaustion requirement. *See Cofield v. Bowser*, 247 Fed. App'x. 413, 414 (4th Cir. 2007) (per curiam). The decision in *Cofield* mirrors other Circuits. *See, e.g. Garrett v. Wexford Health*, 938 F.3d 69, 87 (3d Cir. 2019); *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017); *Sanchez v. Nassau Cnty.*, 662 F. Supp.3d 369, 395 (E.D.N.Y. 2023) (collecting cases). Thus, "it is plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." *Cofield*, 247 F. App'x at 414.

Ms. Holland was released in August 2023. TAC ¶ 112. The TAC was filed in November 2023. TAC, ECF 46. "As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Rainier*, 238 F.3d 567, 572 (4th Cir. 2001) (cleaned up). Other Circuits have agreed that an amended complaint filed by a released prisoner supersedes a complaint filed while he was incarcerated, so there is no need to exhaust. *Garrett*, 938 F.3d at 84, 88; *Jackson*, 870 F.3d at 934. Thus, because she was not incarcerated at the time the TAC was filed, the PLRA's exhaustion requirement does not apply. *Compare* TAC. ¶ 112 *with Cofield*, 247 F. App'x at 414.[3]

---

[3] Ms. Holland has attached a declaration detailing facility officials' interference with her ability to file ARPs, as well as copies of ARPs that were properly filed but did not receive a decision or were denied for procedural reasons. Decl. of Kennedy Holland, Ex. 3 and attached Exs. 3-D–H. Even if the PLRA applies here, Ms. Holland encountered the same issues attested to by Ms. Grey. The PLRA has been satisfied. *See infra* Sec. III.b.

4

**B.    Ms. Grey has complied with the PLRA's exhaustion requirement.**

Defendants further contend that Ms. Grey failed to comply with the PLRA's exhaustion requirement. Defs.' Mot. at 9. Defendants rely on two grievances by Ms. Grey related to gender-affirming health care and misgendering by prison staff while at WCI. *See* ECF No. 87-7 at 4–5; ECF No. 87-8 at 2–4. In fact, Ms. Grey submitted additional grievances related to a host of issues during her incarceration. She challenged verbal abuse by DPSCS staff, failure to respect her gender identity and her housing placement as a transgender woman in a male facility. *See, e.g.* Ex. 2-A, May 4, 2023 ARP; Ex. 2-B., July 20, 2023 ARP; Ex. 2-C., April 30, 2023 ARP. Defendants failed to attach these records, which indicates that their review of Ms. Grey's grievance records was incomplete, and cannot support their motion for summary judgment.[4] Taken together, these grievances track the allegations Ms. Grey made in the TAC. *See, e.g.* TAC ¶¶ 105–06, 133, 157.

Furthermore, the PLRA's exhaustion requirement only applies to "available" remedies. 42 U.S.C. § 1997e(a). "Consequently, although an inmate must exhaust available remedies, he need not exhaust ones that are unavailable" *Duvall v. Hogan*, Civil Action No. ELH-94-2541, 2020 WL 340301, at *7 (D. Md. June 19, 2020) (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)). "[A]n administrative remedy is not considered to be available if a prisoner, through no fault of [her] own was prevented from availing herself of it." *Moore*, 517 F.3d at 725.

Maryland has a three-step process for inmate grievances. The first two steps of the process are the Administrative Remedy Procedure (ARP). An inmate files a request for administrative remedy with the warden. Md. Code Regs. §§ 12.02.28.05, 12.02.28.09, 12.02.28.02(B)(14). If the inmate disagrees with the response, she may appeal to the Commissioner of Corrections. *Id.* § 12.02.28.05(D)(2). If the Commissioner denies the appeal, the inmate can appeal to the Inmate

---

[4] Defendants primarily rely on Ms. Woolford's affidavit for their contention that Ms. Grey failed to exhaust. See ECF No. 87-6. But even based on the limited number of ARPs attached to this Opposition, it appears that Ms. Woolford's representations are incomplete, inaccurate, or both, as she failed to identify additional grievances filed prior to May 15, 2023. *Id.* at ¶¶ 5-6; *See Scott v. Clarke*, 64 F. Supp.3d 813, 830 (W.D. Va. 2014) (denying motion for summary judgment for non-exhaustion because Plaintiffs identified grievances not included in Defendants' affidavit, indicating Plaintiffs tried to exhaust administrative remedies but were prevented from exhausting through inaction).

Grievance Office (IGO). *Id.* § 12.07.01.05(B). However, "[w]hen prison officials prevent inmates from using the administrative process. . .the process that exists on paper becomes unavailable in reality." *Hill v. O'Brien,* 387 F. App'x. 396, 400 (4th Cir. 2010). Ms. Grey submitted grievances about her treatment. *See, e.g.* Exs. 2-A–C. All of these ARPs were signed by staff, yet there was no formal denial of either ARP. Thus, there was nothing for Ms. Grey to appeal, as any "defects in exhaustion were. . . procured from the inaction of prison officials[.]" *Hill*, 387 F. App'x. at 400 (quoting *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). In addition, while at Patuxent, Ms. Grey was in administrative or disciplinary segregation, often without the ability to submit grievances. Staff refused to submit forms on her behalf, and she had no ability to write ARPs after November 6 because of lack of access to pens and paper or a tablet. *See* Decl. of Chloe Grey., Ex. 2, at ¶¶ 11–13.

In addition, administrative remedies were futile for Ms. Grey. To be considered available, an administrative remedy must be able to provide relief from the harm. *Ross*, 578 U.S. at 639; *Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023). The records Defendants attached to Ms. Woolford's affidavit indicate that the IGO categorically denied that it could provide any relief to Ms. Grey. *See, e.g.* ECF No. 87-8 at 1 (failure to state a claim upon which relief can be granted for misgendering and other abuse by DPSCS officials); ECF No. 87-7 at 1–2 (denial of transgender healthcare cannot form the basis of a grievance because it is against staff employed by a private medical contractor). Because the IGO has denied relief for those claims, a prison administrative remedy is unavailable, as it cannot provide relief for those harms. *See Younger*, 79 F.4th at 380 (noting that for a remedy to be available, "it must be able to provide some type of relief.").

Numerous courts have held that a single grievance should suffice for ongoing problems, such as inadequate medical treatment. *See, e.g. Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010); *Morris v. Carey*, No. 7:1 7cv00093, 2018 WL 3235816, at *11 (W.D. Va. Feb. 14, 2018) (prisoner who grieved denial of mental health treatment for gender dysphoria need not grieve each denial). Thus, Ms. Grey need not exhaust every single incident of abuse by staff or denial of gender-affirming care, especially when the IGO has issued a categorical rejection of her claims. *See,*

*e.g.* ECF No. 87-8 at 1; ECF No. 87-7. Nevertheless, Ms. Grey continued to grieve issues related to housing, medical treatment, and treatment by staff. *See* Ex. 2-A, May 4, 2023 ARP; Ex. 2-B., July 20, 2023 ARP; Ex. 2-C., April 30, 2023 ARP. However, in the face of those fully-grieved denials, remedies were not available for Ms. Grey to exhaust, and the IGO acknowledged in both cases that remedies were not available. *See Duvall*, 2020 WL 3402301 at *8 (holding that exhaustion was not required when administrative remedies not available to address failures to address COVID-19). Accordingly, Ms. Grey exhausted all administrative remedies that were available to her. As a result, the PLRA has been satisfied and Defendants' motion should be denied.

**IV.    The Maryland Prison Litigation Act does not bar Ms. Holland's and Ms. Grey's claims.**

The Prison Litigation Act (PLA) is the Maryland equivalent to the federal PLRA. The PLA provides that "[a] prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance." Md. Code Ann., Cts & Jud. Proc. § 5-1003(a)(1). A "prisoner" is defined as "a person who is in the custody of the Department or a local detention center." *Id.* § 5-1001(g)(1). Applied here, Ms. Holland was not a "prisoner" at the time the TAC was filed, as she was not then in the custody of DPSCS. *Compare* TAC ¶ 112 *with* Md. Code Ann., Cts. & Jud. Proc. § 5-1001(g)(1). This is similar to Fourth Circuit's treatment of the analogous provision in the PLRA. *See Cofield*, 247 F. App'x at 414.

However, this appears to be an issue of first impression, as Maryland courts have not decided the scope of the word "prisoner" in the PLA.[5] The ordinary tools of statutory interpretation confirm that the PLA should only apply to civil actions started by those who are incarcerated at the time the action commenced. In interpreting a statute, Maryland courts look to understand and implement the intent of the General Assembly. *See, e.g. Stoddard v. State*, 395 Md. 653, 661 (2006). That begins with the statute's plain language, which should be enforced as written. *Id.* Likewise, the

---

[5] In an unreported decision in *Tarpley v. Bishop*, the Maryland Court of Special Appeals did apply the PLA to a case involving a former inmate. *See Tarpley v. Bishop*, No. 1881, 2019 WL 385087, at *1 (Md. Ct. Spec. App. Jan. 30, 2019) (per curiam). However, the plaintiff in that case filed his complaint while he was incarcerated and did not amend his complaint after his release. *Id.* at *1, n.1. This is in contrast to Ms. Holland, who filed the TAC after her incarceration ended.

interpreting court should look to the statute's grammar and sentence structure. *Mazor v. State Dept. of Corr.*, 279 Md. 355, 362 (1977). That includes the use of verb tenses. *See In Re Charles K.,* 135 Md. App. 84, 98 (2000). Here, the PLA defines a prisoner as a "person who *is* in the custody of the Department." Md. Code Ann., Cts. & Jud. Proc. § 5-1001(g)(1) (emphasis added). The use of the present tense indicates that incarceration must be contemporaneous with the filing. *See Aleman v. State*, 242 Md. App. 632, 647–48 (2019) (the present tense in a tolling statute for prisoners adjudged to be mentally ill indicates that a prisoner's mental illness must be contemporaneous with the adjudication); *see also Worcester Cnty. Welfare Bd. v. Wyatt*, 219 Md. 507, 511 (1959) ("[t]he use of the present tense imports that the receipt must be contemporaneous with the death in order for the section to apply."). If the drafters of the PLA intended for the statute to apply to persons formerly incarcerated in Maryland, they could have used the past perfect tense to achieve this. *See Pitts v. State*, 205 Md. App. 477, 488 (2012) ("[t]he present perfect tense ... indicates that an event occurred in the past prior to other events and implies that once the event has occurred ... certain consequences result[.]") (citation and internal quotation marks omitted). Thus, the drafters could have defined a "prisoner" under the PLA as someone who "is or has been in the custody of the Department." That the PLA does not do so shows that it was only meant to apply to currently incarcerated individuals, similar to its federal analogue. Accordingly, the PLA does not apply to Ms. Holland's state law tort claim.

While the PLA would apply to Ms. Grey's claim because she is currently incarcerated, the PLA's exhaustion requirement has been limited to "available" administrative remedies in tandem with the PLRA. *See Evans v. State*, 396 Md. 256, 335 (2006). For the reasons outlined above, *see supra* Sec. IV.b, administrative remedies have either been fully exhausted or are unavailable to Ms. Grey. Ms. Grey should be given leave to amend her complaint to attach the grievances she pursued.

In addition, the PLA does not apply to Ms. Grey's common law tort claims against private contractors and their employees. *See Adamson v. Corr. Med. Servs.*, 359 Md. 238, 268–70 (2000). Thus, to the extent Ms. Grey's claim of intentional infliction of emotional distress is against contractors employed by a private entity (such as the Health Care Does), the PLA exhaustion requirement

should not apply. *See id.* at 269 (noting that the PLA is "designed to prevent or inhibit the influx of prisoner claims against State officials and employees in Maryland's state courts and to lessen the burden on the Attorney General" and was not designed to shield private contractors).[6] Thus, the PLA has been satisfied and Defendants' motion should be denied.

## V.    Sovereign immunity does not bar Plaintiffs' claims.

### A.    Plaintiffs' constitutional and federal law claims for injunctive relief fit within the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity.

One exception to Eleventh Amendment sovereign immunity allows plaintiffs to seek prospective relief from state officials acting in their official capacities. *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 159 (1908)). To satisfy this exception, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (citation omitted). It is enough for a plaintiff to *allege* an ongoing violation, as "actually *proving* a violation is unnecessary.*" D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x. 334, 337–38 (4th Cir. 2010) (emphasis in original) (citation omitted). Moreover, while transfer from a prison generally moots a prisoner's claim regarding that facility, the claim may nevertheless proceed if it challenges a corrections policy that is applicable to all institutions in the state. *See Fauconier v. Clarke*, 966 F.3d 265, 281 (4th Cir. 2020) (Director of Virginia Department of Corrections was proper defendant in challenging alleged discriminatory policy system-wide across the state)

Applied here, Plaintiffs allege systemic violations of federal law in DPSCS facilities across Maryland related to housing, health care, and employment. TAC ¶¶ 100–210. The challenged policies, such as DPSCS' Gender Dysphoria and Sexual Victimization policies, apply across DPSCS. *Id.* ¶¶ 68–80. Plaintiffs properly allege that Defendants have either failed to follow or reasonably modify those policies, thereby discriminating against them on the basis of their disability and gender

---

[6] At this early stage and without the benefit of discovery, it is unclear how many of the Health Care Does are employed by DPSCS versus its medical contractor, YesCare. Defendants acknowledge that DPSCS contracts with outside providers to provide health care. Defs.' Mot. at 19 n. 12.

identity regardless of where they were housed. TAC ¶¶ 46, 63, 102, 104, 111, 115, 120, 132, 169, 173, 175, 187–89, 243–44, 255. As in *Fauconier*, Plaintiffs properly list Defendants that are responsible for implementing these policies across DPSCS, such as Defendants Scruggs, Morgan, Baucom, and Wolinski, as well as DPSCS itself. *Compare* TAC ¶¶ 239–331 *with Fauconier*, 966 F.3d at 281. Taken together, this properly alleges a systemic, ongoing violation of federal constitutional and civil rights law, which is all Plaintiffs are required to do at this stage. *See Cansler*, 382 F. App'x. at 338.

Finally, Plaintiffs ask for declaratory and injunctive relief, both of which are prospective forms of relief. TAC at 59; *South Carolina State Ports Auth. v. Fed. Maritime Comm'n.*, 243 F.3d 165, 170 (4th Cir. 2001) (injunctive and declaratory relief are prospective for purposes of *Ex Parte Young*). Defendants argue that the breadth of the relief Plaintiffs seek somehow removes Plaintiffs' claims from *Ex Parte Young*. Defs' Mot. at 25. This misunderstands *Ex Parte Young,* which turns on the nature of relief, not the scope of the relief. *See Verizon Md.*, 535 U.S. at 645 (courts need only conduct a "straightforward inquiry" into whether relief is "properly categorized as prospective.").

Defendants also argue that Plaintiffs have not demonstrated an "ongoing" violation of federal law because Ms. Gilliam and Ms. Holland have been released, and Ms. Grey has been transferred to NBCI. Defs.' Mot. at 26. But as Plaintiffs have alleged, people on parole/probation are more likely to be re-incarcerated, which would subject Ms. Gilliam and Ms. Holland to the same discrimination they previously experienced in DPSCS custody. TAC ¶ 9, 11, n.3. Because there is a "reasonable expectation" Ms. Gilliam's and Ms. Holland "will be subject to the same action again[,]" Ms. Gilliam and Ms. Holland's claims are "capable of repetition, yet evading review." *Spencer v. Kenma*, 523 U.S. 1, 17 (1998).  Because they seek prospective relief from Defendants in their official capacities, Plaintiffs' claims comfortably fit within the *Ex Parte Young* exception to Eleventh Amendment immunity. [7] *See Cansler*, 382 F. App'x. at 338. Defendants' motion to dismiss should be denied.

---

[7] Defendants imply that the breadth of injunctive relief sought here conflicts with the PLRA's narrow-tailoring requirement. Defs.' Mot. at 25–26, 27 n.16. As the Supreme Court has explained, systemic relief for similarly situated non-plaintiffs is fully consistent with the PLRA. *See Brown v. Plata*, 563 U.S.

**B.    The Eleventh Amendment does not bar Plaintiffs' claims for damages against the Defendants in their individual capacities.**

The Eleventh Amendment likewise does not bar Plaintiffs' claims for damages against Defendants in their individual capacities. Plaintiffs have sued various officials in their individual capacities for violations of the Eighth and Fourteenth Amendments. TAC ¶¶ 211–279. Defendants seek to cloak these individuals in the protection of the Eleventh Amendment. Defs.' Mot. at 25–27.

This is an inaccurate reading of the law. The Eleventh Amendment immunizes *states* from suits seeking money damages, which includes damages claims against officials in their official capacities. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). As the Supreme Court has consistently emphasized, the Eleventh Amendment does not bar "an award of damages against an official in his personal capacity [that] can be executed only against that official's personal assets." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In *Hafer v. Melo*, the Court relied on *Graham*, noting that the Eleventh Amendment does not erect a barrier to suits to impose "individual and personal liability" on state officials for unconstitutional conduct under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). The Court reaffirmed the principle that damages awards "against individual defendants in federal courts are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Id.* at 30 (internal quotation marks and citation omitted).[8]

Here, Plaintiffs bring their constitutional claims against state officials in their individual capacities. TAC ¶¶ 211–79. As the Fourth Circuit has explained, damages awards against state officials sued in their individual capacities are only barred by the Eleventh Amendment where the relief sought "necessarily requires payment of state funds." *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018) (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)) (internal quotation marks omitted). Here, as in *Ferguson*, because Plaintiffs only seek to recover damages for their constitutional claims

---

493, 532 (2011); *see also Armstrong v. Brown*, 768 F.3d 975, 985 (9th Cir. 2014). In any event, the PLRA's narrow-tailoring requirement is not a pleading standard and is only implicated once this court agrees to award relief. *See Porter v. Clarke*, 852 F.3d 358, 366 n.4 (4th Cir. 2017).

[8] The Court likewise held in *Hafer* that individuals are "persons" within the meaning of Section 1983 and amenable to suit. *Hafer*, 502 U.S. at 27.

from the individuals and not from the State, the Eleventh Amendment does not bar their claims. *See Ferguson*, 884 F.3d at 225. Accordingly, Defendants' motion to dismiss should not be granted.

    **C.**    **Sovereign immunity does not bar Plaintiffs' claims for damages under Title II of the ADA.**

Defendants argue that the Eleventh Amendment bars Plaintiffs' claims for damages under the ADA. Defs.' Mot. at 15–23. This argument is unavailing. Congress has expressly abrogated states' sovereign immunity under the ADA. See 42 U.S.C. § 12202; *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). This express abrogation is valid if it was accomplished "pursuant to a valid grant of constitutional authority." *Id.* at 517 (citation omitted). As a result, "Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment." *Id.* at 518 (citation omitted).

Section Five of the Fourteenth Amendment gives Congress the "authority both to remedy and to deter violation of [Fourteenth Amendment] rights . . . by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727 (2003) (internal quotation marks omitted). Section Five empowers Congress to enact "prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Hibbs*, 538 U.S. at 721–28. Thus, Congress may prohibit "practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause." *Lane*, 541 U.S. at 520.

To determine whether Congress has validly abrogated a state's sovereign immunity pursuant to its Section Five authority, courts must follow the three-part test in *City of Boerne v. Flores*, 521 U.S. 507 (1997). This Court should consider: (1) the "constitutional right or rights that Congress sought to enforce when it enacted Title II," *Lane*, 541 U.S. at 522; (2) whether there was a history of unconstitutional disability discrimination to support Congress's determination that "inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation," *id.* at 529; and (3) "whether Title II is an appropriate response to this history and pattern

of unequal treatment" as applied to the class of cases implicating conditions of confinement in correctional facilities. *Id.* at 530.

In passing the ADA, Congress sought to enforce rights under the Equal Protection Clause, as well as an array of rights subject to heightened scrutiny under the Due Process Clause of the Fourteenth Amendment. *Id.* at 522–23. The Supreme Court has held that Congress relied on a sufficient historical predicate of unconstitutional disability discrimination to justify broad prophylactic legislation. *Id.* at 523–28; *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 485 (4th Cir. 2005). Defendants concede that the ADA satisfies this factor. Defs' Mot. at 21 n.14. The third factor, the appropriateness of Congress's response to this history, or the "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end," is also satisfied, as discussed below. *Lane*, 541 U.S. at 520.

### 1.    Title II is an appropriate response to the long history of constitutional violations that people with disabilities have suffered in prisons.

In *Amos v. Maryland Department of Public Safety and Correctional Services*, the Fourth Circuit held that Title II validly abrogated the DPSCS' sovereign immunity in the context of disability rights in prison. 178 F.3d 212, 223 (4th Cir. 1998), *rehearing en banc granted, judgment vacated* (1999). After rehearing en banc was granted, the parties settled the case, avoiding the en banc decision. However, it remains clear that the ADA constitutes a valid abrogation of sovereign immunity in the prison context. Given the vast array of constitutional rights at stake in prisons, as well as the pervasive history of disability discrimination rising to the level of constitutional violations in the detention context, Title II's limited relief is congruent and proportional to the injury Congress sought to prevent and remedy in passing Title II. Other Circuits have reached the same conclusion. *See, e.g. Bowers v. Nat'l. Collegiate Athletics Ass'n.*, 475 F.3d 524, 555–56 (3d Cir. 2007); *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792–93 (9th Cir. 2004).

For prisoners with disabilities, the pattern of constitutional violations in detention settings has been pervasive. The United States submitted a brief as an intervenor in *Johnson v. Neiman*, 504 F. App'x 543 (8th Cir. 2013), detailing the long history of violations and arguing that, as a result, in

passing Title II, Congress validly abrogated sovereign immunity in the prison context. See Br. for the United States as Intervenor at 28-40, *Johnson*, 504 Fed. App'x. 543 (8th Cir. 2013). The United States correctly concluded that "[a]gainst that background of discrimination, Title II of the ADA is well tailored in the prison context—as in others—to protect against and remedy constitutional violations without infringing on public entities' legitimate prerogatives." *Id.* at 41.

The remedies Congress created in passing Title II are quite limited. Title II only prohibits public entities from discriminating because of an individual's disability; public entities remain free to exclude individuals for other lawful reasons. 42 U.S.C. § 12132. Rather than requiring that public entities cease discriminatory conduct at any cost, Title II limits modifications to those that are "necessary," and "reasonable," and provides defenses for actions that would "fundamentally alter the nature of the service, program, or activity" 28 C.F.R. § 35.130(b)(7), or "result in . . . undue financial and administrative burdens," 28 C.F.R. § 35.164 or pose a "direct threat to the health or safety of others." 28 C.F.R. § 35.139(a). These important limitations on the scope of Title II "tend to ensure Congress' means are proportionate to ends legitimate under § 5." *Constantine*, 411 F.3d at 489 (quoting *City of Boerne*, 521 U.S. at 533). Because Title II's requirements are congruent and proportional to the constitutional violations they remedy and prevent in the detention context, Congress validly abrogated sovereign immunity. *See Zemedagegehu v. Arthur*, No. 15c57 (JCC/MSN), 2015 WL 1930539, at *15 (E.D. Va. Apr. 28, 2015) (sovereign immunity was validly abrogated by Title II in light of the "wide latitude given to Congress," and because Title II falls "within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional.") (quoting *Constantine*, 411 F.3d at 490).

2. ***Lane and Georgia* indicate that sovereign immunity is abrogated in prison cases, so Plaintiffs need not demonstrate that each Title II claim independently constitutes a constitutional violation.**

In *Lane*, the Supreme Court established that abrogation of sovereign immunity under the ADA is decided with respect to broad "class(es) of cases." *Lane*, 541 U.S. at 531 (finding Title II abrogation valid with respect to "the class of cases implicating the accessibility of judicial services").

Thus, the Court did not engage in a fact or claim-specific inquiry in deciding whether Congress had validly abrogated immunity for the broad category of judicial services. Instead, the Court framed the abrogation question broadly as relating "to the class of cases implicating the accessibility of judicial services." *Id.* at 531. Similarly, because sovereign immunity is abrogated in the broad class of prison cases, this Court need not determine whether each Title II claim independently constitutes a constitutional violation.

The Fourth Circuit followed this approach in *Constantine*, holding Title II validly abrogated sovereign immunity in the broad "context of public higher education," not simply with respect to the specific facts in that case. 411 F.3d at 488. In applying the *City of Boerne* test, the Fourth Circuit considered the overall context of higher education, not whether the plaintiff's specific claims amounted to constitutional violations. *Id.* As the court explained, "the question is not whether Title II exceeds the boundaries of the Fourteenth Amendment, but by how much." *Id.* at 490.

Because the class of detention cases satisfies each of the three *City of Boerne* factors, sovereign immunity is validly abrogated in this prison case and this Court should decline to assess each of Plaintiffs' claims independently.

### 3. Even if Title II only abrogated sovereign immunity with respect to unconstitutional conduct, Plaintiffs have alleged constitutional violations here.

Even if Title II only abrogated sovereign immunity where unconstitutional conduct is present, Plaintiffs' case survives. In *United States v. Georgia*, the Court held that, where a plaintiff's particular Title II claim also constitutes a constitutional violation, sovereign immunity is validly abrogated for that claim, even if the claim is part of a broader class of cases where Congress's abrogation of sovereign immunity would be invalid. 546 U.S. at 151, 159 (2006). As in the current case, the Court did not have to reach the issue of whether sovereign immunity was validly abrogated in the class of prison cases because it could reverse the Eleventh Circuit's decision on the narrower ground that where a claim alleged conduct that, itself, constituted a constitutional violation, sovereign immunity would, of course, be abrogated for that claim. *Id.* at 158 (reasoning that "[w]hile

the Members of this Court have disagreed regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment . . . no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the Amendment by creating private remedies against the States for actual violations of those provisions"). *See also Fauconier*, 966 F.3d at 280 (holding plausible Title II and Fourteenth Amendment claims abrogate sovereign immunity). Some courts have elected to strictly apply the rule in *Georgia*, while others have gone beyond that decision to include conduct that may not rise to a constitutional violation. *Compare Chase v. Baskerville*, 508 F. Supp.2d 492, 499 (E.D. Va. 2007) with *Bowers*, 475 F.3d 524, at 555–56.

In *Chase*, the court held that Title II did not validly abrogate sovereign immunity absent a concurrent constitutional violation. Because the plaintiff had not pleaded a Fourteenth Amendment claim alongside his Title II claim, his Title II claim for damages could not proceed. *Chase*, 508 F. Supp.2d at 499. In addressing and contrasting *Chase*, the court in *Zemedagegehu* found that because the plaintiff's claims implicated his rights under the Eighth and Fourteenth Amendments, his claims for damages could proceed. *Zemedagegehu*, 2015 WL 1930539 at *14–15. This is the same decision the Fourth Circuit reached in *Fauconier*, where the court held that a well-pleaded Fourteenth Amendment claim would support a Title II claim for damages. *Fauconier*, 966 F.3d at 280. Likewise, a recent decision by the U.S. Court of Appeals for the Third Circuit found that a well-pleaded Eighth Amendment claim arising out of the same conduct would equally violate the Fourteenth Amendment, thereby abrogating sovereign immunity and supporting a parallel claim for money damages under Title II. *Durham v. Kelley*, 82 F. 4th 217, 229 (3d Cir. 2023); *see also United States v. Georgia*, 546 U.S. at 157 (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion) (holding that the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment)).

Here, as in *Zemededagegehu, Fauconier,* and *Durham*, Plaintiffs have properly pleaded violations of the Eighth and Fourteenth Amendments arising out of the same conduct. TAC ¶¶ 211–79. Because Plaintiffs' TAC properly pleads constitutional and Title II claims, sovereign immunity is validly abrogated with respect to Plaintiffs' Title II claims for damages.

**D.    Defendants are not immune from Plaintiffs' common law tort claims.**

Although, under common law, the State is entitled to sovereign immunity from ordinary

torts, Maryland has partially waived this immunity by way of the Maryland Tort Claims Act (MTCA).

Md. Code, Ann., State Gov't, § 12–101, et seq.; *Ford v. Baltimore City Sheriff's Off.*, 149 Md. App. 107,

119 (2002). In the MTCA, the State made clear "that a party can bring a viable tort action against *the*

*State* when the tort was committed by a State employee acting within the scope of his or her

employment and without malice or gross negligence." *Ford,* 149 Md. App. At 119 (explaining that in

such cases, "the State has accepted vicarious liability arising from the tortious conduct of State

personnel"). Alternatively, when a party alleges intentionality, malice, or gross negligence against

state personnel, the State is immune but the *state personnel* are not. *Barbre v. Pope*, 402 Md. 157, 181–82

(2007). Defendants cite to only two cases to support their contention that the State and its personnel

are entitled to immunity from Counts X-XII—and both cases are misconstrued. Defendants state

that the MTCA does not waive the State's Eleventh-Amendment immunity for suits in federal court,

Def. MTD at 37-38, but that is only true for cases involving *federal claims. See Dixon v. Baltimore City*

*Police Dep't,* 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004) (stating

that Maryland had not waived its sovereign immunity under the Eleventh Amendment for claims

brought under 42 U.S.C. § 1983). Similarly, Defendants misread *Lee v. Cline*, which states in no

uncertain terms that evidence showing malice defeats MTCA immunity for state personnel. 384 Md.

245, 257, 259 (2004) (citing *Okwa v. Harper*, 360 Md. 161 (2000)).

Defendants also mistakenly conflate Plaintiffs' claims against the State as vicariously liable

for individual Defendants' conduct in their official capacities (Count X) and Plaintiffs' claims against

officers and other state personnel in their individual capacities (Count XI and XII). In Count X,

Plaintiffs allege that DPSCS was negligent because its personnel "failed to comply with professional

standards of care and DPSCS policies during Ms. Gilliam's detention at BCCC and MRDCC." TAC

¶ 339. As demonstrated *infra*, a jury could reasonably find that Defendants Baucom, Wolinski,

Nwosu, and Does—within the scope of their duties—acted with simple negligence by breaching

their respective duties and causing harm to Ms. Gilliam.[9] If proven, the State would be vicariously liable for the tortious conduct of those individual Defendants. *See Ford*, 149 Md. App. at 119. Alternatively, or in addition to Count X, a jury could also find that Defendants Baucom, Wolinski, Nwosu, and Does acted recklessly in breaching their duties to Ms. Gilliam. Although the State would be immune in such a case, Plaintiffs have pleaded sufficient facts to demonstrate that the individual defendants acted with sufficient deliberation or recklessness with some of their conduct to qualify as malice or gross negligence—thus bringing them outside the scope of their employment and the immunity they would otherwise enjoy. *See Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 738 (D. Md. 2013); *Barbre*, 402 Md. at 182 ("[W]ell-pled facts showing 'ill-will' or 'evil or wrongful motive' are sufficient to take a claim outside of the immunity and non-liability provisions of the MTCA."); TAC ¶ 345.

Finally, because Count XII—the claim for Intentional Infliction of Emotion Distress (IIED)—requires intentional conduct, *see Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (stating that an element of IIED is intentional conduct), it also falls outside the immunity to which the individual defendants are entitled. *Okwa v. Harper*, 360 Md. 161, 182 (2000) (stating that an intent to bring harm "strip[s] the actor's immunity otherwise provided under the MTCA"). Ms. Gilliam has alleged sufficient facts to show the requisite malice for an IIED claim. *See* TAC ¶¶ 118–32.

Plaintiffs' Complaint outlines a plethora of negligent conduct that harmed Ms. Gilliam—some of which was deliberate and reckless (Counts XI and XII, for which Defendants would be responsible in their individual capacities), and some of which was not (Count X, for which the State would be responsible). Plaintiffs pleaded sufficient facts for a finding of both, and a jury may determine how to classify each of Defendants' breaches. *See Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) (quoting *Taylor v. Harford Cnty. Dep't of Social Servs.*, 384 Md. 213, 229 (2004). ("Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to

---

[9] Plaintiffs erroneously included ¶ 337 alleging malice. Count X, instead, intends to allege that portions of Defendants' conduct involved only simple negligence. Count XI alleges acts of malice or gross indifference attributed to individual Defendants. Plaintiffs respectfully request that the Court strike ¶ 337 or allow Plaintiffs leave to amend their complaint accordingly.

determine whether a defendant's negligent conduct amounts to gross negligence."). For immunity to be waived for DPSCS in Count X, the Court need determine only that Plaintiffs have pleaded facts that could plausibly support a finding that Defendants were simply negligent. For immunity to be waived for Defendants in their individual capacities in Counts XI and XII, the Court only "must determine whether the facts viewed in the light most favorable to [Plaintiffs] and all reasonable inferences arising from those facts, *could* support a finding that the [Defendants] acted maliciously or in a grossly negligent manner." *Ford*, 149 Md. App. at 121, 122 (emphasis added) (explaining that torts requiring a "determination of motive and intent" should not be easily disposed of because "they generally present a question for the fact-finder"); *Francis v. Maryland*, No. ELH-21-1365, 2023 WL 2456553, at *29 (D. Md. Mar. 10, 2023) (quoting *Newell v. Runnels*, 407 Md. 578, 635, (2009)) ("The Maryland Court of Appeals 'has recognized consistently that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact.'").

## VI.  Plaintiffs adequately allege claims under the Eighth and Fourteenth Amendments.

### A.  Failure to provide adequate medical care.

To state an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must show: (1) that their medical needs are serious (the objective prong); and (2) that the defendant knew about and ignored "an excessive risk to [the] inmate['s] health or safety" (the subjective prong). *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Ms. Holland and Ms. Grey have established both prongs. Because she was a pretrial detainee, Ms. Gilliam's medical indifference claim is grounded in the Fourteenth Amendment. The Fourth Circuit has recently applied Supreme Court precedent in holding that an objective standard applies to Fourteenth Amendment medical claims. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). Ms. Gilliam has satisfied that standard here.

Plaintiffs' gender dysphoria satisfies the objective prong. The objective component of a deliberate indifference claim is "satisfied by a serious medical condition." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citing *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). A medical condition is serious when it has "been diagnosed by a physician as mandating treatment or … is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Ms. Gilliam was diagnosed with gender dysphoria in approximately 2003 and prescribed hormone treatment. TAC ¶¶ 42-44. Ms. Holland was diagnosed with gender dysphoria in 2010, and the treatment mandated was hormone therapy. TAC ¶¶ 60–61. Similarly, Ms. Grey was diagnosed with gender dysphoria in March 2021 and began hormone therapy in December 2021. TAC ¶¶ 49–50 Because each has a condition that has been "diagnosed by a physician as mandating treatment," all Plaintiffs have satisfied the objective prong. *Iko*, 535 F.3d at 241. The inquiry ends for Ms. Gilliam here, and she has stated a claim. *See Short*, 87 F.4th at 611.

Under the subjective prong of an Eighth Amendment deliberate indifference claim, a plaintiff must show that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d. 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). As the Fourth Circuit has explained, "prison doctors violate the Eighth Amendment if they decline to provide the level of care they deem medically necessary." *Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013). The failure to respond to an inmate's known medical needs "raises an inference of deliberate indifference to those needs." *Id.* (citing *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986)). "[P]rison officials may not simply bury their heads in the sand and thereby skirt liability" *Compare* Defs.' Mot. at 29 *with Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015). Further, prison staff—whether medical or security—may not delay or interfere with treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) "Officials show deliberate indifference by intentionally delaying or denying the prisoner's access to adequate medical care or by ignoring an inmate's known serious medical needs." *Lowe v. Johnson*, No. 21-7443, 2023 WL 7179461, at *3 (4th Cir. Nov. 1, 2023).

The Fourth Circuit has previously held that the denial of hormone treatment to a transgender prisoner can support an Eighth Amendment claim. See *De'lonta v. Angelone*, 330 F.3d 630, 634–35 (4th Cir. 2003) [*De'lonta I*]. Moreover, a "total deprivation of care is not a necessary condition for finding a constitutional violation: Grossly incompetent or inadequate care can [also] constitute deliberate indifference." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (internal

quotation marks and citation omitted) (alteration in original) [*De'lonta II*]. *See also Love*, 2023 WL 7179461 at *4 (failure to prescribe a drug supports deliberate indifference claim). Here, Ms. Grey and Ms. Holland have alleged that Defendants routinely failed to provide them with consistent and effective dosages of their prescribed hormone treatment. TAC ¶¶ 170–82. Ms. Grey was also denied other gender-affirming care, such as cream that inhibits facial hair growth, use of razors to shave facial hair, and electrolysis hair removal treatment. TAC ¶¶ 175, 177–79.

This failure to provide necessary gender-affirming health care is a demonstration of Defendants' deliberate indifference. *Goodman*, 524 F. App'x. at 889. Ms. Grey's and Ms. Holland's gender dysphoria and transgender status were known to Defendants, and they cannot now skirt liability for their failure to provide them with consistent hormone treatment. TAC ¶¶ 95–96; *Makdessi*, 789 F.3d at 129. And the mere prescription of hormone treatment without consistent refills is not enough to satisfy Defendants' Eighth Amendment obligation to provide adequate medical care for gender dysphoria. *De'lonta I*, 330 F.3d at 635 (holding that some treatment not enough to treat serious medical condition supported Eighth Amendment claim); *De'lonta II*, 708 F.3d at 525 (same). Accordingly, Ms. Grey and Ms. Holland have stated a claim under the Eighth Amendment, and Defendants' motion to dismiss should be denied.

**B.    Failure to protect.**

Prisoners have a right to reasonable protection from violence at the hands of fellow inmates under the Eighth Amendment and, for pretrial detainees, under the Fourteenth Amendment. *Farmer*, 511 U.S. at 833; *Makdessi*, 789 F.3d at 132. Prison officials have a duty to take "reasonable measures to guarantee the safety of the inmates." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). A plaintiff must satisfy two prongs to state a failure to protect claim. First, she must establish that there was objectively a "substantial risk" of the "serious deprivation of [her] rights in the form of a serious or significant physical or emotional injury. *Raynor*, 817 F.3d at 121 (quoting *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). Second, she must establish that prison officials acted with deliberate indifference "to inmate health or safety." *Farmer*, 511 U.S. at 837. Plaintiffs have satisfied both prongs here.

As Ms. Gilliam was a pretrial detainee, she only needs to satisfy the objective prong. The Fourth Circuit recently applied its decision in *Short* and held that an objective test applies to pretrial detainee failure-to-protect claims, See *Hammock v. Andoh*, No. 22-7159, 2024 WL 33694, at *1 (4th Cir. Jan. 3, 2024) (per curiam).

On the first prong, there is objectively a substantial risk of sexual violence against transgender women in male prisons. The Supreme Court has made clear that transgender women in male prisons are "an identifiable group of prisoners who are frequently singled out for violent attack by other inmates." *Farmer*, 511 U.S. at 843. Courts have consistently found that "the vulnerability of transgender prisoners to sexual abuse is no secret." *Zollicoffer v. Livingston*, 169 F.Supp.3d 687, 691 (D.S.D. Tex. 2016) (holding that objective prong of failure to protect claim by transgender prisoner had been met.); *Tay v. Dennison*, 457 F. Supp.3d 657, 684–85 (S.D. Ill 2020); *Doe v. Wash. State Dep't. of Corr.*, No. 4:21-CV-5059-TOR, 2021 WL 2453099 at *4 (E.D. Wash. May 17, 2021) (same); *Doe v. Dist. of Columbia*, 215 F. Supp.3d 62, 75 (D.D.C. 2016) (citing *Farmer* and finding that jury could conclude that plaintiff was "unusually vulnerable to rape because she was a transgender woman.").

Unfortunately, Plaintiffs' experiences bear out this risk. Ms. Gilliam and Ms. Grey both allege that they have been sexually assaulted while at male institutions in Maryland. TAC ¶¶ 43, 49, 123, 132, 134. Ms. Holland was threatened with sexual assault by inmates and sexually harassed by DPSCS staff. TAC ¶¶ 60, 160–65. And even after those incidents, all continued to be housed with men despite the "substantial risk" of sexual assault, a quintessentially severe "physical [and] emotional injury." TAC ¶¶ 132, 141, 144, 162; *Raynor*, 817 F.3d at 127. Thus, Plaintiffs have satisfied the objective prong. This is all Ms. Gilliam needs to meet. *Short* 87 F.4th at 611 (holding that Fourteenth Amendment claims apply objective standard only).

Plaintiffs Grey and Holland also satisfy the subjective prong. A plaintiff must show that a prison official exhibited "deliberate indifference" to the objectively serious risk. *Farmer*, 511 U.S. at 834. This inquiry requires evidence "suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser*, 772 F.3d at 347. A prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice v. Virginia Beach Corr. Ctr.*, 58

F.3d 101, 105 (4th Cir. 1995). This subjective standard may be proven with circumstantial evidence. *Makdessi*, 789 F.3d at 133. The risk may also be inferred from "knowledge of the inmate's own characteristics —such as being a transgender woman." *Doe*, 215 F. Supp.3d at 76.

Plaintiffs have amply alleged that Defendants were aware of the risk of sexual assault towards transgender inmates and did nothing to prevent it. DPSCS policy acknowledges the risk and says it should be considered in housing decisions. TAC ¶¶ 68–71. Defendants were aware of Plaintiffs' transgender status and their history of sexual assault in prison, but nothing was done to mitigate the risk by moving them out of a male facility. TAC ¶¶ 102–03, 113–14, 125, 132, 137, 144, 148, 162–63. Instead, Plaintiffs were placed into administrative segregation. TAC ¶¶ 183–204. As a result, Plaintiffs satisfy the subjective prong, and Defendants' motion to dismiss should be denied.

### C.    Cruel and unusual punishment.

The Eighth Amendment applies to claims by prisoners against corrections officials challenging conditions of confinement. *Scinto*, 841 F.3d at 225. Similarly, the Fourteenth Amendment governs conditions of confinement for pretrial detainees. *Short*, 87 F.4th at 606 (discussing history of Fourteenth Amendment claims by pretrial detainees). Whether conditions of confinement amount to cruel and unusual punishment is measured against the "standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Like other Eighth Amendment claims, a condition of confinement claim has objective and subjective components. *Scinto*, 841 F.3d at 225. Ms. Gilliam has satisfied the objective prong, which is all that is required of a pretrial detainee, *see Short*, 87 F.4th at 611, and Ms. Grey and Ms. Holland have satisfied both prongs here.

To satisfy the objective prong, the alleged deprivation must be "sufficiently serious," meaning that "it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from ... exposure to the challenged conditions[.]" *Scinto*, 841 F.3d at 225. Plaintiffs have alleged that they were placed in administrative segregation (a form of solitary confinement), for months at a time, because of their transgender status. TAC ¶¶ 184, 191, 194, 197. They were kept in their cells for 23 hours per day,

and "dehumanized". *Id.* ¶¶ 48, 54, 67. Plaintiffs lost access to programming and felt depressed and anxious because of their time in administrative segregation. *Id.* ¶¶ 186, 200, 204. The Fourth Circuit has joined other courts in recognizing that the risk of intense psychological harm posed by prolonged bouts of solitary confinement constitutes a "sufficiently serious" deprivation under the Eighth Amendment. *Porter v. Clarke*, 923 F.3d 358, 355–57 (4th Cir. 2019) (collecting cases) [*Porter II*]. Like the death row inmates in *Porter*, who were also kept in solitary confinement for 23 hours without access to programming, the psychological harm endured by Plaintiffs in solitary confinement satisfies the objective prong. *Id.* at 357. Having met the objective test, Ms. Gilliam's claim should survive Defendants' motion to dismiss. *See Short*, 87 F.4th at 611.

To satisfy the subjective prong, Ms. Holland and Ms. Grey must show that Defendants acted with deliberate indifference. *Scito*, 841 F.3d at 225. Once again, circumstantial evidence that Defendants knew of and disregarded an obvious risk of harm satisfies this standard. *Makdessi*, 789 F.3d at 136. This includes correctional policy placing limits on the use of administrative segregation. *Porter II*, 923 F.3d at 361 (finding that corrections policy limiting the use of solitary confinement supported inference that extended stays in segregation are harmful). As in *Porter*, DPSCS policy mandates periodic reviews of administrative segregation by a case management team, which is required to consider "available alternatives" to administrative segregation. TAC ¶ 77–80. That policy indicates that Defendants know the harmful effects of administrative segregation, which can also be surmised by their status as correctional professionals. *See Porter II*, 923 F.3d at 361 (noting correctional professional defendants must be aware of the harms of solitary confinement given the "extensive scholarly literature describing and quantifying the adverse mental health effects of prolonged solitary confinement that has emerged in recent years."). Thus, Plaintiffs have met the subjective prong here.

In response, Defendants argue that Plaintiffs have not pled individual involvement by the Defendants in their allegations. Defs.' Mot. at 27–29. As the Fourth Circuit has made clear, no "direct and personal involvement is required in order to hold high-level officials responsible for the actions of subordinates" where "injunctive relief is sought." *Cansler*, 382 F. App'x. at 338 (quotation

marks and citation omitted). To the extent that Plaintiffs' constitutional claims seek injunctive relief, no personal involvement is necessary, because those officials are responsible for "assuring that the agency's decisions comply with federal law." *Id.*

With respect to Plaintiffs' claims for damages against Defendants in their individual capacities, Defendants cannot plausibly argue that these officials were not individually involved in the unconstitutional treatment that Plaintiffs allege. Plaintiffs have properly alleged that DPSCS' policies violate federal law and the Prison Rape Elimination Act (PREA). *See* TAC ¶¶ 68–83, 187–89, 217, 228, 243, 255. They have properly sued the officials responsible for enforcing those policies at the various institutions at which they were housed. *See id.* at ¶¶ 22, 24, 25–36, 211–79. At this early procedural stage, Plaintiffs need only allege–not prove–Defendants' individual involvement. Given that this Court must accept all allegations as true and draw reasonable inferences in favor of the Plaintiffs, this Court should deny Defendants' motion to dismiss.[10] *King*, 825 F.3d at 212.

### D. Plaintiffs adequately allege violations of the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV § 1. The Equal Protection Clause protects individuals from both state-imposed classifications and from "intentional and arbitrary discrimination." *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (quoting *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441, 445 (1923)). Thus, state action is unconstitutional when it creates "arbitrary or irrational" distinctions between groups of people out of a "bare . . . desire to harm a politically unpopular group." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446–47 (1985) (citation and internal quotation marks omitted). Discrimination on the basis of a person's transgender status constitutes discrimination on the basis

---

[10] Defendants also seek to dismiss Ms. Gilliam's constitutional claims by applying *Sandin v. Conner*, 515 U.S. 472 (1995), where the Supreme Court outlined what a prisoner must do to bring a claim under Fourteenth Amendment Due Process Clause. Defs.' Mot. at 31. This misunderstands the nature of Ms. Gilliam's claim, which focuses on the cruel and unusual nature of administrative segregation, not what process is due. TAC ¶¶ 232–38. As described above, Ms. Gilliam's claim is akin to an Eighth Amendment claim and should be analyzed under the Fourth Circuit framework in *Short*. *See supra* Sec.VI.a. As such, *Sandin* does not apply.

of sex. *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1741 (2020); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020).

The Fourth Circuit has held that equal protection claims by transgender people are subject to intermediate scrutiny. *Id.* at 619. However, claims that arise in the context of prisons must be "reasonably related to any legitimate penological interest." *See Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002). Yet "this more deferential review does not make [the court] ignorant to the concerns that justify application of a heightened standard outside of the prison context" *Id.* (citation omitted).

To determine whether an act is reasonable, a court should consider the following factors: (1) whether there is a valid, rational connection between the policy and penological interest; (2) whether an alternative means of exercising the right remains available to the inmate; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that accommodate prisoners' rights at de minimis cost to valid penological interests. *Morrison v. Garragthy*, 239 F.3d 648, 655 (4th Cir. 2001) (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).

No penological interest is served by housing transgender women with men, subjecting them to the risk of sexual assault, deprivation of medical care, employment opportunities, and the indiscriminate use of administrative segregation. TAC ¶¶ 100–210. This goes far beyond any legitimate penological objectives. *Farmer*, 511 U.S. at 832 (acknowledging that prisons "strip [inmates] of virtually every means of self-protection" and the rape of prisoners "serves no legitimate penological objective."). Defendants attempt to minimize Plaintiffs' allegations by only focusing on bigoted, transphobic language by DPSCS officials. Defs.' Mot. at 33–34.  But the incidents detailed in the TAC show that Defendants have created "arbitrary or irrational" distinctions between cisgender and transgender inmates out of a "bare . . . desire to harm" them as members of "a politically unpopular group." *Cleburne*, 473 U.S. at 446–47. Such distinctions violate the Fourteenth Amendment, and Defendants' motion to dismiss should be denied.

VII.    **Plaintiffs adequately allege claims under Title II of the ADA.**

To state a claim for disability discrimination under Title II of the ADA, a plaintiff must show that: "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016).

Plaintiffs easily satisfy the first two requirements. Gender dysphoria is a disability under the ADA. TAC ¶¶ 3–5; *Williams v. Kincaid*, 45 F.4th 759, 770–71 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 2414 (2023) (gender dysphoria that is treated with hormone therapy likely "results from physical impairments" and should be considered a disability under the ADA) (quoting 42 U.S.C. § 12211(b)(1)). As prisoners in DPSCS custody, Plaintiffs are or were qualified to receive the benefits of DPSCS's programs. TAC ¶¶ 8, 10–11; *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that Title II applies to all benefits conferred by a prison on non-disabled prisoners, including recreational, educational, and vocational programs).

Defendants dispute that Plaintiffs have satisfied the third prong. But they evince a fundamental misunderstanding of Plaintiffs' claims. Plaintiffs are not arguing that they have a constitutional or statutory right to housing or employment. Defs.' Mot. at 25. Rather, they allege that *disability discrimination* in housing, employment, and health care violated their rights under Title II, as did the failure to accommodate their disabilities by modifying DPSCS policies to allow for relief. TAC ¶¶ 291–306. Defendants do not dispute that DPSCS is required to provide access to its programs and services for disabled inmates. Defs.' Mot. at 25. And Plaintiffs sufficiently allege that they were denied access to employment, health care, and reasonable accommodations in housing because of their gender dysphoria. TAC ¶¶ 100–117, 168–210.

Defendants also curiously point to Maryland state caselaw in claiming that contracting with outside health care providers relieves them of their obligation to equally provide health care to disabled inmates. Defs.' Mot. at 19 n.12. The ADA regulations are clear that covered entities cannot contract away their nondiscrimination obligations. 28 C.F.R. § 35.130(b)(1). And as the Fourth

Circuit has noted, "federal statutes and regulations properly enacted and promulgated. . . 'nullify conflicting state or local actions.'" *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595 (4th Cir. 2005) (citations omitted). To the extent that Maryland law conflicts with the federal ADA, federal law must prevail. *See Lamone*, 813 F.3d at 508. Thus, Defendants' motion to dismiss Plaintiffs' ADA claims should be denied. *Yeskey*, 524 U.S. at 210.

## VIII.    Plaintiffs adequately allege claims under Section 504 of the Rehabilitation Act.

Plaintiffs have also stated a claim under Section 504 where sovereign immunity has been abrogated. *See Constantine*, 411 F.3d at 495–96. The Fourth Circuit analyzes Title II and Section 504 claims together, as the standards under both are substantially similar. See *Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012). Defendants argue that the analysis of discrimination is different because Section 504 requires that a plaintiff establish that they were excluded "solely" by reason of their disability. Defs.' Mot. at 35–36. However, Plaintiffs have, in fact, alleged that Defendants' discrimination was "solely" based on their disability. TAC ¶ 308.

In each section, Plaintiffs have alleged facts showing that their gender dysphoria was the basis for their treatment by Defendants. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461–62 (4th Cir. 2012) (discussing causation standards in Title II and Section 504). But for their gender dysphoria, they would not be at an increased risk of sexual assault in a male institution and require an accommodation to live in a women's facility. TAC ¶¶ 46, 55, 63, 68, 117. But for their gender dysphoria, they would not need access to gender-affirming care. *Id.* ¶¶ 168–82. But for their gender dysphoria, they would not be housed in segregation under the pretext of keeping them safe in a male institution. *Id.* ¶¶ 193–204. But for their gender dysphoria, they would have been able to obtain vocational opportunities. *Id.* ¶¶ 205–210. Accordingly, Defendants' motion to dismiss Plaintiffs' Section 504 claim should be denied.

## IX.    Plaintiffs pleaded sufficient facts to support a finding that Defendants were negligent in complying with professional standards of care and DPSCS policies.

Ms. Gilliam sufficiently alleges claims for negligence against DPSCS as vicariously liable for Individual Defendants in their official capacities (Count X) and for gross negligence against

Individual Defendants in their individual capacities (Count XI). Under Maryland law, negligence is "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (quoting *Mayor & City Council of Baltimore v. Hart*, 395 Md. 394, 410 (2006); *Holler v. Lowery*, 175 Md. 149, 157 (1938); Restatement (First) Torts § 282). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences" affecting the life of another, including the "thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre*, 402 Md. at 188 (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)); *Romanesk v. Rose*, 248 Md. 420, 423 (1968).

In requesting dismissal of this claim, Defendants do not dispute that they owed a duty to Ms. Gilliam or that she suffered harm. They argue only that they had no knowledge of nor took any action causing "the alleged breaches." Defs.' Mot. at 36-37. But Defendants knew her status as a transgender woman—both because of her obvious feminine appearance and because Ms. Gilliam informed them—and still failed to take any of the actions required under DPSCS policy and PREA to ensure she remained safe from the known risks associated with such status. TAC. at ¶¶ 339; 102-04, 124-29. Ms. Gilliam unequivocally states that she informed Housing Does upon arrival that she is transgender and was undergoing hormone treatment. TAC. at ¶ 168. This should have triggered (1) a proper housing and PREA evaluation that considered her female identity and appearance, preferences, and risk of sexual victimization, and (2) the policy granting Ms. Gilliam the right to shower outside the presence of other inmates. Unfortunately, it did not. *Id.* at ¶ 102-103. Neither can DPSCS claim they did not have knowledge of Ms. Gilliam's placement in administrative segregation that denied her programming despite having no disciplinary infractions and requesting to be placed in general population, *id.* at 184-91. All of these actions or inactions demonstrate DPSCS had knowledge of the situation yet failed to respond appropriately, and thus their conduct "f[e]ll below the standard" of care established by DPSCS policies, WPATH, and PREA. *Barbre*, 402 Md. at 187(citations omitted).

Many of Defendants' actions rise to the level of recklessness. Housing and Health Care Does failed to comply with the policies requiring them to take into consideration Ms. Gilliam's appearance, housing preference, risk of sexual victimization, and medical needs in her housing and healthcare and to permit Ms. Gilliam to shower without other inmates present. Instead, Ms. Gilliam was housed in a tier that placed her in harm's way, was forced to shower with men, and went over a month without her prescribed hormone treatment—all placing her health and life at risk. TAC ¶¶ 103-04, 120-30, 168-69. Throughout all of this, Defendants harassed Ms. Gilliam on account of her gender identity and referred to her by her dead name. TAC. ¶¶ 118-20.

Courts repeatedly find such conduct to rise to the level of gross negligence. *See De'lonta I*, 330 F.3d at 634–35 (finding defendants were deliberately indifferently by failing to provide plaintiff with her proper hormone treatment); *Amisi v. Riverside Reg'l Jail Auth.*, 555 F. Supp. 3d 244, 260 (E.D. Va. 2021) (quoting *Caramillo v. Corr. Care Sols.*, LLC, 2020 WL 4747786, at *7 (E.D. Va. Feb. 28, 2020)) ("Adequate evidence exists to support a finding of gross negligence 'when a defendant is aware of a danger, but fails to take any precautions to guard against that danger.'"); *Washington v. Maynard*, No. CV GLR-13-3767, 2016 WL 865359, at *9 (D. Md. Mar. 7, 2016). Such action may be gross negligence even if defendants were unfamiliar with the policy. *Cooper v. Rodriguez*, 443 Md. 680, 712 (2015) (finding that a corrections officer "failed to fulfill the duty to ensure [the inmate's] safety and acted with reckless disregard for [the inmate's] life" where the officer "was unaware of several policies meant to insure inmates' safety"). Failing to act in response to Ms. Gilliam's complaints of sexual abuse is even stronger evidence of gross negligence. *See Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 738 (D. Md. 2013). Because Ms. Gilliam has sufficiently stated a claim for negligence, dismissal of Counts X and XI is inappropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted,


_____/s/_____
Eve L. Hill (Bar No. 19938)
Sharon Krevor-Weisbaum (Bar No. 04773)
Jessica P. Weber (Bar No. 17893)
Evan Monod (Bar No. 30541)
Lauren A. DiMartino (Bar No. 22046)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland  21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
skw@browngold.com
jweber@browngold.com
emonod@browngold.com

Deborah M. Golden (Bar No. 18657)
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
202-630-0332
dgolden@debgoldenlaw.com

*Attorneys for Plaintiffs*

Dated:  February 13, 2024