# EXHIBIT 9



**DEPARTMENT OF PUBLIC SAFETY**

**AND CORRECTIONAL SERVICES**

**Treatment of Transgender Incarcerated Individuals**

**November, 2023**

**Governor Wes Moore**
**Lt. Governor Aruna Miller**
**Secretary Carolyn J. Scruggs**

## INTRODUCTION

The Budget Committees included the following committee narrative and reporting requirement on page 160 of the 2023 Joint Chairmen's Report requesting the Department submit a report on the treatment of transgender incarcerated individuals.

**Report on the treatment of transgender incarcerated individuals**. The committees have been concerned with reports that transgender incarcerated individuals are subject to high rates of sexual abuse and violence and are placed into inappropriate housing assignments, such as unwarranted restrictive housing. The Department of Public Safety and Correctional Services (DPSCS) shall submit a report to the committees, providing data for fiscal 2021 through 2023 on the following items:

- annual totals for the number of transgender incarcerated individuals in each DPSCS correctional facility by gender identity;
- annual data about the housing placement of transgender incarcerated individuals by correctional facility, including data on the number of transgender incarcerated individuals placed into restrictive housing, mental health units, medical units, dormitories, single cells, and all other types of housing assignments as well as the gender of the placement as compared to the gender identity of the transgender incarcerated individual;
- annual number of transgender incarcerated individuals placed in restrictive housing disaggregated by reason for placement into such housing;
- annual average and median length of time that transgender incarcerated individuals are placed into restrictive housing overall and disaggregated by reason for placement into restrictive housing;
- annual number of requests by transgender incarcerated individuals to transfer housing assignments, disaggregated by type of housing transfer request (including but not limited to transfer to a different gendered unit or facility, transfer into or out of a medical or mental health unit or facility, or transfer into or out of restrictive confinement) and the outcomes of those requests;
- annual number of Prison Rape Elimination Act complaints filed, investigated, and the outcome for complaints made by all incarcerated individuals in DPSCS correctional facilities, along with those specific to transgender incarcerated individuals;
- annual number of complaints received, the number of complaints that were investigated; and the outcomes of each complaint, for each correctional facility regarding:
  - violence, harassment, sexual abuse, and discrimination against transgender incarcerated individuals;
  - access to gender-affirming health care; and
  - access to gendered commissary items.
- The committees further request that DPSCS provide all policies regarding transgender incarcerated individuals and/or gender dysphoria, including but not limited to intake procedures, identification of transgender incarcerated individuals, provision of gender-affirming health care, housing assignment,

safety from violence and sexual abuse, and access to gendered commissary items.
- Finally, the report should include an analysis of whether the above DPSCS policies are being implemented and followed at each correctional facility and an analysis of the education and training that DPSCS staff receive regarding LGBTQ+ incarcerated individual

## OVERVIEW

Maintaining safety and respecting the dignity of every incarcerated individual at the Department of Public Safety and Correctional Services (Department) facilities is paramount.  The Department ensures the entitled rights that incarcerated individuals are conferred through the Constitution, federal, and State law are implemented and upheld by Department staff.

In July 2023, the Department created a LGBTQ+ Liaison/Coordinator position within the Department that focuses on the public safety needs of the LGBTQ+ incarcerated individuals.  The liaison supports and advocates for LGBTQ+ individuals within the correctional facilities, fostering a safe and affirming environment for all incarcerated individuals.  The liaison's role is to create a more equitable and just correctional system that respects the rights and dignity of all individuals regardless of their sexual orientation or gender identity.

## INTAKE PROCEDURES

The safety and security of all incarcerated individuals starts with an extensive risk assessment and screening conducted at intake by booking, classification, medical, mental health and confinement units. The thorough intake interview includes gathering information from an individual on any mental health issues or medical problems, as well as details of their social, educational and work history. If the individual identifies as LGBTQ+, special care is taken to assess their fears, depression, anxieties, and vulnerabilities.

Whether an individual is entering one of the Department's facilities for the first time or is transferring between facilities steps are taken to ensure their safety, as required by the Prison Rape Elimination Act, to protect that person from sexual harassment or abuse.  Upon entering any facility every individual must be screened for risk of sexual victimization or sexual abusiveness. PREA standard 115.41 requires that the agency must screen within seventy-two hours every individual entering a facility. While there is no standardized screening system recommended, agencies are required to develop their own screening instruments. The  instrument is required to take into account the following criteria: (1) Whether the incarcerated individual has a mental, physical, or developmental disability; (2) The age of the incarcerated individual; (3) The physical build of the incarcerated individual; (4) Whether the incarcerated individual has previously been incarcerated; (5) Whether the incarcerated individual's criminal history is exclusively nonviolent; (6) Whether the incarcerated individual has prior convictions for sex offenses against an adult or child; (7) Whether the incarcerated individual is or

is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming; (8) Whether the incarcerated individual has previously experienced sexual victimization; (9) The incarcerated individual's own perception of vulnerability; and (10) Whether the incarcerated individual is detained solely for civil immigration purposes. Additionally, the initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the agency, in assessing incarcerated individuals for risk of being sexually abusive. Individuals who report sexual victimization or abusiveness are immediately offered mental health appointments that must be scheduled within fourteen days.  Within thirty days of the individual's arrival at the facility the assigned case manager must reassess the screening information. Reassessments shall also be conducted when warranted due to referral, request, incident of sexual abuse, or receipt of additional relevant information.

PREA standard 115.42 requires that the screening information gathered be used to inform housing, bedding, work, education, and program assignments. The goal is to keep separate those incarcerated individuals at high risk of being victimized from those at high risk of being sexually abusive. The agency is required to make individualized determination about how to ensure the safety of each individual. When deciding housing assignments for transgender individuals, the agency shall consider on a case-by-case basis whether a placement would ensure the individual's health and safety, and whether the placement would present management or security problems. Placement and programming assignments for transgender incarcerated persons are reassessed at least twice each year to review any threats to safety experienced by the incarcerated individual. The PREA standards also require that a transgender individual's own views with respect to his or her own safety shall be given serious consideration. Transgender incarcerated individuals shall also be given the opportunity to shower separately from the incarcerated individuals. Finally, the agency is restricted from creating dedicated facilities, units, or wings for the housing of transgender, lesbian, gay, bisexual, or intersex individuals, unless such housing accommodations are established as a result of a consent decree, legal settlement or legal judgment.

The procedures used by the Department to meet these standards have been audited in excess of seventy times by independent, certified PREA auditors. In every final audit report the Department was found to be in compliance with the above requirements.

## I.    NUMBER OF TRANSGENDER INCARCERATED INDIVIDUALS

The number of incarcerated individuals in the Department's eighteen facilities identifying as transgender changes frequently.  As mentioned, every individual entering one of the Department's facilities is immediately screened to determine their risk for sexual victimization or sexual abusiveness. Part of this risk screening includes a voluntary determination of an individual's gender identity and/or sexual orientation.

Each time an individual is transferred to a different facility, a new screening is conducted which will occasionally yield different results. Individuals also enter and leave custody on a daily basis further complicating the agency-wide count. Based upon a careful analysis of the names provided by the PREA Compliance Managers (PCMs) at each facility, and the individuals under the care of the medical and mental health care staff, the Department identified a total of 89 transgender incarcerated individuals over the course of the reporting period between the last three years (2021-2023).

All transgender individuals are housed according to physical genitalia. A male who has had sexual reassignment surgery can be housed with female individuals. The Department's transgender population is provided below for the last three years, and is based upon intakes and releases.  The data reflects the population as of the end of fiscal year.

| FY 2021 Transgender Population | |
|---|---|
| **Facility** | **Count** |
| BCBIC | 4 |
| BCCC | 1 |
| CDF | 1 |
| ECI-E | 3 |
| ECI-W | 8 |
| JCI | 7 |
| MCIH | 10 |
| MCIJ | 5 |
| MCIW | 9 |
| MCTC | 1 |
| MRDCC | 1 |
| MTC | 1 |
| NBCI | 5 |
| PATXNT | 2 |
| RCI | 6 |
| WCI | 6 |
| **TOTAL** | **70** |

| FY 2022 Transgender Population | |
|---|---|
| **Facility** | **Count** |
| BCBIC | 2 |
| ECI-E | 4 |
| ECI-W | 6 |
| JCI | 6 |
| MCIH | 6 |
| MCIJ | 7 |
| MCIW | 12 |
| MCTC | 3 |
| MRDCC | 1 |
| MTC | 1 |
| NBCI | 3 |
| PATXNT | 3 |
| RCI | 12 |
| WCI | 5 |
| **TOTAL** | **71** |

| FY 2023 Transgender Population | |
|---|---|
| **Facility** | **Count** |
| BCBIC | 2 |
| DRCF | 2 |
| ECI-A | 2 |
| ECI-E | 4 |
| ECI-W | 5 |
| JCI | 5 |
| MCIH | 4 |
| MCIJ | 4 |
| MCIW | 15 |
| MCTC | 3 |
| NBCI | 7 |
| PATXNT | 3 |
| RCI | 16 |
| WCI | 6 |
| **TOTAL** | **78** |

## II.    HOUSING OF TRANSGENDER INCARCERATED INDIVIDUALS

The Department's Offender Case Management System (OCMS) maintains an incarcerated individual's movement changes, referred to as traffic history. The table below provides a summary of transgender housing moves by fiscal year.

| REASON | Movement Type | 2021 | 2022 | 2023 |
|---|---|---|---|---|
| Transgender Population Traffic History Summary Counts | | | | |
| Housing Status Change | Court Appearance | 7 | 44 | 31 |
| Housing Status Change | ECI Infirmary | | 1 | |
| Housing Status Change | ER/911 | 2 | 4 | 8 |
| Housing Status Change | Howard Gen. Hospital | 1 | | |
| Housing Status Change | In Custody - In State | 1 | | 2 |
| Housing Status Change | JCI HUB | | 2 | 1 |
| Housing Status Change | JRH | | 1 | |
| Housing Status Change | MCTC HUB | | | 2 |
| Housing Status Change | Medical Appointment | 17 | 18 | 50 |
| Housing Status Change | Normal | 32 | 74 | 99 |
| Housing Status Change | Other | | | 2 |
| Housing Status Change | Tidal Health Peninsular Regional | | | 1 |
| Housing Status Change | WCI Infirmary | 1 | 2 | |
| Housing Status Change | Internal Cadre Cell | 5 | 3 | |
| Internal Move | Admin Seg | 10 | 43 | 30 |
| Internal Move | Admin Seg 120 | 7 | 33 | 34 |
| Internal Move | Admin Seg PA | 23 | 38 | 52 |
| Internal Move | Change in Security Level | 1 | | 2 |
| Internal Move | Convenience | 14 | 26 | 8 |
| Internal Move | Correction | 12 | 22 | 22 |
| Internal Move | Dis Seg | 5 | 16 | 19 |
| Internal Move | General Health | 12 | 4 | 5 |
| Internal Move | Hospital Discharge | 8 | 8 | 6 |
| Internal Move | In House Move | 378 | 423 | 492 |
| Internal Move | Intel/Investigation | | 1 | 1 |
| Internal Move | Mental Health | 10 | 18 | 43 |
| Internal Move | PC | 1 | 2 | 5 |
| Internal Move | Receiving | | | 2 |
| Internal Move | Remove from Special Confinement | 21 | 22 | 35 |
| Internal Move | Special Needs | | 2 | |
| Internal Move | Temporary Move | 6 | 2 | |
| Internal Move | Transfer In | 58 | 47 | 64 |
| Internal Move | Unassigned from bed | 2 | 3 | 1 |
| Internal Move | Work Detail or Reassigned | | 1 | |
| Receiving | Return | 1 | 2 | |
| Receiving | Sentenced | 2 | | 1 |

Administrative Segregation is maintained by the OCMS primary assignment history. Placement length can not be determined as assignment start and end dates are triggered automatically. The table below provides the number of placements by fiscal year or the transgender population. It should be noted that one incarcerated individual may have had multiple placements.

| Administrative Segregation | |
|---|---|
| FY | Placements |
| 2021 | 28 |
| 2022 | 57 |
| 2023 | 83 |

Disciplinary segregation placements and lengths are provided in the table below.

| Disciplinary Segregation | | | | | |
|---|---|---|---|---|---|
| | | Placement Periods in Days | | | |
| FY | # Placements | Min | Max | Average | SUM |
| 2021 | 42 | 10 | 180 | 45 | 1,900 |
| 2022 | 69 | 5 | 180 | 39 | 2,704 |
| 2023 | 98 | 5 | 180 | 52 | 5,074 |

The table below provides a summary of the infraction rule violations committed by the 89 transgender individuals identified by the Department between FY 2021 - 2023. The rule infractions were heard by a hearing officer and resulted in guilty findings and sanctions of disciplinary segregation. Out of 438 violations, there were only 209 disciplinary segregation placements. Individuals with multiple violations have their violations heard together at the hearing.

| Guilty Rule Violations Committed by Transgender Individuals (89) | | |
|---|---|---|
| Rule | Description | Count |
| 100 | Engage in a disruptive act | 57 |
| 101 | Commit assault or battery on staff | 42 |
| 102 | Commit assault or battery on an incarcerated individual | 60 |
| 103 | Commit assault or battery on a person who is neither staff or an incarcerated individual; be involved in any manner with holding a person hostage; or the willful killing of a person | 1 |
| 104 | Make threats that include using physical harm to objects, property, or individuals | 43 |

| | | |
|---|---|---|
| 105 | Possess, use, or manufacture a weapon | 35 |
| 106 | Escape when assigned maximum or medium security status | 1 |
| 110 | Possess an implement or article that may be used in an escape | 2 |
| 111 | Possess a drug, controlled dangerous substance, or medication requiring staff observation to ingest, or an intoxicant excluding alcohol. | 10 |
| 112 | Use a controlled dangerous substance, use a medication requiring staff observation to ingest when not prescribed, or use an intoxicant | 1 |
| 114 | Possess a drug, controlled dangerous substance, or medication requiring staff observation to ingest, or an intoxicant, excluding alcohol, in a sufficient quantity, or possess packaging materials, suggesting distribution of or the intent to distribute | 1 |
| 115 | Refuse or fail to provide a required volume of urine necessary for urinalysis testing; or provide a diluted or adulterated urine sample | 1 |
| 116 | Possess, misuse, tamper with, damage, or destroy security equipment or property, detection equipment, or fire suppression equipment or alarm | 38 |
| 117 | In any manner, arrange, commit, perform, or engage in a sexual act or sexual conduct | 16 |
| 118 | Make application for, obtain, or possess articles or materials for an unauthorized financial account; or use an unauthorized financial account | 5 |
| 119 | In any manner commit, conspire to commit, or participate in an act of masturbation | 6 |
| 126 | Knowingly provide false reports, claims, accusations or information related to the Prison Rape Elimination Act (PREA) or use the PREA Hotline other than for the intended purpose | 4 |
| 300 | Administer a tattoo; Receive a tattoo; Or Possess tattoo equipment, materials, or paraphernalia | 1 |
| 301 | Possess or use alcohol without authorization | 3 |
| 304 | Possess, use, hoard, or accumulate medication without authorization | 2 |
| 305 | Participate in an act that is in violation of a law, statute, ordinance, or provision of law | 1 |
| 307 | Participate in an act of extortion, bribery, or coercion | 1 |
| 308 | Steal State property, possess stolen State property, possess State property without permission, or tamper with, damage, or destroy State property | 6 |
| 309 | Possess property of an individual or entity without permission; or Alter, tamper with, damage, or destroy property of another individual or entity | 1 |
| 310 | Participate in an act not included as an incarcerated individual rule violation under this regulation that is in violation of a rule, policy, directive, or regulation of a Department program, Facility program, or Community program | 1 |
| 312 | Interfere with or resist a search of a person, item, area, or location; Cause the early return of a community detail due to a violation of the rules; or Commit any incarcerated individual rule violation outside of the confinement of a secure facility | 3 |
| 315 | Possess or pass contraband | 3 |
| 316 | Disobey an order | 93 |

### III.    TRANSFER ASSIGNMENTS

All incarcerated individuals have a right to Nondiscrimination e.e. equal access for all incarcerated individuals to programs, services, and activities, without regard to race, religion, national origin, sex, disability, or political beliefs, unless membership in any of these classes necessitates the exercise of the constitutional duty to afford an incarcerated individual reasonable protection from harm.

Incarcerated individuals may request a transfer of convenience.  Transfers are prioritized by Department's policy [disciplinary transfers, security transfers, educational/programming transfers, and then convenience transfers] and as bed space permits.   At each administrative transfer a new PREA Intake Screening form is completed for the II.   The initial assessment is completed by a correctional officer. During the initial assignment with case management the case manager reviews with the II the Intake Screening Form within 30 days of arrival of the institution.

The transfer requests are an informal process and are not tracked.   However, the Department does track when an individual is physically transferred. This data is included in the movement history table under Item II.

### IV.    PRISON RAPE ELIMINATION ACT (PREA) COMPLAINTS

The Prison Rape Elimination Act requires that the agency "shall ensure that an administrative or criminal investigation is completed for all allegations of sexual abuse and sexual harassment" (§ 115.22). Additionally, the Act requires that the agency shall provide multiple ways for incarcerated individuals to report sexual abuse or harassment and staff must accept reports made verbally, in writing, anonymously, and from third parties (§ 115.51). The Department, in order to assure that incarcerated individual complaints regarding sexual abuse and sexual harassment are not hampered by the Administrative Remedy Process (ARP), removed these complaints from the ARP process by placing them in the streamlined PREA complaint process. This move was codified in COMAR 12.02.28.05 (B). The Department's Intelligence and Investigative Division investigates every complaint reporting results to complaining incarcerated individuals as required by PREA standard (§ 115.73). In compliance with PREA standards, completed investigations are subject to an incident review by facility upper-level management (§ 115.86). This review must be documented and be completed within thirty days of the conclusion of the investigation. Each calendar year the Department publishes on its website an annual report containing data related to every investigation (§ 115.88). Every PREA standard is supported by a written policy or directive.

PREA standards require that agencies collect accurate and uniform data for every allegation of sexual abuse maintaining that data for distribution (§ 115.87). The Department also maintains accurate data related to harassment incidents, exceeding the

requirements of the PREA standards.  Every reported incident must be investigated and assigned one of three dispositions (§ 115.73). These three dispositions are defined as follows (§ 115.5):

- Substantiated allegation means an allegation that was investigated and determined to have occurred.
- Unfounded allegation means an allegation that was investigated and determined not to have occurred.
- Unsubstantiated allegation means an allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.

The PREA fiscal year tables below provide aggregate counts for the entire DPSCS population. They differentiate between harassment investigations and sexual abuse investigations. Harassment investigations are normally verbal in nature although certain gestures, pranks, and retaliatory actions could be included in the category. The PREA standards define that for an action to be considered harassment it should be repeated, as opposed to a one time  incident (§ 115.5). Sexual abuse encompasses a broad range of sexual behaviors that include an element of personal contact. Incidental contact of sexually provocative areas during an altercation is not considered sexual abuse. Medical procedures and contact otherwise occurring during the execution of official duties, such as a properly conducted pat search, are also excluded. Furthermore, consensual sexual conduct between incarcerated persons is not considered to be sexual abuse, but the Department considers all sexual behavior to be a violation of behavior policy. Sexual contact between staff and the incarcerated population is always illegal and is investigated as a sexual abuse incident, even if the incarcerated individual claims the relationship was consensual. Incarcerated individuals will never be disciplined for becoming involved in a sexual relationship with a staff member (§ 115.78).

The following charts indicate the total number of investigations conducted by fiscal year at each facility. The data includes a breakdown by facility and disposition. Similar data can be found in the Annual Reports located on the Department's website. The publicly reported information is compiled by calendar year rather than fiscal year producing minor differences in the compiled data. Because investigations can take several weeks or months to complete, the FY23 data contains information regarding cases that have not been resolved at the time this report was written. Because facility size is the primary, but not the only factor, in evaluating the number of investigations at a particular facility, the Department finds it useful to calculate the number of investigations per one hundred incarcerated individuals. This comparative calculation is reported on the Agency Wide chart.

## Unfounded Reports

Investigators are encouraged to gather as much evidence as possible enabling them to come to a decisive conclusion regarding a PREA complaint whenever possible. An unfortunate reality of investigating sexual abuse within a confinement setting is that there is a high rate of false reporting. There is considerable incentive for an incarcerated

person to file a false report. Because incarcerated individuals know that a correctional officer will be transferred to another unit when even minor PREA complaints are made, it is not uncommon for officers to be targeted. Sometimes the motivation is simple revenge. Within days of writing an infraction notice on an individual, the officer will become the subject of a PREA complaint. It has also been observed, and confirmed by informants, that effective officers will be targeted so that they are transferred to other assignments during the investigation.

Incarcerated individuals will also use the PREA complaint process to manipulate housing assignments. An undesirable cellmate can be moved with a very simple complaint that cannot be verified or refuted. The PREA complaint process is also used to "check in". The term is used to describe the process of voluntarily transferring into administrative segregation to avoid an uncomfortable situation, usually a debt owed to other incarcerated individuals.

Finally, there is a small population of mentally impaired incarcerated individuals who make repeated complaints that could not have occurred. Each complaint is investigated as required by PREA standards and counted in the annual statistics.

| PREA Investigations (FY21) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Unfounded | | Unsubstantiated | | Substantiated | | Open | | Total Investigations |
| | Harassment | Sexual Abuse | Harassment | Sexual Abuse | Harassment | Sexual Abuse | Harassment | Sexual Abuse | |
| Baltimore Central Booking & Intake Center | 0 | 3 | 0 | 4 | 0 | 0 | 0 | 0 | 7 |
| Baltimore City Correctional Center | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 2 |
| Chesapeake Detention Facility | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| Central MD Correctional Facility | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 4 |
| Dorsey Run Correctional Center | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern Correctional Institution | 3 | 3 | 3 | 2 | 0 | 1 | 0 | 0 | 12 |
| Jessup Correctional Institution | 2 | 5 | 2 | 1 | 0 | 0 | 0 | 0 | 10 |
| MD Correctional Institution - Hagerstown | 2 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 5 |
| MD Correctional Institution - Jessup | 0 | 0 | 1 | 3 | 0 | 1 | 0 | 0 | 5 |
| MD Correctional Institution - Women | 1 | 2 | 2 | 2 | 0 | 1 | 0 | 0 | 8 |
| MD Correctional Training Center | 2 | 1 | 4 | 9 | 0 | 0 | 0 | 0 | 16 |
| MD Reception, Diagnostic & Classification Center | 2 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 4 |
| Metropolitan Transition Center | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| North Branch Correctional Institution | 3 | 10 | 2 | 5 | 0 | 1 | 0 | 0 | 21 |
| Patuxent Institution | 2 | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 5 |
| Roxbury Correctional Institution | 2 | 0 | 2 | 5 | 0 | 0 | 0 | 0 | 9 |
| Western Correctional Institution | 3 | 4 | 4 | 3 | 0 | 0 | 0 | 0 | 14 |
| Youth Detention Center | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| TOTAL | 24 | 35 | 23 | 38 | 0 | 4 | 0 | 0 | 124 |

**PREA Investigations (FY22)**

| | Unfounded | | Unsubstantiated | | Substantiated | | Open | | Total Investigations |
|---|---|---|---|---|---|---|---|---|---|
| | Harassment | Sexual Abuse | Harassment | Sexual Abuse | Harassment | Sexual Abuse | Harassment | Sexual Abuse | |
| Baltimore Central Booking & Intake Center | 1 | 6 | 2 | 13 | 0 | 0 | 0 | 0 | 22 |
| Baltimore City Correctional Center | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| Chesapeake Detention Facility | 1 | 0 | 1 | 5 | 0 | 0 | 0 | 0 | 7 |
| Central MD Correctional Facility | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dorsey Run Correctional Center | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern Correctional Institution | 3 | 3 | 3 | 2 | 0 | 0 | 0 | 0 | 11 |
| Jessup Correctional Institution | 1 | 5 | 1 | 5 | 0 | 0 | 0 | 0 | 12 |
| MD Correctional Institution - Hagerstown | 0 | 1 | 0 | 2 | 0 | 2 | 0 | 0 | 5 |
| MD Correctional Institution - Jessup | 1 | 1 | 1 | 3 | 0 | 0 | 0 | 0 | 6 |
| MD Correctional Institution - Women | 0 | 2 | 0 | 5 | 0 | 2 | 0 | 0 | 9 |
| MD Correctional Training Center | 0 | 4 | 1 | 4 | 0 | 1 | 0 | 0 | 10 |
| MD Reception, Diagnostic & Classification Center | 0 | 3 | 1 | 0 | 0 | 0 | 0 | 0 | 4 |
| Metropolitan Transition Center | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 4 |
| North Branch Correctional Institution | 2 | 3 | 1 | 2 | 0 | 0 | 0 | 0 | 8 |
| Patuxent Institution | 1 | 3 | 0 | 1 | 0 | 1 | 0 | 0 | 6 |
| Roxbury Correctional Institution | 1 | 3 | 1 | 4 | 0 | 0 | 0 | 0 | 9 |
| Western Correctional Institution | 2 | 4 | 3 | 5 | 0 | 0 | 0 | 0 | 14 |
| Youth Detention Center | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 2 |
| **TOTAL** | **15** | **40** | **15** | **55** | **0** | **6** | **0** | **0** | **131** |

**PREA Investigations (FY23)**

| | Unfounded | | Unsubstantiated | | Substantiated | | Open | | Total Investigations |
|---|---|---|---|---|---|---|---|---|---|
| | Harassment | Sexual Abuse | Harassment | Sexual Abuse | Harassment | Sexual Abuse | Harassment | Sexual Abuse | |
| Baltimore Central Booking & Intake Center | 2 | 9 | 0 | 4 | 0 | 1 | 0 | 0 | 16 |
| Baltimore City Correctional Center | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 2 |
| Chesapeake Detention Facility | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 2 |
| Central MD Correctional Facility | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Dorsey Run Correctional Center | 0 | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 3 |
| Eastern Correctional Institution | 8 | 4 | 2 | 0 | 0 | 0 | 0 | 3 | 17 |
| Jessup Correctional Institution | 5 | 5 | 0 | 2 | 0 | 0 | 0 | 1 | 13 |
| MD Correctional Institution - Hagerstown | 0 | 0 | 0 | 4 | 0 | 1 | 0 | 2 | 7 |
| MD Correctional Institution - Jessup | 1 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 7 |
| MD Correctional Institution - Women | 2 | 5 | 1 | 3 | 1 | 0 | 0 | 0 | 12 |
| MD Correctional Training Center | 1 | 4 | 2 | 13 | 1 | 1 | 0 | 0 | 22 |
| MD Reception, Diagnostic & Classification Center | 1 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 3 |
| Metropolitan Transition Center | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| North Branch Correctional Institution | 0 | 2 | 6 | 0 | 0 | 0 | 0 | 0 | 8 |
| Patuxent Institution | 3 | 4 | 1 | 2 | 0 | 0 | 1 | 0 | 11 |
| Roxbury Correctional Institution | 3 | 3 | 2 | 5 | 0 | 0 | 0 | 2 | 15 |
| Western Correctional Institution | 2 | 5 | 1 | 11 | 0 | 2 | 0 | 2 | 23 |
| Youth Detention Center | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| **TOTAL** | **29** | **52** | **17** | **48** | **2** | **5** | **1** | **12** | **166** |

| PREA Investigations - Agency Wide (FY21 - FY 23) | | | | | | |
|---|---|---|---|---|---|---|
| Facility Name | FY21 Investigations | FY22 Investigations | FY23 Investigations | 3 Year Total Investigations | Average Facility Population FY21-FY23 | Annual Investigations Per 100 Population |
| Baltimore Central Booking & Intake Center | 7 | 22 | 16 | 45 | 961 | 1.56 |
| Baltimore City Correctional Center | 2 | 1 | 5 | 8 | 361 | 0.74 |
| Chesapeake Detention Facility | 1 | 7 | 2 | 10 | 330 | 1.01 |
| Central MD Correctional Facility | 4 | 0 | 1 | 5 | 279 | 0.6 |
| Dorsey Run Correctional Center | 0 | 1 | 3 | 4 | 732 | 0.18 |
| Eastern Correctional Institution | 12 | 11 | 17 | 40 | 2,718 | 0.49 |
| Jessup Correctional Institution | 10 | 12 | 13 | 35 | 1,721 | 0.68 |
| MD Correctional Institution - Hagerstown | 5 | 5 | 7 | 17 | 874 | 0.65 |
| MD Correctional Institution - Jessup | 5 | 6 | 7 | 18 | 667 | 0.9 |
| MD Correctional Institution - Women | 8 | 9 | 12 | 29 | 476 | 2.03 |
| MD Correctional Training Center | 16 | 10 | 22 | 48 | 2,001 | 0.8 |
| MD Reception, Diagnostic & Classification Center | 4 | 4 | 3 | 11 | 546 | 0.67 |
| Metropolitan Transition Center | 0 | 4 | 3 | 7 | 580 | 0.4 |
| North Branch Correctional Institution | 21 | 8 | 8 | 37 | 1,067 | 1.16 |
| Patuxent Institution | 5 | 6 | 11 | 22 | 601 | 1.22 |
| Roxbury Correctional Institution | 9 | 9 | 15 | 33 | 1,505 | 0.73 |
| Western Correctional Institution | 14 | 14 | 23 | 51 | 1,518 | 1.12 |
| Youth Detention Center | 1 | 2 | 1 | 4 | 65 | 2.06 |
| **TOTAL** | 124 | 131 | 169 | 424 | 17,001 | 0.83 |

| PREA Investigations Involving Transgender Incarcerated Individuals (FY21 - FY23) | | | | |
|---|---|---|---|---|
| Facility Name | FY21 | FY22 | FY23 | 3 YR Total |
| Baltimore Central Booking & Intake Center | 0 | 0 | 0 | 0 |
| Baltimore City Correctional Center | 0 | 0 | 0 | 0 |
| Chesapeake Detention Facility | 0 | 0 | 0 | 0 |
| Central MD Correctional Facility | 0 | 0 | 0 | 0 |
| Dorsey Run Correctional Center | 0 | 0 | 0 | 0 |
| Eastern Correctional Institution | 2* | 0 | 2 | 2 |
| Jessup Correctional Institution | 0 | 2 | 3 | 5 |
| MD Correctional Institution - Hagerstown | 1 | 3 | 3 | 7 |
| MD Correctional Institution - Jessup | 1 | 0 | 0 | 1 |
| MD Correctional Institution - Women | 0 | 1 | 0 | 1 |
| MD Correctional Training Center | 0 | 0 | 1 | 1 |
| MD Reception, Diagnostic & Classification Center | 0 | 0 | 0 | 0 |
| Metropolitan Transition Center | 0 | 0 | 0 | 0 |
| North Branch Correctional Institution | 2 | 0 | 2 | 4 |
| Patuxent Institution | 1 | 2 | 1 | 4 |
| Roxbury Correctional Institution | 1 | 0 | 6 | 7 |
| Western Correctional Institution | 1* | 2 | 3* | 2 |
| Youth Detention Center | 0 | 0 | 0 | 0 |
| **TOTAL** | 6 | 10 | 18 | 34 |
| *Includes one incident where the transgender individual was the accused | | | | |

| PREA Investigations Involving Transgender Incarcerated Individuals by Disposition (FY21-FY23) | | | | | |
|---|---|---|---|---|---|
| Facility Name | Unfounded | Unsubstantiated | Substantiated | Open | Total |
| Baltimore Central Booking & Intake Center | 0 | 0 | 0 | 0 | 0 |
| Baltimore City Correctional Center | 0 | 0 | 0 | 0 | 0 |
| Chesapeake Detention Facility | 0 | 0 | 0 | 0 | 0 |
| Central MD Correctional Facility | 0 | 0 | 0 | 0 | 0 |
| Dorsey Run Correctional Center | 0 | 0 | 0 | 0 | 0 |
| Eastern Correctional Institution | 2 | 1 | 1* | 0 | 3 |
| Jessup Correctional Institution | 2 | 3 | 0 | 0 | 5 |
| MD Correctional Institution - Hagerstown | 1 | 3 | 1 | 2 | 7 |
| MD Correctional Institution - Jessup | 1 | 0 | 0 | 0 | 1 |
| MD Correctional Institution - Women | 0 | 1 | 0 | 0 | 1 |
| MD Correctional Training Center | 0 | 1 | 0 | 0 | 1 |
| MD Reception, Diagnostic & Classification Center | 0 | 0 | 0 | 0 | 0 |
| Metropolitan Transition Center | 0 | 0 | 0 | 0 | 0 |
| North Branch Correctional Institution | 1 | 2 | 1 | 0 | 4 |
| Patuxent Institution | 3 | 1 | 0 | 0 | 4 |
| Roxbury Correctional Institution | 2 | 4 | 0 | 1 | 7 |
| Western Correctional Institution | 3* | 3* | 0 | 0 | 0 |
| Youth Detention Center | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 12 | 16 | 2 | 3 | 33 |

* Includes one incident where the transgender individual was the accused

## COMPLAINTS RECEIVED

The Division of Pretrial Detention and Services has a Grievance system and the Division of Correction has an Administrative Remedy Procedure (ARP) in which the incarcerated population can file grievances ranging from medical to conditions of confinement.  Provided in Appendix I and II are summary counts for the subject and disposition of grievances and ARPs submitted by the 89 transgender individuals in the Department's custody from FY2021 through FY2023.

## IV.  POLICIES AFFECTING TRANSGENDER INDIVIDUALS

### Prison Rape Elimination Act (PREA)

PREA standard 115.43 restricts the use of protective custody for incarcerated individuals at risk for sexual victimization. PREA Compliance Managers (PCM) are trained to monitor the housing status of LGBTQI incarcerated individuals and  work to avoid use of protective custody. Standard 115.43 does require that the facility  maintain records if protective custody cannot be avoided.

### Health Care

Medical Evaluations Manual Chapter 1, Section C - Transgender has been under review with updates in work. The policy below is based on actual practices which will be part of the revised policy.

Any incarcerated individuals identifying as transgender who were receiving hormonal gender affirming care in the community would be continued on it upon verification unless they decline it.  This hormonal treatment is provided in collaboration with a community endocrinologist where necessary.

Mental Health staff from each facility participate in the Gender Dysphoria Committee and update any significant mental health issues for the transgender or Gender Dysphoric patients. Mental Health staff at each facility will see any incarcerated individual that may be experiencing gender identity issues. The individual through the Gender Dysphoria Committee meetings will discuss the case with the Gender Dysphoria consultant and schedule an evaluation. Once diagnosis is made, the individual is referred to appropriate disciplines, i.e. to medical for scheduling an appointment for endocrinology evaluation to start hormone treatment, custody for search cards.

The Gender Dysphoria Committee (GDC) committee meets quarterly to review active cases, and any newly identified individuals that need evaluation by a Gender Dysphoria Consultant. Mental Health staff at each facility report on any individuals  that are experiencing difficulty or update any issues.

**Commissary**

In accordance with Departmental Directive OPS.131.0001 (Identification, Treatment, and Correctional Management of an incarcerated individual diagnosed with Gender Dysphoria), incarcerated individuals who are diagnosed with gender dysphoria can order items of the sex that they identify as along with items that are permitted to the gender of other incarcerated individuals within that facility.(i.e. - A transgender female housed at a male institution would be allowed to order both male and female commissary) The department is currently in the process of implementing a gender neutral commissary list that will be same for all facilities (based upon security level)

In addition to PREA policies, the Department has developed policies with regards to transgender incarcerated individuals and/or gender dysphoria, including but not limited to intake procedures, identification of transgender incarcerated individuals, provision of gender-affirming health care, housing assignment, safety from violence and sexual abuse, and access to gendered commissary items.   All policies with regards to transgender individuals can be found on the Department's website at https://dpscs.maryland.gov/pia/policy.shtml.  The policies include:

| | |
|---|---|
| OCS.130.003 | Clinical Services & Incarcerated Individual Health Manual |
| DOC 200.0001 | Incarcerated Individual Rights |
| DPSCS.020.0026 | PREA Federal Standards Compliance |

| DPSCS.200.0007 | Americans with Disabilities Act (ADA) Title II Non-discrimination and Accommodations for Persons with Disabilities |
| --- | --- |
| DPSCS.020.0026 | PREA Audit Manual |
| OPS.131.0001 | Identification, Treatment and Correctional Management of an incarcerated individual Diagnosed with Gender Dysphoria |
| OPS.200.0005 | Incarcerated individual on incarcerated individual Sexual Conduct - Prohibited |
| OPS.200.0006 | Assessment for Risk of Sexual Victimization and Abusiveness - under review for revisions |
| OPS.200.0011 | incarcerated individual Personal Grooming |
| OSPS.200.0027 | PREA Investigations - Tracking and Review |

## V.    ANALYSIS OF POLICY IMPLEMENTATION

The LGBTQ+ liaison reports that departmental policies are being adhered to. The only complaint expressed by the transgender population is with commissary items not being available. The liaison is working with the commissary vendor to create a gender neutral commissary list so that there is one list no matter what facility someone is housed at.

**PREA Policies and Standards**

The Department of Public Safety and Correctional Services is fully committed to its continuing compliance with the Prison Rape Elimination Act (28 C.F.R Part 115) and the related standards for prisons and jails. Based upon independent audits and in conjunction with the Department of Juvenile Services these two agencies will be recommending to the Governor to sign a letter of full compliance to be sent to the Department of Justice (DOJ). This will be the third year in a row that such a recommendation has been made.

The Prison Rape Elimination Act (PREA) audits are an effective and impartial way to determine if an agency or facility is effectively implementing policies that protect all incarcerated persons from sexual harassment and abuse. Independent auditors trained and approved by the Department of Justice are hired to perform detailed audits to determine if a facility and its parent agency are in compliance with all PREA standards. PREA audits are conducted in three-year cycles as determined by the DOJ. We are currently in the second year of the fourth cycle. Every facility under the control of a parent agency must be audited during each cycle. Many of the Department's eighteen facilities have been audited as many as four times. All eighteen facilities of the

Department's operational facilities have been successfully audited during the last three years.

PREA audits must be conducted by certified auditors that have no conflict of interest with the agencies or facilities they audit. Auditors undergo extensive training, receive mandatory continued education, and must pass a comprehensive test every three years. The audit includes a policy review, documentation analysis, a facility inspection, and interviews with dozens of staff and incarcerated individuals. The auditors must solicit written comments from staff and the incarcerated population for at least six weeks prior to the auditor's visit to the facility under inspection. A single audit can take up to ten months to complete. At the conclusion of the audit, the auditor must submit a comprehensive report documenting how the facility has complied (or failed to comply) with each PREA standard. Each completed audit is submitted to the DOJ for review. Every audit is subject to a peer review program designed to encourage high quality audits. Facility audits are posted to the Department's website for public access.

Included in the forty-five PREA standards are over three hundred individual items that the auditors must review for compliance. These standards include provisions for prevention planning, responsive planning, training and education, training and education, risk screening, reporting, official response to incarcerated individual reports, investigations, discipline, medical and mental health care related to abuse, data management, and audit requirements. Every incarcerated individual is protected by the PREA standards, however; transgender individuals are accorded additional accommodations and privileges. These protections are outlined as follows:

- §115.15 (e) – protects transgender individuals from searches for the sole purpose of determining genital status
- §115.15 (f) – requires that the Department train staff  how to conduct searches of transgender incarcerated individuals in a professional and respectful manner
- §115.31 (a) – requires that the Department train its staff how to communicate effectively with LGBTI incarcerated individuals
- §115.41 (d) – requires that risk screening include transgender identification as a risk factor
- §115.41 (c) – requires that the agency consider an incarcerated individual's transgender status, as well as management and security issues, when making housing and programming assignments
- §115.41 (d) –requires that a transgender incarcerated individual's housing and programming assignments be reviewed twice each year regarding safety threats
- §115.41 (e) – requires that a transgender incarcerated individuals own views regarding safety be given serious consideration
- §115.41 (f) – requires that a transgender incarcerated individual be allowed to shower separately from other incarcerated individuals
- §115.41 (g) – requires that transgender incarcerated individuals not be placed in designated facilities, units or wings

- §115.86 (d) – requires that sexual abuse investigations be reviewed to determine motivation including transgender identification.

These ten sections specifically mention transgender incarcerated individuals and the response that the Department is obliged to take given certain circumstances. Each of these individual sub-standards are examined for full compliance during every PREA audit. The Department has never been found to be out of compliance with any of these standards.

**TRAINING**

Much of the training related to the treatment of transgender incarcerated individuals is required by the Prison Rape Elimination Act (PREA). The Act includes strict standards for training that are monitored by independent auditors trained by the Department of Justice. Most of the standards apply to all incarcerated individuals, regardless of sexual orientation or gender, but are nonetheless important to the well-being of transgender individuals incarcerated in DPSCS facilities. All staff members who have contact with incarcerated individuals are trained when hired with updated, refresher training provided on an annual basis. PREA standard 115.31 requires that staff are required to undergo training as follows:

(1) Its zero-tolerance policy for sexual abuse and sexual harassment; (2) How to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures; (3) incarcerated individuals' right to be free from sexual abuse and sexual harassment; (4) The right of incarcerated individuals and employees to be free from retaliation for reporting sexual abuse and sexual harassment; (5) Its zero-tolerance policy for sexual abuse and sexual harassment; (6) The common reactions of sexual abuse and sexual harassment victims; (7) How to detect and respond to signs of threatened and actual sexual abuse; (8) How to avoid inappropriate relationships with incarcerated individuals; (9) How to communicate effectively and professionally with incarcerated individuals, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming incarcerated individuals; and (10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities.

All training is conducted using approved lesson plans. Lesson plans are approved by trained Department instructors, the Department's PREA Coordinator (who is also a DOJ certified PREA auditor) and finally by the independent PREA auditors that visit six facilities each year. The PREA standards also require that the agency document attendance through signature or electronic verification.

Volunteers and contractors also receive training as required by PREA standard 115.32. All volunteers who have contact with incarcerated individuals must receive training on their responsibilities under the agency'd sexual abuse and sexual harassment prevention, detection and response policies and procedures. The level and type of training provided to volunteers and contractors must be based on the services and

level of contact they have with incarcerated persons. All volunteers and contractors who have contact with incarcerated individuals must be notified of the agency's zero-tolerance policy regarding sexual abuse and harassment and informed how to report such incidents. The agency is required to maintain training documentation confirming that the information received is understood.

Investigators who investigate sexual abuse allegations in any DPSCS facility must have receive additional training specific to conducting investigation in confinement settings. Such training is required by PREA standard 115.34 and must include techniques for interviewing sexual abuse victims, proper use of Miranda and Garrity warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral. Again, training must be documented.

Finally, PREA standard 115.35 requires that medical and mental health care staff receive specialized training. This training must include (1) How to detect and assess signs of sexual abuse and sexual harassment; (2) How to preserve physical evidence of sexual abuse; (3) How to respond effectively and professionally to victims of sexual abuse and sexual harassment; and (4) How and to whom to report allegations or suspicions of sexual abuse and sexual harassment. The training must be documented. It should be noted that this training is not equivalent to the training required of a sexual assault nurse examiner (SANE) or a sexual assault forensic examiner (SAFE).

In addition to the training provided under the requirements of the Prison Rape Elimination Act, the Department trains its PREA Compliance managers during seminars specifically addressing all PREA standards. A PREA Compliance Manager is assigned to each facility and is tasked with coordinating the facility's efforts to comply with PREA standards. THis training is not required by PREA standards, but is required of the compliance managers. The seminars are conducted by staff members who have been trained by the Department of Justice.

**APPENDIX I**

| DPDS Transgender Grievance Summary | | | | | |
|---|---|---|---|---|---|
| **Facility** | **Subject** | **Disposition** | **2021** | **2022** | **2023** |
| BCBIC | CLASSIFICATION | DISMISSED | | | 3 |
| BCBIC | COMMISSARY | DISMISSED | 2 | | |
| BCBIC | COMPLAINTS AGAINST STAFF OR OTHERS | DISMISSED | 1 | 2 | |
| BCBIC | DIETARY | DISMISSED | | 1 | |
| BCBIC | DISCIPLINARY MATTERS | DISMISSED | 1 | | |
| BCBIC | MAINTENANCE CONDITIONS | DISMISSED | | 1 | |
| BCBIC | MEDICAL | DISMISSED | | 2 | 3 |
| BCBIC | MEDICAL | DISMISSED | 1 | 1 | |
| BCBIC | MEDICAL | MERITORIOUS | 1 | | |
| BCBIC | OTHERS | DISMISSED | | | 1 |
| BCBIC | PAYROLL | DISMISSED | 2 | | |
| BCBIC | PROPERTY OR CLOTHING | DISMISSED | 1 | 1 | |
| BCBIC | VISITS OR TELEPHONE CALLS | DISMISSED | | | 1 |
| BPC/MTC | MAIL OR PACKAGES | DISMISSED | 1 | | |
| BPC/MTC | MAIL OR PACKAGES | MERITORIOUS PART | | 1 | |
| BPC/MTC | OTHERS | DISMISSED | 1 | | |
| BPC/MTC | PROPERTY OR CLOTHING | DISMISSED | 1 | | |
| MRDCC | CLASSIFICATION | DISMISSED | 1 | | |
| MRDCC | MEDICAL | | | 1 | |
| MRDCC | OTHERS | DISMISSED | 1 | | |

**APPENDIX II**

| DOC ARP Transgender Summary | | | | | |
|---|---|---|---|---|---|
| **Facility** | **Subject** | **Disposition** | **2021** | **2022** | **2023** |
| DRCF | Other Complaints Against Staff | Dismissed | | | 1 |
| ECI | Commissary or Commissary Account | Dismissed | | | 1 |
| ECI | Delay in Receiving Prescribed Medications | Withdrawn at incarcerated individual's Request | | | 2 |
| ECI | Discrimination by Staff | Dismissed | | | 1 |
| ECI | Discrimination by Staff | Dismissed for Procedural Reasons (Final) | | | 2 |
| ECI | Discrimination by Staff | Withdrawn at incarcerated individual's Request | | | 1 |
| ECI | Due to Sick Call Procedures | Dismissed | | | 3 |
| ECI | Due to Sick Call Procedures | Withdrawn at incarcerated individual's Request | | | 2 |
| ECI | Food (Except Medical Diets) | Dismissed | | | 1 |
| ECI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed for Procedural Reasons (Final) | | | 2 |
| ECI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Withdrawn at incarcerated individual's Request | | 1 | 1 |
| ECI | Medication Prescribed | Dismissed for Procedural Reasons (Final) | | | 1 |
| ECI | Medication Prescribed | Withdrawn at incarcerated individual's Request | | | 1 |

| | | | | | |
|---|---|---|---|---|---|
| ECI | Other Complaints Against Staff | Dismissed for Procedural Reasons (Final) | 2 | | 2 |
| ECI | Other Complaints Against Staff | Withdrawn at incarcerated individual's Request | 1 | 1 | 2 |
| ECI | Other Mail Problems (Delay, etc.) | Dismissed | | | 1 |
| ECI | Other Operations | Dismissed for Procedural Reasons (Final) | | 1 | |
| ECI | Other Operations | Withdrawn at incarcerated individual's Request | | | 1 |
| ECI | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed | | | 1 |
| ECI | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed for Procedural Reasons (Final) | | 3 | 1 |
| ECI | Recreation, Hobby Programs, Leisure Time Activities | Dismissed for Procedural Reasons (Final) | 1 | | |
| ECI | Referral to or Appointment with Specialist | Dismissed | | | 1 |
| ECI | Referral to or Appointment with Specialist | Dismissed for Procedural Reasons (Final) | | | 1 |
| ECI | Searches (Including Visit Related Searches) | Dismissed for Procedural Reasons (Final) | 1 | | |
| JCI | Access or Delay in Receiving Medical Care | Dismissed | | 2 | |
| JCI | Access or Delay in Receiving Medical Care | Dismissed for Procedural Reasons (Final) | 1 | | 1 |
| JCI | Access or Delay in Receiving Medical Care | Withdrawn at incarcerated individual's Request | 1 | | 1 |
| JCI | Assault by Staff | Dismissed | | | 1 |
| JCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Withdrawn at incarcerated individual's Request | 1 | 1 | |

| JCI | Mental Health Care | Dismissed for Procedural Reasons (Final) | | | 1 |
|---|---|---|---|---|---|
| JCI | Other Complaints Against Staff | Dismissed | 1 | 2 | 1 |
| JCI | Other Complaints Against Staff | Dismissed for Procedural Reasons (Final) | | 1 | 2 |
| JCI | Other Complaints Against Staff | Withdrawn at incarcerated individual's Request | | 3 | |
| JCI | Other Mail Problems (Delay, etc.) | Dismissed | | | 1 |
| JCI | Other Mail Problems (Delay, etc.) | Dismissed for Procedural Reasons (Final) | 1 | 1 | |
| JCI | Other Operations | Dismissed | 1 | | 2 |
| JCI | Other Operations | Dismissed for Procedural Reasons (Final) | 1 | 2 | 3 |
| JCI | Other Operations | Withdrawn at incarcerated individual's Request | 1 | 1 | 1 |
| JCI | Other Programs | Withdrawn at incarcerated individual's Request | | 1 | |
| JCI | Packages | Withdrawn at incarcerated individual's Request | | 1 | |
| JCI | Pay | Dismissed for Procedural Reasons (Final) | | 1 | |
| JCI | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed for Procedural Reasons (Final) | | | 1 |
| JCI | Problems with Medications | Dismissed | | | 1 |
| JCI | Problems with Medications | Dismissed for Procedural Reasons (Final) | | 1 | |
| JCI | State Issued Clothing | Dismissed for Procedural Reasons (Final) | | | 1 |
| MCIH | Personal Property (Loss, Confiscation, Destruction, etc.) | Withdrawn at incarcerated individual's Request | | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| MCIH | Problems with Medications | Withdrawn at incarcerated individual's Request | | 1 | |
| MCIJ | Access or Delay in Receiving Medical Care | Dismissed | | 1 | 1 |
| MCIJ | Classification Procedures | Meritorious in Part | | 1 | |
| MCIJ | Commissary or Commissary Account | Dismissed | | 1 | |
| MCIJ | Harassment by Staff | Dismissed | | 1 | |
| MCIJ | Other Complaints Against Staff | Dismissed | | 1 | |
| MCIJ | Packages | Dismissed | | 1 | |
| MCIJ | Packages | Withdrawn at incarcerated individual's Request | | 1 | |
| MCIJ | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed | | 1 | |
| MCIW | Other Operations | Dismissed | 1 | | |
| MCTC | Classification Procedures | Dismissed for Procedural Reasons (Final) | 2 | | 1 |
| MCTC | Commissary or Commissary Account | Dismissed | | 1 | |
| NBCI | Access or Delay in Receiving Medical Care | Dismissed | | 1 | 2 |
| NBCI | Assault by Staff | Dismissed | | | |
| NBCI | Assault by Staff | Dismissed for Procedural Reasons (Final) | 2 | | |
| NBCI | Classification Procedures | Dismissed for Procedural Reasons (Final) | | 2 | 1 |
| NBCI | Classification Procedures | Withdrawn at incarcerated individual's Request | | 1 | |
| NBCI | Commissary or Commissary Account | Dismissed | 1 | | 1 |

| | | | | | |
|---|---|---|---|---|---|
| NBCI | Commissary or Commissary Account | Dismissed for Procedural Reasons (Final) | | | 1 |
| NBCI | Commissary or Commissary Account | Withdrawn at incarcerated individual's Request | 1 | | |
| NBCI | Complaints Against Non Staff Persons | Dismissed for Procedural Reasons (Final) | | | 1 |
| NBCI | Harassment by Staff | Dismissed | 1 | | |
| NBCI | Harassment by Staff | Dismissed for Procedural Reasons (Final) | 1 | | |
| NBCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed | 1 | | |
| NBCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed for Procedural Reasons (Final) | | 1 | |
| NBCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Withdrawn at incarcerated individual's Request | | 1 | 1 |
| NBCI | Medical Records (Excluding Mental Health) | Dismissed | 1 | | |
| NBCI | Medical Records (Excluding Mental Health) | Dismissed for Procedural Reasons (Final) | | | 1 |
| NBCI | Mental Health Care | Dismissed | 1 | | |
| NBCI | Other Complaints Against Staff | Dismissed | 1 | | 1 |
| NBCI | Other Complaints Against Staff | Dismissed for Procedural Reasons (Final) | 1 | | 3 |
| NBCI | Other Legal | Dismissed | | | 1 |
| NBCI | Other Mail Problems (Delay, etc.) | Dismissed | | | 1 |
| NBCI | Other Operations | Dismissed | 1 | | 1 |
| NBCI | Other Operations | Dismissed for Procedural Reasons (Final) | 1 | 1 | 2 |

| | | | | | | |
|---|---|---|---|---|---|---|
| NBCI | Other Operations | Withdrawn at incarcerated individual's Request | | | | 3 |
| NBCI | Physicians Orders (Delay, Follow Thru, Improper, etc.) | Dismissed | 1 | | | |
| NBCI | Problems with Medications | Dismissed | | 1 | | |
| NBCI | Problems with Medications | Withdrawn at incarcerated individual's Request | | | | 1 |
| NBCI | Rejection of Mail | Dismissed | 1 | | | |
| NBCI | Religion (Excluding Publications) | Dismissed | | 1 | | |
| NBCI | Searches (Including Visit Related Searches) | Dismissed for Procedural Reasons (Final) | | | | 1 |
| NBCI | State Issued Clothing | Dismissed | | | | 1 |
| NBCI | Telephone Calls or System | Dismissed | 1 | | | 1 |
| NBCI | Visiting Time/Condition (Including Loss of Visits | Dismissed | | | | 1 |
| RCI | Access or Delay in Receiving Medical Care | Dismissed | 1 | 1 | | 1 |
| RCI | Access or Delay in Receiving Medical Care | Dismissed for Procedural Reasons (Final) | 1 | | | |
| RCI | Access or Delay in Receiving Medical Care | Meritorious | 1 | | | |
| RCI | Classification Procedures | Dismissed for Procedural Reasons (Final) | | | | 1 |
| RCI | Complaints Against Non Staff Persons | Dismissed for Procedural Reasons (Final) | | | | 1 |
| RCI | Discrimination by Staff | Dismissed for Procedural Reasons (Final) | | | | 1 |
| RCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed | | | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| RCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed for Procedural Reasons (Final) | | | 1 |
| RCI | Other Complaints Against Staff | Dismissed for Procedural Reasons (Final) | | 1 | |
| RCI | Other Operations | Dismissed for Procedural Reasons (Final) | 1 | 2 | 1 |
| RCI | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed for Procedural Reasons (Final) | 1 | | 1 |
| RCI | Problems with Medications | Dismissed | | | 1 |
| RCI | Problems with Medications | Withdrawn at incarcerated individual's Request | | | 1 |
| RCI | State Issued Clothing | Dismissed for Procedural Reasons (Final) | | | 1 |
| RCI | State Issued Clothing | Withdrawn at incarcerated individual's Request | | | 1 |
| WCI | Access or Delay in Receiving Medical Care | Dismissed | | | 1 |
| WCI | Access or Delay in Receiving Medical Care | Dismissed for Procedural Reasons (Final) | 1 | 2 | 2 |
| WCI | Access or Delay in Receiving Medical Care | Meritorious | | 1 | 2 |
| WCI | Assault by Staff | Dismissed for Procedural Reasons (Final) | | 1 | 1 |
| WCI | Classification Procedures | Dismissed for Procedural Reasons (Final) | 1 | 1 | 2 |
| WCI | Commissary or Commissary Account | Withdrawn at incarcerated individual's Request | | 1 | 1 |
| WCI | Discrimination by Staff | Dismissed | | | 2 |
| WCI | Harassment by Staff | Dismissed | | | 1 |

| WCI | Harassment by Staff | Withdrawn at incarcerated individual's Request | | | 1 |
|---|---|---|---|---|---|
| WCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed | | | 1 |
| WCI | Housing or Environmental Conditions (Includes Safety, Lighting, Heat, etc.) | Dismissed for Procedural Reasons (Final) | 1 | | |
| WCI | Medical Records (Excluding Mental Health) | Withdrawn at incarcerated individual's Request | | 1 | |
| WCI | Mental Health Care | Dismissed | 1 | | 1 |
| WCI | Other Complaints Against Staff | Dismissed | 1 | 1 | 1 |
| WCI | Other Complaints Against Staff | Dismissed for Procedural Reasons (Final) | 2 | 2 | 1 |
| WCI | Other Complaints Against Staff | Withdrawn at incarcerated individual's Request | | 1 | 2 |
| WCI | Other Mail Problems (Delay, etc.) | Dismissed | | 1 | |
| WCI | Other Operations | Dismissed | | 1 | |
| WCI | Other Operations | Dismissed for Procedural Reasons (Final) | 1 | 1 | |
| WCI | Other Operations | Withdrawn at incarcerated individual's Request | | | 1 |
| WCI | Packages | Dismissed | | 1 | |
| WCI | Packages | Dismissed for Procedural Reasons (Final) | 1 | | |
| WCI | Packages | Withdrawn at incarcerated individual's Request | 1 | | |
| WCI | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed | | | 2 |
| WCI | Personal Property (Loss, Confiscation, Destruction, etc.) | Dismissed for Procedural Reasons (Final) | | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| WCI | Personal Property (Loss, Confiscation, Destruction, etc.) | Withdrawn at incarcerated individual's Request | | 1 | 1 |
| WCI | Physicians Orders (Delay, Follow Thru, Improper, etc.) | Withdrawn at incarcerated individual's Request | | 1 | |
| WCI | Problems with Medications | Dismissed | | | 2 |
| WCI | Problems with Medications | Meritorious | | 2 | |
| WCI | Problems with Medications | Meritorious in Part | 1 | 1 | |
| WCI | State Issued Clothing | Dismissed for Procedural Reasons (Final) | | | 1 |