# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

CHELSEA GILLIAM, *et al.*,         *

    Plaintiffs,                    *

v.                                 *    Civil Action No. 1:23-cv-1047

                                   *

DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONAL SERVICES, *et al.*,  *

    Defendants.                    *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF CHLOE GREY

I, Chloe Grey, testify to the following:

1. That I am over the age of 18 years old and am competent to testify.

2. Since arriving at North Branch Correctional Institution ("NBCI"), I have been the target of sexual harassment and threats from both inmates and officers.

3. The officers at NBCI make it challenging to receive the forms to make complaints, so I have been unable to document all of the harassment that I've experienced.

4. On March 11, 2024, I was called to meet with Case Manager McKenzie in advance of an administrative segregation review, and I was asked to sign a statement about whether I would be comfortable in general population.

5. Being placed in general population was packaged with the ability to have access to programming and services that others have—access I have not had since arriving at NBCI.

6. I stated that I would not be safe in general population on a regular tier, but instead requested housing in some type of specialized unit such as the honor tier.

7. I would like access to programs or services but informed Case Manager McKenzie that such access would require an individualized plan because of the threats inmates and officers are making to rape or hurt me.

8. Case Manager McKenzie informed me that the committee would be reviewing my housing plan the next day and I would then be updated about my placement.

9. On the way back to my cell, the officer escorting me said that in the discussions that have been taking place about my housing, the Attorney General's representatives dismissed the idea of placing me with a cellmate because I am "sexually promiscuous," and that I am often referred to as "public enemy number one" for being a "snitch." This information seemed credible to me because the officer knew the names of the Assistant Attorneys General involved in my lawsuit.

10. The next day I was called into a meeting with Cory Walker, Lauren Beitzel, [FNU] Johnson, and Case Manager McKenzie to discuss my placement.

11. There, Cory Walker told me I was being placed in general population on Housing Unit 2 with a "random male inmate," and stated I would be treated like every other man at NBCI and kept referring to me as "sir."

12. In Maryland prison culture, as I understand it, any male who is not himself LGBTQ is expected to assault any openly LGBTQ inmate, especially an openly transgender woman, who staff attempt to house in their cell, in order to prevent them from sharing their cell.

13. Housing Unit 2 is notorious for gang-affiliated inmates.

14. I told the committee I was afraid of being raped and they told me I'd "just have to figure that out," and that I was being "overdramatic" because there are multiple other transgender people on the compound.

2

15. I am familiar with the other transgender inmates being housed at NBCI. None of them are as small in stature or feminine in appearance as I am, and most are not as far along in their transition.

16. The committee refused to address me with my correct pronouns, laughed at me when I asked them to address me as a woman and said "that'd be the day" and asserted that I was "no different than any other man."

17. Mr. Walker said "We don't care about your lawsuit; you're going on the compound like every other male inmate. You're not special."

18. After the meeting, an officer in the hallway (I believe his name is Officer DeShawn) called me a "fucking faggot" and said that the "scared faggots never want what they got coming."

19. I am particularly afraid of being housed on Housing Unit 2 because the Black Guerilla Family—a notorious prison gang at NBCI—recently put out a "no LGBTQ inmates on the compound" alert. I believe this stemmed from a fight between them and the LGBTQ gang, but in prison culture, such a statement is a call for gang members to kill or injure any LGBTQ inmates that enter the compound.

20. I have reviewed this declaration with my legal counsel. I am directing my attorney to sign it for me. I understand that a copy will be mailed to me, inspected by the prison, and given to me to sign and mail back to my counsel. That directly signed copy will be provided to the Court as well.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 19, 2024

*[signature]*
_____

Deborah Golden (for Chloe Grey)

Signed on _____

_____

Chloe Grey

4