Eve L. Hill
ehill@browngold.com

August 8, 2024

<u>SENT VIA CM/ECF</u>

Honorable Matthew J. Maddox
United States District Judge
101 West Lombard Street
Chambers 3B
Baltimore, MD 21201

        RE:    Gilliam et al. v. DPSCS, et al. (Chloe Grey) (no. 1:23-cv-01047-MJM)

Dear Judge Maddox:

Plaintiffs respectfully submit this letter to request a judicial conference with both parties to discuss Defendants' noncompliance with the Court's June 28, 2024 Order (ECF No. 119).

In ruling on Plaintiffs' Motion to Enforce Temporary Restraining Order and Preliminary Injunction, this Court ordered the Department of Public Safety and Correctional Services ("DPSCS") to "conduct a re-assessment of Plaintiff's housing placement consistent with DPSCS Executive Directive No. OPS.131.0001 … to determine whether to place Plaintiff in a facility designated for women." ECF No. 119 at 1. This Court ordered that, in evaluating Ms. Grey's placement, "serious consideration must be given to Ms. Grey's opinion regarding her safety and to avoiding placement in administrative segregation for greater than thirty (30) days." *Id*. This Court also provided guidance on the factors to be considered in the reevaluation of Ms. Grey's housing placement during the Motion Hearing on June 28, 2024. Ex. 1, June 28, 2024 Hr'g Tr. at 42:7-10.

Upon review of DPSCS's correspondence regarding its reevaluation of Ms. Grey's housing placement, Plaintiffs are concerned that DPSCS remains out of compliance with the Court's order. The reevaluation fails to adhere to DPSCS Executive Directive No. OPS.131.0001 and PREA, in addition to the Court's own directives. DPSCS did not fulfill its obligation to seriously consider Ms. Grey's opinion with respect to her own safety and to conduct a complete assessment of all of Ms. Grey's alternative housing placements beyond MCI-W, nor did it address concerns about or alternatives to keeping Ms. Grey at North Branch Correctional Institution ("NBCI") and in administrative segregation.

First, as this Court explained, DPSCS should not only have "considered Ms. Grey's general preference, and not even just Ms. Grey's opinion as to where she would feel safe, but also Ms. Grey's opinion about where she would feel unsafe and why" because "Ms. Grey's opinion as to her safety, if seriously considered, could have resulted in . . . potentially ruling out NBCI." Ex. 1 at 39:7–10, 21–24. In its Evaluation, DPSCS only addressed MCI-W as a suitable housing

placement for Ms. Grey, stating that DPSCS will "consider Ms. Grey's opinions regarding her safety concerns at the other named institutions *when they conduct further meetings* regarding Ms. Grey's housing placement." ECF 125, DPSCS Housing Evaluation Letter, July 19, 2024, at 2 (emphasis added). In solely considering Ms. Grey's opinion regarding her safety as it relates to her potential placement at MCI-W, DPSCS simultaneously failed to consider Ms. Grey's opinion regarding her safety as it relates to her potential placement at other institutions, including NBCI. Indeed, in Ms. Grey's written response to DPSCS, she indicated that out of all the institutions identified, she feels in most danger at NBCI. Ex. 2, Decl. of Chloe Grey, Aug. 5, 2024 at ¶ 1. Thus, DPSCS failed to consider Ms. Grey's opinion about where she would feel *unsafe*, making no mention of the actual risks and harm Ms. Grey faced and continues to face while housed with men at NBCI. *See* Ex. 2 at ¶¶ 2-7.

Additionally, the Evaluation neglected to consider that because DPSCS had completed its investigation into Ms. Grey's allegations of abuse at the hands of officers in the Jessup region and deemed them to be unfounded, DPSCS was relieved of the injunction regarding keeping the accused officers from Ms. Grey and DPSCS could now consider transferring Ms. Grey "back to the Jessup region." Ex. 1 at 21:24-23:7. Yet DPSCS's reevaluation did not consider Ms. Grey's placement at other Jessup facilities despite Ms. Grey indicating that she would feel safer at Jessup Correctional Institution than she would at NBCI. Ex. 2 at ¶¶ 8-10.

Second, to fully comply with the Court's order DPSCS was required to provide evidence of the factors it relied upon in its reevaluation. DPSCS provides no support for the conclusory statements in its Evaluation. The Court indicated its concern with the lack of evidence in DPSCS's original evaluation to support its characterization of Ms. Grey as sexually violent. Ex. 1 at 41:15–19. Because there is no evidence of Ms. Grey perpetrating sexual violence, DPSCS instead relies on vague accusations of issues with "adjustment" and unspecified "violations of institutional policies and procedures" to determine "that a possible transfer of Ms. Grey [to MCI-W] could invite significant security risks for both the MCI-W population and Ms. Grey." ECF 125 at 2. This is an illogical and conclusory justification for ruling out MCI-W. First, Ms. Grey has been found guilty only of Rules 403 ("Provide false information, alter, misrepresent, or forge a document, or possess an altered, misrepresented, or forged document) and 410 ("Demonstrate: Disrespect; Insolence; or Use of vulgar language"). There is no evidence in the record that Ms. Grey has ever violated a PREA policy. Besides, DPSCS provides no explanation for how those violations are likely to pose security risk, nor does it respond to the fact that "in Ms. Grey's eight years in Maryland correctional institutions, she never received a rule violation until she arrived at Patuxent and began to exercise her rights." ECF 95-1 at 8-9.

Further, DPSCS continues to give too much weight to the hypothetical risk of Ms. Grey becoming a safety threat to other women while ignoring the very real and imminent threats to her own safety in male prisons. *See JJS v. Pliler*, No. 19CV02020VSBSN, 2022 WL 16578124, at *20 (S.D.N.Y. Aug. 3, 2022), *report and recommendation adopted sub nom. Shelby v. Petrucci*, No. 19-CV-2020 (VSB), 2022 WL 16575766 (S.D.N.Y. Nov. 1, 2022) ("[T]he hypothetical concern that [Ms. Grey] will hurt someone must be counter-balanced by the actual evidence that she has been assaulted and harassed in a men's facility."). Defendants offer no rationale or credible evidence supporting their

Honorable Matthew J. Maddox
August 8, 2024
Page 3

contention that Ms. Grey poses any threat or security concern. Conversely, Ms. Grey's experience as a victim of multiple acts of sexual assault and harassment, including while at NBCI, as well as her vulnerability to future instances of sexual violence are well-documented throughout the record, but are notably absent from DPSCS's Evaluation.

Finally, DPSCS was required to address the fact that "keeping someone in [administrative segregation] for [longer than 30 days] is impermissible under [the Prison Rape Elimination Act ("PREA")] regulations." Ex. 1 at 19:3–4. The Evaluation completely neglects to address that DPSCS continues to house Ms. Grey in administrative segregation, and to what extent, if any, it considered this in reassessing Ms. Grey's housing placement. The PREA regulations provide that "[i]nmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an assessment immediately, the facility may hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment." 28 C.F.R. § 115.43(a). Segregation should only last "until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days." *Id.* § 115.43(c). If an inmate is involuntarily placed into administrative segregation based on safety concerns, the facility must document "(1) [t]he basis for the facility's concern for the inmate's safety; and (2) [t]he reason why no alternative means of separation can be arranged. *Id.* § 115.43(d).

DPSCS has kept Ms. Grey in solitary confinement for approximately eight months, and it is taking a serious toll on Ms. Grey's well-being. Ex. 2 at ¶ 11. Its evaluation failed to consider this and has failed to document why no alternatives are available or why it continues to deny Ms. Grey access to programs, privileges, education, or work opportunities in direct violation of PREA. *See* 28 C.F.R. § 115.43(b). DPSCS has held Ms. Grey in solitary confinement at NBCI for so long because it knows placing her in general population puts her in danger. *Cf.* Ex. 1 at 19:18-20:25. The Evaluation makes no mention of the probability that Ms. Grey will likely remain in solitary confinement at NBCI and most other male correctional institutions. Based on DPSCS's correspondence, Ms. Grey could remain in administrative segregation at NBCI for at least another six months, in direct violation of PREA, DPSCS Policy, and this Court's order and directives.

For these reasons, DPSCS remains out of compliance with this Court's order. We respectfully request a judicial conference to discuss this issue further.

Thank you for your attention to this matter.

                                          Respectfully submitted,

                                          */s/ Eve L. Hill*
                                          Eve L. Hill (Bar No. 19938)
                                          Sharon Krevor-Weisbaum (Bar No. 04773)
                                          Jessica P. Weber (Bar No. 17893)

Honorable Matthew J. Maddox
August 8, 2024
Page 4

                                Lauren A. DiMartino (Bar No. 22046)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
skw@browngold.com
jweber@browngold.com
ldimartino@browngold.com

Deborah M. Golden (Bar No. 18657)
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
202-630-0332 (phone)
dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*