IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHELSEA GILLIAM, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. MJM-23-01047 |
| ) | |
| DEPARTMENT OF PUBLIC SAFETY ) | |
| AND CORRECTIONAL SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DPSCS DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT, OR IN THE <u>ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>**

DPSCS Defendants, by their undersigned counsel, hereby file this memorandum of law in reply to Plaintiff's Opposition ("Opposition") to Defendants' Motion to Dismiss Fourth Amended Complaint, or in the Alternative, Motion for Summary Judgment (the "Motion").

**ARGUMENT:**[1]

**I.  DPSCS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES IS APPROPRIATE.**

As indicated in DPSCS Defendants' motion, failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, is an affirmative defense, and therefore, a motion for summary judgment is proper. ECF 87-2 at 11. The Fourth Circuit Court of Appeals has found that if failure to exhaust cannot be ascertained from the face of the complaint, summary judgment may still be granted "on exhaustion grounds so long as the [incarcerated individual] is first given an opportunity to address the issue." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiffs have failed to substantively respond to DPSCS Defendants'

---

[1] As explained in footnote 2 of the Motion, all claims against Orlando Johnson should be dismissed as to both his individual capacity, ECF 94 at 3 n. 2, and official capacity. Plaintiffs did not address this issue in their Opposition.

exhaustion argument by attaching supplemental declarations and documentation, although they have referenced selected similar arguments and documents filed in opposition to DPSCS Defendants' previous motion to dismiss or for summary judgment. *See generally* ECF 138; ECF 94. Thus, if this Court after reviewing Plaintiffs' response finds that DPSCS Defendants are entitled to judgment as a matter of law, then summary judgment is appropriate and should be granted. *See Mostafa v. Garland*, Civil Case No. 20-cv-00694-PAB-SKC, 2024 WL 38187 at *11 (D. Colo. January 3, 2024) (finding that "[c]ounsel's speculation about what 'reasonable discovery' will reveal is insufficient to defeat summary judgment" on exhaustion grounds.)[2]

## II. PLAINTIFFS HOLLAND AND GREY HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES.

### A. Plaintiffs Holland and Grey Have Failed to Exhaust Their Federal Claims under the PLRA.

#### 1. Ms. Holland is subject to the exhaustion requirement under the PLRA.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983. . .by a prisoner confined in [a] correctional facility until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a). The parties agree that "it is plaintiff's status at the time [s]he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." ECF 94 at 4 (citing *Cofield v. Bowser*, 247 Fed.App'x. 413, 414 (4th Cir.

---

[2] Plaintiffs' reliance on *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), in which the court acknowledged a rare instance where discovery would be beneficial to resolve an exhaustion issue, is misplaced.  In *Pavey,* the incarcerated individual who did not exhaust claimed that he was unable to do so because his arm was broken in an alleged use of excessive force.  *Id.*  As explained by a subsequent opinion in the case, "the question whether Pavey had exhausted his administrative remedies was clouded by disputed issues of material fact." *Pavey v. Conley*, 663 F.3d 899, 901 (7th Cir. 2011).  Indiana correctional administrative procedures allow a "prisoner who cannot write, for whatever reason, [to] ask a prison official or fellow inmate to help him with this task, and the complaint must be submitted within 48 hours," which deadline Pavey did not meet, so "[t]he question explored at the evidentiary hearing on remand was whether Pavey had been led astray by prison officials who promised assistance but did not follow through." *Id.* at 902.  Here, as explained below, there is no question that administrative remedies were available to Plaintiffs, as they used the remedies to address other matters.  Based on the affidavits submitted in support of DPSCS Defendants' Motion, *see* ECF 132-5 to 132-8, which have gone unrefuted by Plaintiffs, Plaintiffs failed to exhaust their administrative remedies as to the claims made in the Complaint.  Therefore, no "cloud[] [of] disputed issues of material facts" exists regarding this affirmative defense and discovery is not necessary.

2007)). The parties also agree that Ms. Holland was a "prisoner" as defined by the PLRA at the time she initially entered the lawsuit. However, Ms. Holland was not incarcerated at the time Plaintiffs filed their Fourth Amended Complaint. *Id*. Thus, for exhaustion purposes under the PLRA, the question is whether the "time [s]he filed the lawsuit" is 1) the date Ms. Holland initially entered the lawsuit or 2) the date of the last amendment. Although the federal Circuit Courts of Appeals are split on this issue,[3] and the Fourth Circuit Court of Appeals has yet to directly rule on this question, the majority supports the former interpretation, not the latter.

In accordance with the minority view, Plaintiffs claim that because Ms. Holland was no longer incarcerated at the time the Fourth Amended Complaint was filed, her claims are not subject to the PLRA's exhaustion requirement. ECF 138 at 7-8. In support, Plaintiffs indirectly refer to Rule 15 of the Federal Rules of Civil Procedure, which permits parties to amend or supplement their pleadings, and argue that because an amendment replaces the original complaint, the status of a plaintiff at the time of the amendment controls under the PLRA. *Id.* Plaintiffs also cite to both Third and Ninth Circuit Court of Appeals opinions in support of the argument "that an amended complaint filed by a released prisoner supersedes a complaint filed while he was incarcerated, so there is no need to exhaust." *Id.* (citing *Garrett v. Wexford Health*, 938 F.3d 69, 87 (3d Cir. 2019), *cert denied*, 140 S. Ct. 1611 (2020); *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017)).

However, the Eleventh Circuit Court of Appeals has ruled that a plaintiff's status at the time they initially file an action is the determinative date under the PLRA for exhaustion, regardless of whether they file a subsequent amendment after they have been released from custody. *Harris v. Garner*, 216 F.3d 970, 974-83 (2000) (en banc). In *Harris*, the Court extensively discussed the meaning of "brought" as it pertains to the PLRA, stating that "it was well established

---

[3] The United States Supreme Court has not directly addressed the issue. *See Wexford Health, et al. v. Garrett*, 140 S. Ct. 1611 (2020).

3

that 'brought' and 'bring' refer to the filing or commencement of a lawsuit, not to its continuation." *Id.* at 974.[4] As a result, the Court concluded that "the only status that counts, for purposes of section 1997e(e) is whether the plaintiff was a 'prisoner confined in a jail, prison, or other correctional facility' at the time the federal civil action was 'brought,' i.e., when it was filed," and any "change in their status after the lawsuit was filed is irrelevant under section 1997e(e)." *Id.*; *see also Smith v. Terry*, 491 Fed.App'x. 81, 83 (11th Cir. 2012) (applying *Harris* to § 1997e(a) of the PLRA). In terms of the interplay between Federal Rule 15 and the PLRA, the Court stated that "[i]f there were a conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict[,]" because Rule 15 could not "overrule a substantive requirement or restriction contained in a statute[.]" *Id.* at 982-83.

Several other circuits agree with the Eleventh Circuit's approach. *See Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019) ("Bargher's subsequent release does not relieve him of the requirement to exhaust administrative remedies for this current legal action that he initiated while in prison."); *May v. Segovia*, 929 F.3d 1223, 1229-34 (10th Cir. 2019) (finding that the prisoner's status at the time of initial filing, not an amendment, controls under the PLRA because "superseding allegations cannot change the status of the prisoner at the time he 'brought' the relevant unexhausted claim[.]"); *Mostafa*, 2024 WL 38187 at *9 (same); *Cox v. Mayer*, 332 F.3d 422, 428 (6th Cir. 2003); *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that the filing of an amended complaint after the prisoner exhausted his administrative remedies could not cure his failure to exhaust because "the PLRA requires prisoners to exhaust administrative remedies *before* filing suit.") (emphasis in original); *Girard v. Chuttey*, 826 Fed.App'x 41, 45 (2d

---

[4] The Court also explained that the Congressional intent behind the PLRA exhaustion requirement "was to reduce the number of prisoner lawsuits *filed*, and specifically to reduce the number that are *filed* because the opportunity costs of *filing* a lawsuit are lower for an incarcerated plaintiff than for one in the free world." *Id.* at 981 (emphasis in original).

4

Cir. 2020) (same).

Plaintiffs misconstrue *Cofield*, an unpublished Fourth Circuit opinion, as holding that "a former prisoner who has been released is no longer considered incarcerated for purposes of the PLRA." ECF 138 p. 7. *See also* 247 Fed App'x at 414. In *Cofield,* the formerly incarcerated individual "signed [his complaint] over a month before [he] left the [correctional institution]" but "the complaint was not submitted and filed until after [he] was released from incarceration." 247 Fed.App'x. at 413. The Court determined that even though he composed and signed his complaint while incarcerated, because he "was not a prisoner when he filed his complaint, the PLRA exhaustion requirement is not applicable to his § 1983 action." *Id*. The Court held that "it is plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies." *Id*., Thus, Ms. Holland's reliance on *Cofield* is misplaced, because the case does not address the situation where the plaintiff initiated her lawsuit while she *was* incarcerated and now seeks to avoid the exhaustion requirement by relying on a later amendment filed after her release.

This Court's decision in *Chase v. Peay*, supports the majority's view and Defendants' position that Ms. Holland failed to exhaust. 286 F.Supp.2d. 523, 527-28 (D. Md. 2003). In *Chase*, the plaintiff was a prisoner confined at the Maryland Correctional Adjustment Center ("MCAC"), a Division of Correction facility, when he initially filed his lawsuit on July 22, 1998, and when he filed his amended complaint on May 25, 2000. *Id.* at 527. However, after Mr. Chase was released from custody, he argued that "the PLRA no longer applies to his lawsuit, because he no longer is a prisoner within the meaning of 42 U.S.C. § 1997e(a)." *Id.* The Court disagreed, stating that "the administrative exhaustion requirement under the PLRA continues to apply when a prisoner is released while his lawsuit still is pending in federal court." *Id.* at 527-28. Further, when discussing

5

the availability of administrative remedies, the Court stated that "[t]he critical question is not whether the Maryland prisoner grievance process currently is available to Chase, but rather whether those remedies were available to him on *July 22, 1998, at the time when he filed this suit in federal court*." *Id.* at 528 (emphasis added) (citing *Cox*, 332 F.3d at 424-25; *Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002)). Therefore, the Court concluded that "[w]hen Chase *filed this suit in federal court on July 22, 1998*, he was confined at MCAC and the administrative remedies provided through Maryland's Division of Correction were available to him. Consequently, Chase's claims must be dismissed[.]" *Id.* (emphasis added).

Although the Court's decision in *Chase* does not squarely address the issue in this matter, its analysis shows that this Court considers the plaintiff's status at the time of the *initial filing* as the determinative factor regarding the exhaustion requirement under the PLRA – an interpretation that also squares with *Cofield*. In this case, Ms. Holland was a prisoner when she first brought her federal claims in this lawsuit; therefore she was required to exhaust her administrative remedies before bringing those claims. Ms. Holland's failure to do so requires this Court to dismiss her federal claims without prejudice. *Mayer*, 332 F.3d at 425-26; *Bargher,* 928 F.3d at 447; *see also Ross v. Blake*, 578 U.S. 632, 638-41 (2016) (PLRA's exhaustion requirement is mandatory).

2. <u>Ms. Grey and Ms. Holland's administrative remedies were available.</u>

The United States Supreme Court has recognized that the PLRA's exhaustion requirement only applies to such administrative remedies that are "available." *Ross*, 578 U.S. at 642; *see Moore*, 517 F.3d at 725 ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). However, "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Moore*, 517 F.3d at 725 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Further, "[t]he burden of showing that

6

administrative remedies were unavailable lies with the plaintiff." *Washington v. Rounds*, 223 F.Supp.3d 452, 459 (D. Md. 2016) (citing *Graham v. Gentry*, 413 Fed.App'x. 660, 663 (4th Cir. 2011)). Here, Plaintiffs' availability arguments are meritless, and therefore, this Court should grant DPSCS Defendants' motion for summary judgment. *See Moore*, 517 F.3d at 725.

First, Plaintiffs concede that the Department provides a grievance procedure for incarcerated individuals and that Plaintiffs have been able to file multiple Administrative Remedy Procedure ("ARP") requests in accordance with this procedure. ECF 138 at 5-7. Plaintiffs argue that the Department's administrative remedies were unavailable because several of their ARPs were either denied for procedural reasons or there was no response at all, so they were unable to appeal and complete the administrative process as there was "nothing . . . to appeal." *Id.* at 6. This is incorrect; the Department's grievance procedure clearly provides a mechanism to appeal a denial on procedural grounds or a lack of a response by the official. COMAR 12.02.28.11; COMAR 12.02.28.14A(1); *see also Bargher*, 928 F.3d at 447 (affirming the dismissal for failure to exhaust when the prison's grievance process permitted Mr. Bargher to appeal an official's failure to respond). Additionally, Ms. Grey and Ms. Holland's statements that they did not know that they could appeal these decisions or how to file an appeal does not equate to unavailability. *See Williams v. Carvajal*, 63 F.4th 279, 290 (4th Cir. 2023) ("Simple unawareness, however, does not rise to the level of unavailability."). Therefore, Plaintiffs had an administrative process "capable of use," but which they critically failed to pursue. *Ross*, 578 U.S. at 642 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).[5]

---

[5] Plaintiffs assert that DPSCS Defendants' motion for summary judgment should be denied because DPSCS Defendants did not attach every ARP Ms. Grey or Ms. Holland have filed with the Department, so the Incarcerated Individual Grievance Office ("IGO") affidavits were incomplete. ECF 138 at 5-7. In articulating this argument, Plaintiffs mischaracterize their ARPs as "grievances" that the IGO missed. *Id.* Because exhaustion requires "'using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits),'" *Woodford*, 548 U.S. at 90 (quoting *Pozo*, 286 F.3d at 1024), the relevant inquiry is whether Plaintiffs exhausted their remedies by filing grievances with the IGO. Notably, Plaintiffs do not state that any of their other ARP "grievances"

7

Second, Ms. Grey and Ms. Holland's statements that DPSCS staff prevented them from submitting ARPs or grievances to the IGO do not create a genuine dispute of fact regarding the availability of administrative remedies. ECF 138 at 5-7. Ms. Grey and Ms. Holland simultaneously acknowledge that they were able to file numerous complaints in accordance with DPSCS's administrative procedure, but then claim that they have been unable to submit complaints because DPSCS staff have refused to submit their complaints, provide them the materials to submit complaints, or intimidate them into withdrawing their complaints. *Id*. These inconsistent statements cannot both be true, and such claims do not prevent summary judgment. *See Erwin v. United States*, 591 F.3d 313, 325 n. 7 (4th Cir. 2010) ("A genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's [evidence] is correct."); *Alba v. Merrill Lynch & Co.*, 198 Fed.App'x. 288, 300 (4th Cir. 2006) (recognizing the impropriety of allowing a party to offer evidence contradicting his own prior testimony in order to defeat summary judgment). In fact, DPSCS Defendants' evidence coupled with Plaintiffs' proffered exhibits show that Ms. Grey and Ms. Holland had ample access to the grievance procedure, but failed to fully utilize it. *See* ECF 94-2 – 94-11; *compare* ECF 59-3, ¶ 22, 87-5, 87-6.

Third, Ms. Grey incorrectly states that DPSCS's administrative remedies were unavailable because the IGO cannot offer her any relief. ECF 132-6 at 6-7.[6] The Supreme Court has ruled that

---

were appealed to the IGO. *Id.* Ms. Grey submits three ARPs as evidence that "Ms. Grey submitted additional grievances related to a host of issues during her incarceration." ECF 138 at 5. The first two ARPs are directly related to ARP WCI-0544-23, which DPSCS Defendants acknowledged the IGO received and dismissed after preliminary review. ECF 132-6, 132-8; ECF 94-3–94-4; ECF 87-8. The last ARP does not show that Ms. Grey appealed it to the IGO, nor do Plaintiffs argue the same. ECF 94-5. Therefore, those ARPs do not present "additional grievances related to a host of issues" not covered by the IGO's affidavit. ECF 87-6.

[6] Ms. Grey has only filed two grievances with the IGO. ECF 132-6. The first alleges that medical staff improperly refused her request for sex reassignment surgery. ECF 132-7. IGO denied her grievance because the IGO does not have jurisdiction to resolve those complaints. The second grievance concerned Ms. Grey's complaints against DPSCS staff misgendering her, which the IGO denied because it found that the warden adequately addressed her complaint; therefore, she has not stated a valid claim for additional relief. ECF 132-8.

8

administrative remedies were available to a prisoner even when the prisoner solely sought monetary relief but the grievance process did not allow for that type of relief. *Booth*, 532 U.S. at 739. The Court explained that "statutory history confirms the suggestion that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Id.* Likewise, Ms. Grey was obligated to exhaust her available administrative remedies even if she believed that the IGO could not provide her requested relief. Ms. Grey's failure to do so bars her federal claims under the PLRA, and they should be dismissed.

### B. Plaintiffs Holland and Grey Have Failed to Exhaust Their State Claims under the PLA.

Plaintiffs argue that Ms. Holland was not required to comply with the Maryland Prisoner Litigation Act ("PLA") because she was no longer a "prisoner" at the time Plaintiffs filed their Third Amended Complaint. ECF 138 at 8-10. The PLA is the Maryland equivalent to the federal PLRA. Md. Code Ann., Cts. & Jud. Proc. § 5-1003(a)(1); *see also Harris v. McKenzie*, 241 Md. App. 672, 679 (2019). Like the Fourth Circuit, Maryland courts have not decided whether the filing of an amendment extinguishes a former prisoner's PLA exhaustion requirement, but because the PLA closely mirrors the PLRA, this Court should follow the majority of the federal circuit courts as explained in Section II.A.1, *supra*.

Additionally, the plain language of the PLA requires a prisoner to submit proof of exhaustion at the *initial filing* of a complaint. Cts. & Jud. Proc. § 5-1003(b)(1) ("When a prisoner files a civil action, the prisoner *shall* attach to the *initial complaint* proof that administrative remedies have been exhausted.") (emphasis added). And unlike the PLRA, under which failure to exhaust is an affirmative defense, the PLA requires the court to dismiss the case if the prisoner did not attach proof of exhaustion to their initial complaint. *Id.* § 5-1003(b)(3) ("On receipt of a prisoner's *initial complaint* that does not have attached to it proof that the prisoner has fully

9

exhausted the administrative remedies available, the court *shall* dismiss the case without prejudice[.]") (emphasis added). The PLA's exhaustion requirement therefore attaches to the plaintiff's status at the time of filing the initial complaint, not the date of an amendment.

Maryland case law supports this view as well. *See Harris*, 241 Md. App. at 681 ("The Maryland statute, which is more onerous than its Federal counterpart, requires the prisoner to attach proof of exhaustion of administrative remedies to his complaint. In the absence of such proof, the court must dismiss the case, even if the administrative remedies have been exhausted and the only omission is the written proof of same.") *Harris* implies that a subsequent amendment after the initial filing of a complaint would not cure a plaintiff's failure to submit proof of exhaustion.[7] Because Ms. Holland was a prisoner at the time she first brought her claims in this lawsuit, she was required to comply with the PLA's exhaustion requirements.

Moreover, unlike the PLRA, where exhaustion stops at the agency level, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002), under the PLA, an "administrative remedy is exhausted when the prisoner has pursued to completion all appropriate proceedings for appeal of the administrative disposition, including any available proceedings for judicial review." Cts. & Jud. Proc. § 5-1003(a)(2). Plaintiffs do not allege—nor does the record support—that either Plaintiff has appealed any administrative decision to the appropriate state circuit court. *See generally* ECF 124; ECF 138. For this reason, and the additional reasons stated above regarding availability of administrative remedies, *see supra* II.A.2, this Court must dismiss Ms. Grey and Ms. Holland's state law claims.

---

[7] Although the plain language suffices to decide this issue, Maryland courts have explained that the legislative intent behind making the state PLA more onerous than the federal PLRA was because "the General Assembly was fearful that because prisoner claims would be more limited in the federal courts with jurisdiction over Maryland [incarcerated individuals'] claims, Maryland [incarcerated individuals] would turn to Maryland state courts to file their multitudinous claims." *Adamson v. Corr. Med. Servs. Inc.*, 359 Md. 238, 263 (2000). Therefore, the PLA's legislative history shows that the PLA's purpose would be subverted if prisoners could avoid the PLA's exhaustion requirement by filing an amendment after release.

10

**III.   SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS BROUGHT AGAINST THE STATE AND STATE EMPLOYEES.[8]**

**A. The *Ex Parte Young* Exception to Eleventh Amendment Sovereign Immunity for Prospective Relief Should Not Apply.**

Plaintiffs fail to address DPSCS Defendants' second argument against the application of the *Ex Parte Young* exception: that Plaintiffs' relief sought from state officials would operate against the state itself, and therefore, the *Ex Parte Young* exception does not apply. *See* ECF 87-2 at 25-27; ECF 94 at 9-10; ECF 132-2 at 10-11. Accordingly, this Court should reject Plaintiffs' arguments regarding their claims for prospective relief on this ground alone.

Plaintiffs have also failed to sufficiently plead an "ongoing violation of federal law" as required under *Ex Parte Young*, and any such claims should be denied as moot. Plaintiffs argue that they have sufficiently pleaded an "ongoing violation of federal law" because they challenge DPSCS policies that "apply across DPSCS." ECF 94 at 9. However, Plaintiffs did not allege that the policies themselves were violative of their constitutional rights, but that the named DPSCS officials' implementation (or lack thereof) of the policies violated their rights. *See generally* ECF 124; *see also* ECF 138 at 11 ("Plaintiffs properly allege that Defendants have either failed to follow or reasonable modify these policies."). Such allegations are indicative of past behavior and do not state a claim of an "ongoing violation of federal law."

Further, Plaintiffs' claims for prospective relief have been rendered moot because Ms.

---

[8] DPSCS Defendants reiterate the arguments as stated in their motion that Plaintiffs' federal claims against DPSCS Defendants, in their official and individual capacities, should be dismissed because Title II of the Americans with Disabilities Act ("ADA") does not abrogate the state's sovereign immunity, and because Plaintiffs have failed to state a claim under the Eighth Amendment, Fourteenth Amendment, Title II of the ADA, and Section 504 of the Rehabilitation Act. ECF 132-2 at 15-25, 28-37. Plaintiffs offered "Supplemental Authority," ECF 141, relating to a recent injunction granted by the Southern District of Indiana providing for gender reassignment surgery to a transgender incarcerated individual, does not countervail this analysis. In granting the injunction, the Southern District of Indiana found an Eighth Amendment violation where an Indiana statute's "blanket denial of access to gender-affirming surgery evinces deliberate indifference." ECF 141-1. There is no statute or blanket denial at issue here, and for the reasons stated in Defendants' Motion, ECF 132, Plaintiffs' claims fail.

11

Gilliam and Ms. Holland have been released from DPSCS custody and, as to the majority of her claims, Ms. Grey has been transferred out of Patuxent, the facility where alleged unconstitutional conduct occurred. ECF 124 ¶¶ 7, 9, 11.[9] "As a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive or declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). For example, in *Incumaa v. Ozmint*, the Fourth Circuit found that a prisoner's §1983 action seeking "declaratory relief and an injunction against enforcement of the publications ban" instituted in the Maximum Security Unit was rendered moot after the prisoner was transferred out of that unit. 507 F. 3d 281, 282-87 (4th Cir. 2007). The Court explained that "[m]ootness questions often arise in cases involving [incarcerated individual] challenges to prison policies or conditions," and that "courts, including our own, have held that the transfer of an [incarcerated individual] from a unit or location where he is subject to the challenged policy, practice, or condition," to a different location or institution "where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives." *Id.* at 286-87 (citations omitted).[10] Here, both Ms. Gilliam and Ms. Holland are no longer in the custody of DPSCS and Ms. Grey was transferred to a different institution and then recently transferred back to WCI. *See* ECF 140 (filed under seal). The claims for declaratory or injunctive relief are

---

[9] As to the remainder of Ms. Grey's claims concerning the Western Correctional Institution ("WCI"), where she was housed in 2021, many complaints were mooted by her transfer to NBCI in 2023. Mere days ago, Ms. Grey was transferred back to WCI after a multifactorial evaluation determined that she is eligible to be housed in only two DOC facilities, and WCI is the better suited facility for her individual needs even given her previous complaints. *See* ECF 140 (sealed Status Report). She has made no claims of "ongoing" issues at WCI.

[10] *See also Butler v. Stirling*, Case No. 8:22-cv-03324-RMG-JDA, 2023 WL 5754089 *5-7 (D. Md. July 21, 2023) (holding that injunctive relief was moot after the plaintiff was transferred from the prison containing the alleged unconstitutional conditions); *Curtis v. DPSCS Campbell Lt. Bilal Ahmed Wexford Health Source, Inc.*, Case No. GJH-20-1903, 2021 WL 2414869 *9 (D. Md. June 14, 2021) (finding that because the plaintiff was no longer incarcerated in "the facilities which allegedly failed to provide proper accommodations to [incarcerated individuals] with disabilities[,] Plaintiff's transfer from those facilities thus freed Plaintiff from the conditions that triggered the initiation of this action[,]" which rendered his requested injunctive relief moot.)

thus moot.

Plaintiffs argue that Ms. Gilliam and Ms. Holland's claims for prospective relief are not moot because "people on parole/probation are more likely to be re-incarcerated." ECF 132-2 at 11. According to Plaintiffs, "[b]ecause there is a 'reasonable expectation' Ms. Gilliam and Ms. Holland 'will be subject to the same action again,'" their claims are "'capable of repetition, yet evading review.'" *Id.* (citing *Spencer v. Kemma*, 523 U.S. 1, 17 (1998)). However, federal courts cannot make their mootness determination on the assumption that Ms. Gilliam or Ms. Holland will violate conditions of their probation or parole. *Incumaa*, 507 F.3d at 289 ("We surely cannot base our mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules.") As it is undisputed that Ms. Gilliam and Ms. Holland are no longer incarcerated in any DPSCS facility, their claims for declaratory and injunctive relief regarding the practices of those facilities are moot and require dismissal.

Ms. Grey is presently in the custody of DPSCS and housed at WCI, although at the time of the filing of the Opposition and for months prior, she was at the North Branch Correctional Institution ("NBCI"). ECF 132-2 at 10. However, Ms. Grey's allegations concern DPSCS officials' behavior that occurred while she was housed at Patuxent and at WCI in 2021. *See generally* ECF 124. Further, as explained above, Plaintiffs' complaint challenges DPSCS Defendants' implementation of DPSCS policies, not the policies themselves. ECF 138 at 10. Therefore, Ms. Grey's allegation that DPSCS officials violated her constitutional rights by failing to follow or modify DPSCS policies when she was housed at WCI and Patuxent does not demonstrate that she will be necessarily subjected to the same alleged unconstitutional conditions, even upon her return to WCI. *Id.* Therefore, under *Incumaa*, Ms. Grey's transfer to a different institution, away from the officials at Patuxent allegedly engaging in the unconstitutional behavior,

13

renders Ms. Grey's claims for prospective relief regarding Patuxent moot.[11] As to her claims related to alleged past treatment at WCI, *see* ECF 124, she has neither specifically identified the DPSCS individuals who allegedly committed the conduct nor claimed that such treatment would continue if she were transferred back. *See Dove,* 2021 WL 5053095 *6.

Ms. Grey attempts to distinguish her case from *Incumaa* by arguing that her claims challenge DPSCS policies as they are applied across all DPSCS institutions, and therefore, her claims for prospective relief are not moot. *Id*. at 9-10. Ms. Grey cites *Fauconier v. Clarke*, in support of her argument, but that case is inapposite, as it involved a challenge to a policy excluding the prisoner from all work programs regardless of his transfer from one facility to another. 966 F.3d 265, 281 (4th Cir. 2020). Here, Ms. Grey is challenging how certain DPSCS officials have allegedly failed to follow DPSCS policies, not the policies themselves, meaning Ms. Grey's experiences at NBCI, and now WCI, may differ from her prior experiences depending on how WCI officials implement DPSCS policies.[12] *Fauconier* is inapposite to the facts in this case and her claims should be dismissed.[13]

### B. Plaintiffs' State Law Claims Against DPSCS Defendants Are Barred by the Eleventh Amendment.

Plaintiffs argue that DPSCS Defendants have misapplied the ruling in *Dixon v. Baltimore City Police Dep't.*, 345 F. Supp. 2d 512, 513 (D. Md. 2003, *aff'd*, 88 F.App'x. 610 (4th Cir. 2004),

---

[11] *See Dove v. Patuxent Facility*, Civil Action No. DKC 18-1847, 2021 WL 5053095 *6 (D. Md. November 1, 2021) (finding that a prisoner could not seek declaratory or injunctive relief regarding practices at Patuxent after his transfer from the facility and the "capable of repetition, yet evading review" exception did not apply because the [DPSCS's] "mere ability to return Mr. Dove to Patuxent at any time [did] not create a 'reasonable expectation that the wrong will be repeated.'") (citing *Incumaa*, 507 F.3d at 288-89).

[12] *See generally* ECF 85 (describing that DPSCS Defendants have conducted a case-by-case analysis for Ms. Grey's housing placement in accordance with Executive Directive OPS.131.0001 and describing associated priorities and accommodations). *See also* ECF 140 (explaining that Ms. Grey will be housed in general population).

[13] Even assuming Ms. Grey has sufficiently alleged an "ongoing violation of federal law" based on the DPSCS Defendants' implementation of its policies, the court in *Fauconier* upheld the lower court's dismissal of the prisoner's claims against the individual officials from his prior facility. *Id*.; *see also Wallace v. Solomon*, 740 Fed.Appx. 283, 284-85 (4th Cir. 2018). Thus, to the extent this Court accepts Ms. Grey's arguments for seeking prospective relief in this case, her claims must be dismissed against the individual defendants from WCI and Patuxent.

and assert that the Department and State personnel sue in their official capacities are only protected by sovereign immunity under the Eleventh Amendment "for cases involving *federal claims*." ECF 94 at 17 (emphasis in original). While *Dixon* addressed whether Baltimore City was immune from the plaintiff's § 1983 claims, it also explained that a state agency could not be sued in federal court. *Dixon*, 345 F. Supp. 2d at 513. Indeed, as the Fourth Circuit has explained, the "[t]he waiver of sovereign immunity in the Maryland Torts Claims Act ["MTCA"] clearly limits the state's waiver of immunity to actions brought in the Maryland state courts." *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 397 (4th Cir.1990). The Court determined that a "state's waiver of immunity from suit in state court 'is not enough to waive the immunity guaranteed by the Eleventh Amendment.'" *Id.* (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241 (1985)); *see also* Cts. & Jud. Proc. § 12-103(2); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548-49 (D. Md. 2003). The MTCA waives the state's sovereign immunity for claims brought against the state and its officials in *state* court, but not federal court, and therefore, Plaintiffs' state law claims should be dismissed.[14]

### III.  CONCLUSION:

For the foregoing reasons, and in conjunction with their original filings, DPSCS Defendants respectfully request that this Court dismiss, or in the alternative, grant summary judgment as to all counts against DPSCS Defendants in Plaintiffs' Third Amended Complaint.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

 */s/ Merrilyn E. Ratliff*
MERRILYN E. RATLIFF
Assistant Attorney General
Federal Bar No. 30034
6776 Reisterstown Road, Suite 313

---

[14] Plaintiffs' state law claims are also subject to dismissal based on failure to state a claim and MTCA immunity, as explained in DPSCS Defendants' motion. ECF 132-2 at 37-39.

Baltimore, Maryland 21215
(410) 585-3947 (Telephone)
(410) 484-5939 (Telefax)
E-mail: merrilyn.ratliff@maryland.gov

/s/ Kelly M. Donoho
KELLY M. DONOHO
Federal Bar No. 30786
Assistant Attorney General
Department of Public Safety and
Correctional Services
6776 Reisterstown Road, Suite 313
Baltimore, Maryland 21215
Tel: (410) 585-3544
Fax: (410) 484-5939
Email: kelly.donoho@maryland.gov

*Attorneys for DPSCS Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2024, the foregoing Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment was served on counsel via CM/ECF.

/s/ Merrilyn E. Ratliff
MERRILYN E. RATLIFF