**Brown Goldstein & Levy**

October 1, 2024

<u>SENT VIA CM/ECF</u>
Honorable Matthew J. Maddox
United States District Judge
101 West Lombard Street
Chambers 3B
Baltimore, MD 21201

  Re: *Gilliam, et al. v. DPSCS, et al.* **(Chloe Grey)**
     **Case No. 1:23-cv-01047-MJM**

Dear Judge Maddox:

  Plaintiffs respectfully submit this letter in response to Defendants' Status Report (ECF 140) regarding Ms. Grey's housing placement in anticipation of the judicial conference with both parties on October 3, 2024, to discuss Defendants' continued noncompliance with the Court's June 28, 2024 (ECF 119) and September 4, 2024 (ECF 137) Orders.

  The June 28 Order required that the Department of Public Safety and Correctional Services ("DPSCS") conduct a re-assessment of Plaintiff Chloe Grey's housing placement consistent with departmental regulations, including PREA, giving serious consideration to Ms. Grey's opinion regarding her safety and avoiding placement in administrative segregation for greater than thirty (30) days. On September 4, 2024, this Court ordered that DPSCS file a report addressing Ms. Grey's housing placement and provide evidentiary support for the statements included in its correspondence of July 19, 2024 (ECF No. 125). The Report stated that Ms. Grey would be transferred to Western Correctional Institute ("WCI") on September 19, 2024, without any further information.[1] DPSCS's most recent Status Report remains deficient and fails to assert logical reasons for denying Ms. Grey transfer to Maryland Correctional Institution—Women ("MCI-W").

  In the Report, the State of Maryland says that an incarcerated woman cannot be housed at a women's facility if she has ever been accused of having sex with a male inmate, told a lie, or a prosecutor has said, without citing any evidence, that she "may have had sex" with another woman.[2] Apparently, claims of dishonesty and speculation about same-sex sexual attraction are sufficient bases to house women in men's facilities. Has DPSCS ever housed a cisgender woman in a men's

---

[1] Ms. Grey has confirmed that she was transferred to WCI and is currently being housed in a single cell. Ex. 1, Grey Decl. (Oct. 1, 2024), ¶ 10. She is, however, encountering issues with the officers mismanaging her access to showers in contradiction to DPSCS policy and PREA, 28 C.F.R. §115.42(f). *Id.* at ¶¶ 11-13. When she attempted to document the issue, she was confronted with threats of retaliation. *Id.* at ¶ 14-16. She is also facing severe harassment at the hands of the officers, *id.* at ¶ 17, and has concerns about timely receiving her facial hair inhibitor, *id.* at ¶ 18.

[2] Grasping at straws, DPSCS relies on the transcript of a State's Attorney outlining theories that they would have relied on "had [Ms. Grey's] case proceeded to trial." ECF 140-17 at 13, 24. This is not evidence.

BROWN, GOLDSTEIN & LEVY, LLP

Honorable Matthew J. Maddox
United States District Judge
October 1, 2024
Page 2

facility on these bases? Surely not. With no response to Dr. Lowell's expert testimony that in light of Ms. Grey's hormone therapy, she poses no risk of impregnating another woman, DPSCS is left to grasp at straws to justify its decision to house Ms. Grey in a men's facility.

Defendants continue to rely on baseless and illogical reasoning to refuse Ms. Grey's transfer to a women's facility. The Report provides no tangible evidence for why Ms. Grey cannot be placed at MCI-W and, therefore, remains out of compliance with OPS.131.0001 as ordered by the Court.

I.  **Non-violent violations of institutional policies are not a sufficient basis to house a female inmate in a male facility.**

Defendants assert that Ms. Grey cannot be placed in a women's prison because of alleged sexual contact between Ms. Grey and cisgender male prisoners. The claims are speculative and/or unrelated to the question at hand, and, in any event, having "consensual sex while incarcerated" heightens an inmates "Risk of Victimization" score, not their "Risk of Abusiveness." *See* ECF 140-15 at 3. If DPSCS's reason for outlining Ms. Grey's alleged sexual conduct is due to concern that Ms. Grey might engage in a sexual relationship while housed at MCI-W, her past record, highlighted by Defendants, demonstrates that she is a heterosexual woman who has historically engaged in sexual relationships with men. Her placement in a women's facility would *reduce* the chances of her engaging in a sexual relationship.

Further, for a woman incarcerated in a men's prison, consent is complicated, *see* ECF 95-7 ¶ 33 (explaining that research shows that "the victimization of transgender women" in a men's prison often results in "wanted and unwanted sexual, romantic, and marriage-like relationships" but that the "finding does not serve as evidence of consent, which is a slippery concept in general and especially in the context of prison life"), and romantic or sexual relationships are typically formed only as a survival mechanism, *id.* at ¶¶ 34-35.

Next, Defendants reference a series of policy violations and disciplinary charges of which they have accused Ms. Grey. None of these alleged violations, however, provide any substantive justification for not placing Ms. Grey in a women's facility. DPSCS refers to an allegation that Ms. Grey engaged in a sex act with "another incarcerated individual of Muslim faith," Def. Status Rpt. at 6, but neglects to mention that the allegation was unfounded. Ex. 2, TRO Hearing Tr. Vol. II, Nov. 22, 2023, at 6:6-9:1. Separately, Ms. Grey was found guilty of violating rules pertaining to "demonstrate[ing] disrespect; insolence; or use of vulgar language," "participat[ing] in a three-way telephone call," and "arrang[ing], commit[ing], perform[ing], or engag[ing] in a sex act or sexual conduct" (not for engaging in physical sexual activity, but for sending text messages that were sexual in nature and making sexual comments—directed to no one in particular—in an empty yard).[3] ECF

---

[3] Ms. Grey continues to adamantly deny these charges and believes that they were the result of a targeted retaliatory campaign. The first violation came two weeks after she first met with attorneys. ECF No. 59-3, ¶ 21. Ms. Grey was added to this lawsuit in the Third Amended Complaint and received the additional rule violations alleged by Defendant all within the month.

BROWN, GOLDSTEIN & LEVY, LLP

Honorable Matthew J. Maddox
United States District Judge
October 1, 2024
Page 3

140-6 at 5. Women in women's facilities regularly receive violations of the same ilk. Ms. Grey has served her punishment for the one substantiated incident and nothing in the DPSCS disciplinary procedures suggest that housing a woman in a men's prison is an appropriate punishment.

Although sexual relationships may be prohibited across DPSCS, they are neither uncommon[4] nor limited to men's or women's facilities.[5] We cannot imagine that DPSCS would suggest that a cisgender woman housed in a women's facility who received a violation for a sexual relationship would be housed in a men's prison. The same standard should be true for Ms. Grey.

II.     **Ms. Grey's risk of sexual victimization is not minimized because DPSCS determined her attacks to be unfounded or unsubstantiated.**

As an initial matter, in the over two years preceding DPSCS's Fall 2023 report, not a single complaint by a trans inmate has been found meritorious. ECF 95-15 at 25-27. That Ms. Grey's own reports of sexual victimization were deemed unfounded weigh in favor of Ms. Grey being removed from men's facilities, not against it.

For example, the PREA investigation related to the November 9, 2023 assault about which this court previously received evidence is questionable. Per this report, Ms. Grey alleges that Officer Duru pushed her down the stairs, then grabbed her genitals and wrenched at her breasts. ECF No. 140-5 at 4. Ultimately, the investigator found no evidence that Officer Duru sexually assaulted Ms. Grey because there was no video, she reported the assault after a separate incident, and a Sergeant did not see any injuries following a strip search that occurred after Ms. Grey reported this PREA. *Id.* However, in the PREA incident report, the documentation from Mercy Medical Center, where Ms. Grey was taken after the assault, shows that there were body injuries including red abrasions and bruising to Ms. Grey's right breast. ECF No. 140-5 at 54-57. The failure of this investigation to adequately identify and consider the physical evidence that Ms. Grey was sexually assaulted shows the compounded danger Ms. Grey faces both at the hands of the officers sexually assaulting her, and then at the hands of PREA investigators whose job it is to hold those officers accountable.

Even assuming Ms. Grey's PREA allegations against staff and male prisoners were untrue (they are not), that is still not a sufficient reason to prevent her transfer to a women's facility. Her alleged PREA violations have nothing to do with violent or sexual aggression towards anyone else.

---

[4] Women in women's facilities, like men in men's facilities, regularly engage in relationships with each other while incarcerated. *See generally*, Samantha Vantassell, *I Never Thought I Could Fall in Love with a Woman. Then Came Prison*, The Marshall Project, Feb. 16, 2024, https://www.themarshallproject.org/2024/02/16/womens-prison-love-gay-for-stay; Heather McCauley, *Trauma, Power, and Intimate Relationships Among Women in Prison*, Sage Journals, Apr. 18, 2019; Brittany Marshall, *Teaching LGBTQ+ History: Queer Women's Experiences in Prison*, American Prison Newspapers 1880-2020, Oct. 24, 2022, https://daily.jstor.org/teaching-lgbtq-history-queer-womens-experiences-in-prison/.

[5] DPSCS has conceded this point. ECF 85 at 3 ("MCI-W IIs often engage in sexual relationships").

BROWN, GOLDSTEIN & LEVY, LLP

Honorable Matthew J. Maddox
United States District Judge
October 1, 2024
Page 4

There is nothing in Ms. Grey's record to suggest that she poses a safety threat to other women, nor are DPSCS's accusations of false reports linked in any way to "adjustment" to a new facility or security overall.

Further, DPSCS does not address Ms. Grey's vulnerability to sexual assault and sexual victimization as a transgender woman. DPSCS merely references a PREA Intake Screening of Ms. Grey in August 22, 2024, while housed at North Branch Correctional Institution ("NBCI") suggesting that her past sexual assault claims have been untrue. ECF No. 140-15. This report is inconsistent with everything Ms. Grey has presented to this court thus far. The case manager conducting the PREA screening DPSCS attached as an exhibit, ECF 140-15, did not properly present the questions or record her answers. Ex. 1, Grey Decl. (Oct. 1, 2024), at ¶¶ 3-5. He insisted that question seven ("Were you ever sexually assaulted . . . [as an] adult?") and question twelve ("Have you ever been sexually assaulted while incarcerated?") pertained only to her experiences at NBCI, not in DPSCS custody overall. *Id.* at ¶¶ 4-5. Because Ms. Grey had not been sexually assaulted at NBCI, he marked "no" to both questions. *Id.* at ¶¶ 4-6. The case manager also neglected to present Ms. Grey with the entirety of question eight. *Id.* at ¶¶ 6. Additionally, the screener overrode Ms. Grey's response to question 10 ("Have you had consensual sex while incarcerated?") because of Ms. Grey's violation of Rule 117—but that violation was due to the incident where Ms. Grey was accused of yelling sexually explicit remarks in the yard, not because of consensual sex. *Id.* at ¶ 7; *see also* ECF 140-6 at 5. Ms. Grey has been informed that a new PREA screening was conducted and her PREA score has since been updated to reflect her risk of victimization, but she has not yet received the screening document. *Id.* at ¶¶ 8-9.

### III. DPSCS's attacks on Ms. Grey's character do not preclude her from being housed in a women's facility.

DPSCS concludes the Report by claiming that Ms. Grey "exhibit[s] the manipulative and untruthful tendencies that she displayed prior to her incarceration," and as a result, poses a security risk for the MCI-W population. ECF No. 140 at 12. DPSCS runs a prison system. It is the rare person who is sentenced to felony time who did not display manipulative or untruthful tendencies prior to incarceration. *Cf.* FRE 609 (allowing introduction of a felony as evidence of witness untruthfulness). Even if Ms. Grey were manipulative and untruthful, it is unclear why those qualities pose a greater risk at MCI-W than they do at WCI.

At its core, the Report demonstrates the lengths DPSCS will go to to keep Ms. Grey in a men's facility. "When formally articulated, the [proffered reasons] are exposed as unjustified." *Soneeya v. Mici*, No. CV 07-12325, 2024 WL 550171, at *16 (D. Mass. Feb. 12, 2024). The record remains devoid of genuine consideration of Ms. Grey's own opinion of her safety or why the safety of women at MCI-W would be at risk if Ms. Grey were placed there. The standards DPSCS uses to come to its conclusion are blatantly discriminatory: they would not be upheld if applied to a cisgender woman.

Defendants have been given ten months and many opportunities to comply with this Court's December 4, 2023 Order. DPSCS has relinquished the deference typically owed to corrections

BROWN, GOLDSTEIN & LEVY, LLP

Honorable Matthew J. Maddox
United States District Judge
October 1, 2024
Page 5

administrators, and Plaintiffs respectfully request that this Court exercise its power to prevent further harm to Ms. Grey. *See Id.*; *JJS v. Pliler*, 2022 WL 16578124, at *1 (S.D.N.Y. Aug. 3, 2022), *R&R adopted. Shelby v. Petrucci*, 2022 WL 16575766 (S.D.N.Y. Nov. 1, 2022); *Battista v. Clarke*, 645 F.3d 449 (1st Cir. 2011).

    Thank you for your attention to this matter.

                Respectfully submitted,

                */s/ Eve L. Hill*
                Eve L. Hill (Bar No. 19938)
                Sharon Krevor-Weisbaum (Bar No. 04773)
                Jessica P. Weber (Bar No. 17893)
                Lauren A. DiMartino (Bar No. 22046)
                Brown, Goldstein & Levy, LLP
                120 E. Baltimore Street, Suite 2500
                Baltimore, Maryland 21202
                (410) 962-1030 (phone)
                (410) 385-0869 (fax)
                ehill@browngold.com
                skw@browngold.com
                jweber@browngold.com
                ldimartino@browngold.com

                Deborah M. Golden (Bar No. 18657)
                The Law Office of Deborah M. Golden
                700 Pennsylvania Ave. SE, 2nd Floor
                Washington, DC 20003
                202-630-0332 (phone)
                dgolden@debgoldenlaw.com

                *Attorneys for Plaintiff*