**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHELSEA GILLIAM, *et al.,* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. MJM-23-01047 |
| DEPARTMENT OF PUBLIC SAFETY | * | |
| & CORRECTIONAL SERVICES, *et al.*, | * | |
| Defendants. | | |

\* \* \* \* \* \* \*

**DPSCS DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO HOLD
DEFENDANTS IN CONTEMPT AND FOR SANCTIONS**

Defendants, the Department of Public Safety and Correctional Services ("the Department"); Secretary of the Department Carolyn Scruggs; Commissioner of Correction J. Philip Morgan; Administrator of Baltimore City Correctional Center ("BCCC") Damilare Adisa-Thomas; Maryland Reception, Diagnostic, and Classification Center ("MRDCC") Warden Nurudeen Matti; Eastern Correctional Institution ("ECI") Warden William Bailey; Maryland Correctional Institution-Jessup ("MCI-J") Warden Christopher Smith; Maryland Correctional Institution-Hagerstown ("MCI-H") Warden Gregory Werner; Orlando Johnson[1]; Patuxent Institution ("Patuxent") Assistant Warden Kimberly Stewart; Western Correctional Institution ("WCI") Warden Ronald Weber; the Department's Americans with Disabilities Act ("ADA") Coordinator Michele Gardner; Prison Rape Elimination Act ("PREA") Coordinator Dave Wolinski; (collectively "DPSCS Defendants")[2] through their attorneys, Anthony G. Brown,

---

[1] Mr. Johnson is named as the Acting Warden of Patuxent Institution, but left State employment on February 1, 2023.

[2] Plaintiffs also purport to assert claims against several other unnamed defendants, identified only as "Housing Does," "Healthcare Does," and "Custody Does."

Attorney General of Maryland, and Merrilyn E. Ratliff and Kelly M. Donoho, Assistant Attorneys General, respond to Plaintiffs', Chelsea Gilliam, Kennedy Holland, and Chloe Grey ("Plaintiffs") motion for contempt and for sanctions (ECF 176) pursuant to Federal Rule of Civil Procedure 16(f) as follows:

## I.    INTRODUCTION

On January 28, 2026, Plaintiffs filed this motion to hold Defendants in contempt and for sanctions, alleging that DPSCS Defendants violated the United State Magistrate Judge's settlement conference order (ECF 159) by failing to substantively respond to their demands before the two settlement conference dates. ECF 176. Plaintiffs assert that because Plaintiffs and their counsel had to "clear their schedules" twice for settlement conference dates scheduled for October 8, 2025 and February 5, 2026 and prepare two *ex parte* letters, DPSCS Defendants' purported violations of the order constitute grounds for contempt and sanctions. ECF 176 at 7. For relief, Plaintiffs request this Court to order Defendants to pay Plaintiffs $17,370.10 in attorneys' fees resulting from their preparations for these settlement conferences and this motion and to "hold Defendants in contempt for violating its settlement conference order and impose a daily fine on each Defendant for each day that passes without them providing a substantive response to Plaintiffs' settlement demands[.]" ECF 176 at 7.

Plaintiffs' motion is without merit as it ignores the parties' extensive litigation history and current posture in this case, and further fails to acknowledge that their settlement demand requested wide-ranging, Department-wide systemic policy and practice revisions, as well as large monetary awards and attorneys' fees. Accordingly, DPSCS Defendants have maintained from the start of this litigation that early settlement would be unlikely in such a case. Nevertheless, DPSCS Defendants have strived to work with Plaintiffs' counsel to respond to their expansive discovery

requests, while also engaging with Department staff to implement several policy changes that would address Plaintiffs' demands. Further, DPSCS Defendants communicated the Department's efforts and position on settlement to Plaintiffs' counsel ahead of the February 5, 2026 settlement conference in their January 22, 2026 letter. As a result, Plaintiffs cannot show that DPSCS Defendants have not been acting in good faith in order to dutifully litigate this matter and attempt to reach a resolution or that Defendants violated any order issued by the Court. Consequently, Plaintiffs motion should be denied.

## II.    PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

After Plaintiffs filed four amended complaints, a motion for temporary restraining order that was tried and adjudicated, and a motion to enforce temporary restraining order, DPSCS Defendant filed a motion to dismiss, or in the alternative, motion for summary judgment, which this Court denied in part and granted in part. *See* ECF Nos. 1, 13, 31, 46, 50-75, 87, 94-95, 105-06, 108, 114-15, 119, 124, 132, 138, 140, 142, 146-48. DPSCS Defendants timely filed their Answer and this Court scheduled a conference call for March 20, 2025 to discuss a proposed scheduling order. ECF Nos. 149-50. Ahead of the call, the parties submitted a joint motion to amend the scheduling order, noting that the proposed dates will need to be extended "[d]ue to the complexity and scope of the issues to be covered and the number of parties and facilities involved in the case[.]" ECF No. 156, ¶ 3. The statement did not address the parties' positions regarding settlement. ECF No. 156. However, during the conference call, defense counsel stated that DPSCS Defendants were not opposed to referring this matter for settlement, but opposed an early settlement conference date for the same reasons indicated in the parties' joint motion; namely, DPSCS Defendants would unlikely be able to obtain settlement authority by an early settlement date given the wide-ranging issues and claims in this case. ECF No. 168, ¶ 3.

On March 20, 2025, this Court issued a scheduling order with a discovery deadline of November 21, 2025, and referred this matter to United States Magistrate Judge Charles Austin for settlement purposes only. ECF Nos. 157-58. On April 4, 2025, Judge Austin issued a settlement order scheduling a settlement conference for October 8, 2025. ECF No. 159. The order requested the parties to submit a short *ex parte* letter no later than September 24, 2025, and confer with each other before the settlement conference. ECF No. 159 at 2-3. The order stated that "Plaintiff[s] shall submit a written demand to the Defendant[s] no later than one month before the settlement conference[,]" and that the demand "shall particularize, at a minimum, each category of damages claimed and the method by which it was calculated, as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii)[,]" and "include any request for non-monetary relief and the basis for the same." ECF No. 159 at 3. Defendants were to "respond in writing within one week of receiving the demand or no later than three weeks before the settlement conference[,]" but if "the Defendant[s] intend to respond to the demand by offering nothing, the response should state that expressly along with an explanation for this position." ECF No. 159 at 3. The order underlined that "[f]ailure to comply with the requirements of this paragraph may result in the postponement or continuation of the settlement conference." ECF No. 159 at 3.

On May 7, 2025, Plaintiffs in total served 73 Requests for Production of Documents ("RPDs") on the Department and a total of 43 RPDs on 13 current or former Department employees. ECF No. 181 at 1-2. On that same date, the Plaintiffs also served a total of 50 Interrogatories on the Department. ECF No. 181 at 2. After receiving one 35-day extension, DPSCS Defendants submitted their responses on July 11, 2025. ECF No. 164, ¶ 4; ECF No. 181 at 2. Further, after Plaintiffs re-submitted their corrected RPDs on the Department on July 18, 2025, DPSCS Defendants served their remaining responses on August 18, 2025. ECF No. 164, ¶

4

5; ECF No. 181 at 2. Additionally, after several deficiency letters and meet and confer conferences, DPSCS Defendant provided Plaintiffs with additional responses and documents on September 5, 2025, November 14, 2025, and January 12, 2026. ECF No. 181 at 2. To date, DPSCS Defendants have produced over 20,000 documents in response to Plaintiffs' discovery requests and continue to collect and produce additional documents as they become available. ECF No. 181 at 2.

On September 23, 2025, the Department served Interrogatories and RPDs on the Plaintiffs. After DPSCS Defendants agreed to several extensions, Plaintiffs responded to those requests on December 3, 2025, producing a total of 763 documents. ECF No. 181 at 2. Throughout this discovery process, the parties have encountered numerous discovery disputes and have attempted to resolve them informally, but several issues remain and require court intervention. ECF Nos. 179-82.

Over the course of the litigation, Plaintiffs have contacted DPSCS Defendants requesting multiple extensions to the scheduling order based on the parties ongoing discovery obligations and disputes. For example, on July 23, 2025, Plaintiffs filed a consent motion requesting a 90-day extension of the discovery deadlines, stating to this Court that "[b]ecause Plaintiffs need to review the documents Defendants will produce on August 18, 2025, in advance of taking depositions and sending the necessary documents and transcripts to their experts, it is no longer possible to meet the Scheduling Order's September 5, 2025 deadline for expert disclosures." ECF No. 164, ¶ 6. On July 28, 2025, this Court granted the motion and the discovery deadline was moved to February 23, 2026. ECF No. 165. Plaintiffs filed additional motions to which Defendants consented on similar grounds on November 11, 2025, moving the discovery deadline to May 26, 2026, and on

February 5, 2026, moving the discovery deadline to July 27, 2026. *See* ECF No. 173, ¶¶ 4-5, 7; ECF No. 174; ECF No. 187, ¶¶ 5-6, 8; ECF No. 190.

While the parties have been engaging in these extensive discovery exchanges and attempting to resolve discovery disputes, Plaintiffs sent DPSCS Defendants their proposed settlement term sheet on August 19, 2025.  ECF No. 176-1, ¶ 2; ECF No. 177.  The term sheet mainly included non-monetary demands related to the Department's policies and treatment regarding transgender incarcerated individuals generally and several non-monetary demands related to Plaintiff Chloe Grey specifically, without providing any evidentiary or legal basis for same as required by the settlement order.  ECF No. 159 at 3; ECF No. 177.  The term sheet also included monetary demands on behalf of each Plaintiff without any explanation for how those amounts were calculated as required by the settlement order.  ECF No. 159 at 3; ECF No. 177.

On September 23, 2025, defense counsel contacted Plaintiffs' counsel to inform them that DPSCS Defendants would not be able to obtain settlement authorization by October 8, 2025 due to "our lengthy authorization process, especially given the numerous non-monetary requests," and that DPSCS Defendants would need to review additional discovery from Plaintiffs before defense counsel could extend any offers to Plaintiffs, and therefore, defense counsel requested a postponement of the October 8, 2025 settlement conference.  *See* September 23, 2025 email to Plaintiffs, attached hereto as **Exhibit 1.** Plaintiffs' counsel responded that they could not consent because several members of Plaintiffs' counsel were out on holiday or vacation and because of the "impending deadline and outstanding request from the court re Ms. Grey," which undersigned counsel is assuming Plaintiffs' counsel was referring to the writ issued to transport Ms. Grey to court for the settlement conference. Ex. 2.

6

In the morning of September 24, 2025, two weeks before the October 8, 2025 settlement conference date, defense counsel emailed Judge Austin and Plaintiffs' counsel noting that DPSCS Defendants intended to seek a postponement of the settlement conference due to the above stated concerns. ECF No. 176-4. On that same day, defense counsel submitted their *ex parte* letter to the court and also filed a motion to postpone the settlement conference. ECF No. 168. In that motion, DPSCS Defendants stated that although Plaintiffs sent their demand on August 19, 2025, the "demand proposed substantive revisions to the Department's policies and practices regarding the housing, medical treatment, and training for transgender incarcerated individuals that would entail extensive coordination with its medical and mental health providers and outside consultants, as well as other non-monetary forms of relief." ECF No. 168, ¶ 9. As such, "DPSCS Defendants have not had sufficient time to review and discuss the proposed terms with several members of its executive staff and its medical providers to explore the programming, security, policy, logistical, and other issues raised in Plaintiffs' demand." ECF No. 168, ¶ 10. Further, DPSCS Defendants explained that, at that time, DPSCS Defendants were awaiting Plaintiffs' responses to their discovery requests and needed to review their responses and conduct additional discovery before extending any monetary offers. ECF No. 168, ¶ 11. Therefore, DPSCS Defendants requested "a postponement of the October 8, 2025 settlement conference to a later date, but before the dispositive motion deadline of March 27, 2026." ECF No. 168, ¶ 12.

Plaintiffs' counsel opposed this motion, but the court granted it on October 3, 2025, and rescheduled the settlement conference to February 5, 2026, after consultation with parties' counsel. ECF Nos. 169-70. The order also stated that the deadline for *ex parte* letters was January 22, 2026 and "all other guidelines set forth in the order dated April 4, 2025 (ECF 159) will remain in effect."

ECF No. 170.  As noted above, after this order, Plaintiffs' counsel requested further extensions to the discovery deadline and the parties continued to engage in the discovery process.

Throughout this time, the Department has been reviewing and updating many of its policies in ways that may directly address the concerns raised in Plaintiffs' proposed settlement term sheet. ECF No. 176-5.  Accordingly, defense counsel met with Department staff to discuss those changes and prepared a proposed settlement memorandum that would address many of the topics in Plaintiffs' settlement demand. However, after further consultation with defense counsel's supervisors and Department staff, and in light of the fact that many of the policies have not yet been finalized, defense counsel decided that it would be inappropriate for DPSCS Defendants to extend an offer regarding those terms at this time. Additionally, although Plaintiffs submitted their discovery responses to DPSCS Defendants on December 3, 2025 (after two extensions to which Defendants consented), due to defense counsel's lengthy review process before any settlement authority can be approved, coupled with defense counsel receiving these responses during the holiday season, defense counsel did not have time to review the responses and depose all of the Plaintiffs in time to obtain settlement authority before January 15, 2026—the time any counter offer would be due according to ECF No. 159 at 3.

Therefore, on January 22, 2026, two weeks before the February 5, 2026 settlement conference, defense counsel sent Plaintiffs' counsel a letter explaining that although the Department was considering significant revisions to policy that, in the Department's view, would align with Plaintiffs' settlement demands and gave a summary of those anticipated policy changes, the revisions were not yet final and could not be part of an official settlement proposal at this time. ECF No. 176-5 at 3.  Additionally, defense counsel stated that due to the Plaintiffs' significant discovery demands and disputes, they have not been able to depose the Plaintiffs, and as a result,

DPSCS Defendants cannot extend any monetary offers before February 5, 2026.  ECF No. 176-5 at 4.

Also on January 22, 2026, DPSCS Defendants submitted their *ex parte* letter to the court. In further communications with Judge Austin and Plaintiffs' counsel, defense counsel maintained their position that a discussion between the parties and a magistrate judge regarding how the Department's policy changes might affect Plaintiffs' proposed settlement agreement, and how such a heavily non-monetary settlement agreement should be structured, could be beneficial at this stage *See* email exchange in response to January 22, 2026 letter, attached hereto as **Exhibit 2**. Additionally, on February 3, 2026, the parties held a meeting where defense counsel provided more details regarding the proposed revisions and the parties agreed to meet on a bi-weekly basis in order continue those discussions and work towards a resolution of this matter.  Ex. 2; ECF No. 184, ¶ 3.  Ultimately, the parties agreed to postpone the February 5, 2026 settlement conference and filed a joint motion for same, which was granted on February 4, 2026.  ECF Nos. 184-85.

Plaintiffs filed this motion to hold DPSCS Defendants in contempt or for sanctions on January 28, 2026.  ECF No. 176.[3]

## III.    PLAINTIFFS ARE NOT ENTILTED TO RELIEF UNDER RULE 16(f).

This Court should reject Plaintiffs' request to hold DPSCS Defendants in contempt or order sanctions for the alleged violation of Judge Austin's settlement conference order, ECF No. 159. ECF No. 176.  Plaintiffs seek relief under Rule 16(f)(1), which states that a court "may issue any

---

[3] On February 4, 2026, defense counsel contacted Plaintiffs' counsel to ask if Plaintiffs' counsel would reconsider Plaintiffs' motion against DPSCS Defendants given their prior productive discussions on February 3, 2026 and the parties' agreement to postpone the upcoming settlement conference and to meet more regularly to discuss settlement.  *See* email exchanges in response to motion for sanctions, attached hereto as **Exhibit 3**.  After brief discussions, the parties could not agree on suitable terms, and therefore, DPSCS Defendants now respond accordingly. *Id.*

just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order." Rule 16(f)(2) also authorizes a court to "order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

Plaintiffs claim that DPSCS Defendants violated Judge Austin's settlement conference orders, and are thus required to pay the Plaintiffs sanctions and their attorneys' fees under Rule 16(f) because they have not been able to respond substantively to Plaintiffs' August 19, 2025 settlement demand and have requested to postpone the October 8, 2025 and February 5, 2026 settlement conferences. ECF No. 176 at 5-7. Plaintiffs claim that this has harmed Plaintiffs and their counsel because Plaintiffs Gilliam and Holland were unable to work on those two dates and because Plaintiffs' counsel "have cleared their schedules" for those two dates and spent time and money preparing two *ex parte* letters for those settlement conference dates that were later postponed. ECF No. 176 at 7. Contrary to Plaintiffs' assertions, these facts and "harms" do not warrant sanctions or attorneys' fees until Rule 16(f), and consequently, their motion should be denied.

As stated above, Plaintiffs' August 19, 2025 settlement demand consisted mostly of requests for Department-wide, systematic policy changes, which would require coordination with multiple Departmental units and its contractual medical provider, as well as outside medical contractors. ECF No. 177. Additionally, Plaintiffs demanded large monetary awards without explanation as to how those awards were calculated. ECF No. 177. Coupled with the parties

10

extensive and ongoing discovery obligations and disputes, obtaining full settlement authority for the entirety of Plaintiffs' demands is an inherently lengthy process. Accordingly, as noted, during the initial scheduling conference call, Defendants objected to scheduling an early settlement conference date, and have continued to state that an early settlement date is unlikely to be fruitful under these circumstances. Ex. 1; ECF No. 168, ¶ 3; ECF No. 176-4.

Further, regarding the October 8, 2025 settlement conference, on September 23, 2025, more than two weeks prior to the conference, defense counsel notified Plaintiffs' counsel and explained why DPSCS Defendants would be unable to obtain settlement authority by that date and requested their consent for a postponement. Ex. 1. Defense counsel then notified the court and Plaintiffs' counsel its intention to file a motion to postpone the settlement conference—two weeks in advance of the settlement conference—and filed the motion the next day. ECF No. 168; ECF No. 176-4. Contrary to Plaintiffs' characterization of the motion being "last minute," Plaintiffs' counsel was able to file an opposition to that motion well in advance of the conference date, and the court granted the motion without comment. ECF No. 176 at 7; ECF Nos. 169-70.

Moreover, contrary to Plaintiffs' claim, there is no evidence that DPSCS Defendants acted in bad faith in agreeing to postpone the settlement conference to a date "before the dispositive motion deadline of March 27, 2026." *See* ECF No. 176 at 6; ECF No. 168. At the time defense counsel moved to postpone the hearing to a date before March 27, 2026, the discovery deadline date was February 23, 2026, and defense counsel reasonably believed that the parties would be at or near the close of discovery by the new settlement conference date of February 5, 2026. Ex. 2 at 2; ECF Nos. 165, 168, 170. Although Plaintiffs claim that "DPSCS Defendants are no further along in seeking whatever additional discovery they need than they were when they filed their postponement motion on September 25[,]" ECF No. 176 at 6, they ignore the fact that DPSCS

11

Defendants served discovery requests on Plaintiffs on September 23, 2025, and Plaintiffs did not respond to those requests until December 3, 2025. ECF No. 181 at 2. After review of the responses, many of which defense counsel believes are deficient and require supplementation, scheduling three depositions over the holiday season and then securing appropriate settlement authority by January 15, 2026 would have been impracticable. Plaintiffs also ignore that since July 11, 2025 through the present, DPSCS Defendants have been involved in continuous document production, discussion of discovery issues with Plaintiffs' counsel, and now court intervention on discovery disputes. ECF Nos. 180-82. Indeed, Plaintiffs have communicated on many occasions that the parties' ongoing discovery production and disputes have prevented them from deposing witnesses and preparing expert reports, but deride DPSCS Defendants for expressing a similar concern regarding obtaining settlement authority. ECF Nos. 165, 173, 187; *see* ECF No. 176-6.

Moreover, on January 22, 2026, again two weeks before the February 5, 2026 settlement conference, defense counsel notified Plaintiffs' counsel that despite significant progress in addressing policies directly at issue in the case, DPSCS Defendants were unable to obtain settlement authority before the February 5, 2026 settlement conference. ECF No. 176-5. Nevertheless, through further discussions with Plaintiffs' counsel and the Court, defense counsel explained that although DPSCS Defendants could not enter into a formal settlement agreement on February 5, 2026, they still believed that a settlement conference could be beneficial in facilitating settlement discussions moving forward. Ex. 2; Ex. 4; 184, ¶ 3. However, ultimately all parties agreed to postpone the settlement conference. ECF No. 184.

These facts demonstrate that in seeking to postpone the two settlement conferences, the DPSCS Defendants were not "substantially unprepared to participate." Rule 16(f)(1). Nor is there any evidence that the DPSCS Defendants "[did] not participate in good faith" in a settlement

12

conference" or materially failed "to obey a scheduling or other pretrial order."  To the contrary, the settlement order states that "[i[f the Defendant(s) intend to respond to the demand by offering nothing, the response should state that expressly along with an explanation for this position."  ECF No. 159 at 3.  In indicating their inability to settle at this time due to the nature of the Plaintiffs' demands and discovery issues, including the fact that the depositions of the Plaintiffs have not yet occurred, DPSCS Defendants complied with this order before both settlement conference dates. Taking the depositions of the Plaintiffs is especially important in assessing the monetary damages claimed by the Plaintiffs in light of the fact that their settlement demand did not "particularize, at a minimum, each category of damages claimed and the method by which it was calculated, as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii)[,]" or state "the basis for the [non-monetary relief]."  ECF No. 159 at 3; ECF No. 177.  Accordingly, Plaintiffs' motion should be denied as to DPSCS Defendants.

The authority cited by Plaintiffs does not support their request for an order of contempt or sanctions.  Plaintiffs cite *MHD-Rockland Inc. v. Aerospace Distributors Inc.* 102 F. Supp. 3d. 734, 739 (D. Md. 2015) for the proposition that "the failure to obey an order scheduling a settlement conference is grounds for sanctions."  ECF No. 176 at 5.  That case is inapposite.  First, in contrast to the order issued here, the settlement order in *MHD-Rockland Inc.* "indicated that **'FAILURE TO COMPLY WITHOUT JUSTIFICATION MAY RESULT IN THE *IMPOSITION OF SANCTIONS[.]*'**" 102 F.Supp. 3d at 736 (emphasis in original).  Despite this warning, the plaintiff's "general counsel – not its counsel of record," emailed the settlement judge directly on Martin Luther King, Jr. day, i.e. a federal holiday, which also was two days prior to the scheduled conference.  *Id.*  The email "purport[ed] to cancel the conference unilaterally based on Rockland's view that settlement would be more likely during the 'week before trial'" and that "the conference

would be prohibitively expensive given the low value of Rockland's claim." *Id*.  Most importantly, the email advised that the counsel of record, who was barred in Maryland while the general counsel was not, was no longer representing Rockland and would be replaced "shortly."  *Id.*  Clearly, "[b]ecause Rockland could not proceed without counsel admitted to practice in the District of Maryland," the settlement judge "had no choice but to cancel the settlement conference on January 20, the day before it was scheduled to take place."  *Id*.  The court observed that Rockland's representations "[did] not explain or justify why Rockland waited so long to express its desire to cancel the conference" and "[a]s Judge Coulson noted in his order cancelling the settlement conference, 'the proper procedure would have been for [Rockland's] counsel of record to make this request and for the Court to solicit a response from [defendant and make a ruling, preferably well in advance of the scheduled date.'" *Id.* at 739.

Further, this court has explained that the settlement order's warning in *MHD-Rockland* that stated noncompliance would result in sanctions made "the cancelling party's behavior" in that case "particularly egregious."  *Hill v. B. Frank Joy, LLC*, No. CV TDC-15-1120, 2016 WL 11643572, at *1 (D. Md. Jan. 28, 2016) (citing *MDH-Rockland Inc.*, 102 F. Supp. 3d at 736.)  Additionally, even an "apparent indifferent attitude toward the settlement conference" has been held to "not clearly constitute noncompliance with Rule 16" and "does not warrant sanctions under Rule 16(f)." *Frankl Miller Webb &, Moyers, LLP v. Crest Ultrasonics Corp.*, No. 7:19CV143-HEH, 2020 WL 2738389, at *1–2 (W.D. Va. Feb. 27, 2020) (finding the defendants' "lack of diligence" evidenced by asking for information days prior to the conference and failing to bring a satisfactory representative to the conference did not entitle the plaintiff to sanctions).

Here, in contrast to indifference, let alone noncompliance, well before both settlement conference dates, counsel for DPSCS Defendants expressed uncertainty to both the Court and

Plaintiffs about whether settlement would be viable prior to the close of discovery, and, with regard

to the February 5, 2026 settlement conference date, stated explicitly that additional discovery

would be necessary before authorization for settlement could be obtained; that proposed changes

to policy were still under review; that Defendants did not have authorization to offer any monetary

relief to any Plaintiff; and that Defendants were thus unable to agree to the items listed in Plaintiffs'

demand letter. ECF No. 156, ¶ 3; ECF No. 168, ¶ 3; ECF No. 176-4; ECF No. 176-5. Moreover,

Defendants have been more than transparent through the scheduling of pre-dispositive motions

mediation that the nature and scope of the non-monetary relief sought in this case, as well as the

amount of demanded economic damages did not fit the traditional model of pretrial settlement

discussions, especially given the State's lengthy approval process for financial settlements.  ECF

No. 156, ¶ 3; ECF No. 168, ¶ 3; ECF No. 176-4.  Nevertheless, Defendants confirmed their

willingness to attend the conference to discuss the proposed policy changes and new guidelines

the Department has developed, in part to address some of the potential for improvement

highlighted in this lawsuit.  Ex. 2; Ex. 3; ECF No. 176-5. Far from acting in "total disregard" of

the Court's settlement order and the settlement process, ECF 176 at 7, Defendants have undertaken

diligent and good-faith efforts to work toward a possible resolution of the issues Plaintiffs

identified in their settlement demands.  ECF No. 176-5.

These actions do not constitute a "failure . . . to engage in good faith settlement

discussions," ECF No. 176 at 7, and certainly do not demonstrate the level of intransigence courts

have required to support sanctions. *Cf.  Parker v. New England Motor Freight, Inc.,* 2007 WL

9782528 * 2-3 (D. Md. July 17, 2007) (court approved fees sanctions when, despite a court order

to submit a demand no fewer than ten days prior to the settlement conference, the plaintiff left a

voicemail with a demand on the day prior to the conference, which interfered with the parties'

ability to address the "major barrier to settlement," a workers' compensation insurer's lien, before the conference); *Bellamy-Bey v. Baltimore Police Dep't*, 237 F.R.D. 391, 393–94 (D. Md. 2006) (request for postponement made on the Friday prior to the Monday settlement conference with one party located in South Carolina was also the third request for postponement and came after court warned the parties that no further last-minute postponements would be granted); *see also Briggs v. City of Norfolk,* 2002 WL 1760679, 42 Fed Appx. 585, 587 (4th Cir. July 31, 2002) (upholding award of fees for attending settlement conference when the court determined that [appellant] "attended the conference in bad faith because she had no intention of ever contributing to the conference"); *Velocitor Solutions, LLC v. ASA College, Inc.,* 2022 WL 18135218 * 2 (M.D. N.C. Nov. 17, 2022) (sanctions, including fees, were held appropriate when the president and settlement representative for the defendant "repeatedly failed to appear" at multiple settlement conferences despite prior warnings by the court and an agreement that a failure to appear would lead to default judgment).

In further contrast to *MDH-Rockland Inc*., none of Judge Austin's settlement orders warned that noncompliance with the settlement order would result in the sanctions now requested by Plaintiffs. *Compare* ECF No. 159 *with MDH-Rockland*, 102 F.Supp. 3d. at 736; *Hill*, 2016 WL 11643572, at *1; *see* ECF Nos. 170, 185. Instead, the settlement order stated that "[f]ailure to comply with the requirements of this paragraph may result in the postponement or continuation of the settlement conference." ECF No. 159 at 3. Indeed, that is the exact result that occurred and there is no indication that Judge Austin intended to impose any additional sanction for any alleged violation at this time.

Plaintiffs' reliance on *Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139 (4th Cir 2024) is likewise misplaced. *Napoli* governed whether a "district court's inherent power to sanction

misconduct in other courts" is limited to "instances where the misconduct is in direct defiance of a discrete court order." 120 F.4th at 143. The court said no, because "district courts are not powerless to act in the face of contumacious conduct so expressly designed to undercut, and even sabotage, their adjudicative authority." *Id.* However, the examples given were situations where the court imposed sanctions to avoid "relentless collateral attack," 120 F.4th at 144, i.e. when "a party which tried to undermine a court's judgment by asking a district court in another circuit to enjoin the judgment's enforcement," *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923), or when a "sanctioned party instead tried to sidestep an ongoing litigation in a federal circuit court by seeking relief in a state forum." *New Orleans v. The Steamship Co.* 87 U.S. 20 Wall. 387 (1874). DPSCS Defendants do not dispute that the court has power to issue sanctions for the failure to obey a court order; however, no sanctions are warranted here.

Plaintiffs appear to tie their request for contempt sanctions, including a request for a "daily fine on each Defendant for each that passes without them providing a substantive response to Plaintiffs' settlement demands," ECF 176 at 7, to their dissatisfaction with DPSCS Defendants' position regarding a full settlement before trial. In *Frankl-Miller Webb*, the Court sharply indicated its "disagree[ment] with Plaintiff's implication that Defendant's refusal to enter into a settlement compromise is sanctionable," stating that "[a]lthough it may be costly and time-consuming to continue litigation, such a decision rests with Defendant and does not necessarily constitute a failure to participate in the conference in good faith." 2020 WL 2738389, at *1. Further, "Rule 16(a)(5) authorizes the court to direct the parties and attorneys to attend one or more pretrial conferences for the purpose of "facilitating settlement,'" *Matter of Mediation in Health Diagnostic, Lab'y, Inc.*, No. 3:17-MC-4, 2018 WL 524711, at *3 (E.D. Va. Jan. 23, 2018), *not* forcing settlement. Indeed, one of the main arguments made in support of Plaintiffs' request has

17

been mooted.  The parties have had and will continue to have good-faith, substantive discussions regarding Plaintiffs' settlement demands, and all of the parties have agreed to continue the February 5, 2026 settlement conference to a future date.  Ex. 2; Ex. 3; ECF No. 184.

Plaintiffs' request for attorneys' fees incurred in preparing for the two settlement conferences should be denied for the additional (and simple) reason that such preparation is not squandered. As this Court has previously held in denying a request for attorneys' fees sanctions, "[t]ime spent in preparation for the conference was not wasted because it is likely that the parties will engage in further settlement negotiations at the close of discovery." *Bellamy-Bey*, 237 F.R.D. at 394.  Similarly here, Plaintiffs' counsel's time and resources in preparing two *ex parte* letters, which defense counsel also prepared, were not "wasted" given that the parties intend to "engage in further settlement negotiations at the close of discovery." *Id.*; *see also* ECF No. 184.

Accordingly, the facts show that DPSCS Defendants have been participating in this litigation and preparing for each settlement conference in good-faith.  Therefore, Plaintiffs are not entitled to  sanctions or attorneys' fees tand their motion should be denied.

WHEREFORE, for the reasons set forth in their response, the DPSCS Defendants respectfully request that this Court deny Plaintiffs' motion.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

  /s/ Merrilyn E. Ratliff
MERRILYN E. RATLIFF
Assistant Attorney General
Federal Bar No. 30034
6776 Reisterstown Road, Suite 313
Baltimore, Maryland  21215
(410) 585-3947 (Telephone)
(410) 484-5939 (Telefax)
E-mail:  merrilyn.ratliff@maryland.gov

*/s/ Kelly M. Donoho*
KELLY M. DONOHO
Federal Bar No. 30786
Assistant Attorney General
Department of Public Safety and
Correctional Services
6776 Reisterstown Road, Suite 313
Baltimore, Maryland 21215
Tel: (410) 585-3544
Fax: (410) 484-5939
Email: kelly.donoho@maryland.gov

*Attorneys for DPSCS Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of February, 2026, a copy of the foregoing was served on all counsel of record by electronic means.

   /s/ Kelly M. Donoho
KELLY M. DONOHO