IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHELSEA GILLIAM, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. MJM-23-01047 |
| DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES, *et al.*, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \*

**DPSCS DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR APPROPRIATE RELIEF**

Defendants, the Department of Public Safety and Correctional Services ("the Department"); Secretary of the Department Carolyn Scruggs; Commissioner of Correction J. Philip Morgan; Administrator of Baltimore City Correctional Center ("BCCC") Damilare Adisa-Thomas; Maryland Reception, Diagnostic, and Classification Center ("MRDCC") Warden Nurudeen Matti; Eastern Correctional Institution ("ECI") Warden William Bailey; Maryland Correctional Institution-Jessup ("MCI-J") Warden Christopher Smith; Maryland Correctional Institution-Hagerstown ("MCI-H") Warden Gregory Werner; Orlando Johnson[1]; Patuxent Institution ("Patuxent") Assistant Warden Kimberly Stewart; Western Correctional Institution ("WCI") Warden Ronald Weber; the Department's Americans with Disabilities Act ("ADA") Coordinator Michele Gardner; Prison Rape Elimination Act ("PREA") Coordinator Dave Wolinski; (collectively "DPSCS Defendants")[2] through their attorneys, Anthony G. Brown,

---

[1] Mr. Johnson is named as the Acting Warden of Patuxent Institution, but left State employment on February 1, 2023.

[2] Plaintiffs also purport to assert claims against several other unnamed defendants, identified only as "Housing Does," "Healthcare Does," and "Custody Does."

1

Attorney General of Maryland, and Merrilyn E. Ratliff and Kelly M. Donoho, Assistant Attorneys General, hereby respond to Plaintiffs', Chelsea Gilliam, Kennedy Holland, and Chloe Grey ("Plaintiffs") motion for appropriate relief (ECF 180) as follows:

## I.  INTRODUCTION

On February 2, 2026, Plaintiffs filed this "Motion for Appropriate Relief Due to Defendant's Spoliation of Material Evidence" ("Motion"), alleging that DPSCS Defendants have violated Federal Rule of Civil Procedure 37(e) by failing to preserve video of an alleged June 28, 2024, incident where Plaintiff Chloe Grey ("Ms. Grey") contends she was verbally "threatened and harassed by DPSCS employees" on her way to attend a court hearing. ECF 180 at 2. Plaintiffs insist that this evidence is material, that DPSCS intentionally destroyed the video "in clear dereliction of a known duty to preserve," and that Plaintiffs should receive an adverse inference and payment of their attorneys' fees. ECF 180 at 9.

Nevertheless, the video still exists and a copy will be forwarded to Plaintiffs' counsel contemporaneously with this motion. A miscommunication about the status of the video led to counsel's mistaken (and since-rectified) statement in discovery that the original video was destroyed.

Despite the mootness of this Motion and future litigation of this issue, Plaintiffs have refused to withdraw their Motion unless DPSCS Defendants pay them $16,471.50 in attorneys' fees.[3]  *Id.* For the reasons set forth below, Plaintiffs' motion should be denied.

---

[3] In the Motion's request for relief, Plaintiffs request this Court to "find[] that Defendant [DPSCS] intentionally and prejudicially spoliated electronic video evidence" and to "give the jury an adverse inference instruction [] requiring the jury to presume that DPSCS officers harassed Plaintiff Chloe Grey on her way to participate virtually in the court hearing on June 28, 2024, as described by her counsel in court that day" as well as award fees incurred in filing this motion some eighteen months later. ECF 180-7. However, Rule 37(e)(2) provides that the court may *only* provide for a presumption or adverse inference upon "finding that the party acted with the intent to deprive

2

## II.  OVERVIEW AND STATEMENT OF FACTS

Chelsea Gilliam initiated this lawsuit on April 18, 2023, and on November 2, 2023, Ms. Grey joined as an additional plaintiff.[4]  *See* ECF Nos. 1, 13, 46.  All plaintiffs are transgender women who were incarcerated in DPSCS facilities; Ms. Grey is still incarcerated.  *See* ECF No. 124.  The lawsuit alleges violations of the Fourteenth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and common law negligence based on allegations that DPSCS and its employees denied the plaintiffs appropriate accommodations, failed to protect them from assault and harassment, and denied them necessary medical treatment while incarcerated. *See generally* ECF No. 124.

Since joining the lawsuit, Ms. Grey has made multiple additional claims concerning alleged retaliation for her involvement in the lawsuit, assault, harassment, and intimidation.  DPSCS Defendants have investigated each claim.  The alleged incident at issue in the Motion occurred on June 28, 2024, at the North Branch Correctional Institution ("NBCI"), where Ms. Grey was confined at the time.  On that date, this Court heard arguments on Plaintiff Grey's motion to enforce a December 4, 2023, Order providing for an individualized assessment of Ms. Grey's housing options, including consideration of her request to be housed in a women's facility.  ECF Nos. 95, 111.  Shortly after the Order, DPSCS conducted an individualized housing assessment, and declined to transfer Ms. Grey to a women's institution.  Nevertheless, Plaintiffs requested "this Court enforce its December 4, 2023, order by . . . determin[ing] that . . Ms. Grey should be housed in a women's facility."  ECF 95-1 at 28.

---

another party of the information's use in the litigation." Here, Plaintiffs have not been deprived of the information's use, as Plaintiff will receive the silent video as soon as possible, and long before any anticipated use at trial.

[4] Kennedy Holland joined this lawsuit as additional plaintiff on July 31, 2023.  ECF No. 31.

Although counsel attended arguments in person, Ms. Grey attended the hearing virtually, from a hearing room at NBCI, and was visible on video throughout the proceedings. After argument, the Court declined to grant the requested relief of a court order providing for her transfer. ECF No. 85. The Court ordered DPSCS to "immediately instruct staff at [NBCI] . . . not to take any retaliatory action against Ms. Grey for her participation in this litigation, communicating or meeting with her attorneys, or submitting administrative complaints" as a result of this incident. ECF No. 119 at 2.

Shortly after the Court's announcement of its ruling, Ms. Grey asked to speak to her counsel. Based upon Plaintiffs' counsel's subsequent representations on the record, Ms. Grey advised her attorneys that "one of the officers who brought her" to the hearing made offensive, insensitive, and derogatory remarks to Ms. Grey, including remarks that Ms. Grey perceieved as threatening. ECF 180-2Ms. Grey's counsel indicated she was "terrified" and that staff "is directly interfering with her ability to testify at this hearing." *Id.* Ms. Grey's counsel then made yet another "emergency" motion to move Ms. Grey from her current housing, which the court denied. ECF 180-2 at 7. Ms. Grey did not testify to any of these matters herself and did not submit any affidavit or other sworn testimony to support her claims at any time thereafter.[5] ECF No. 180-2.

NBCI management immediately investigated Ms. Grey's allegations and obtained signed information reports from six staff members who witnessed or participated in the escort of Ms. Grey to the hearing room on June 28, 2024. *See* **Exhibit 1** (Witness Statements, produced as DPSCS-010185-010190). In addition, as part of the investigation, NBCI reviewed video footage of the NBCI hearing room, although the footage did not have sound. Undersigned counsel spoke with

---

[5] Additionally, Ms. Grey did not include these claims in her Fourth Amended Complaint filed on July 18, 2024, several weeks after this alleged incident occurred. ECF No. 124.

4

both the assistant warden and chief of security at NBCI concerning the incident, the investigation, and the video footage. Based on those conversations, undersigned counsel understood that the video did not contain audio, and that a review revealed that the video footage did not show anything tangible. Further, the NBCI litigation coordinator stated that no archived video remained in the DPSCS system for June 28, 2024, at NBCI.

Nearly a year later, in their May 7, 2025, Interrogatories to DPSCS, Plaintiffs requested "any investigation that took place in response to the harassment of Ms. Grey by DPSCS staff before and during her virtual court appearance on June 28, 2024, and include in your Answer the identities of all individuals interviewed during any investigation, the information gathered, and any and all responses to the investigation's results." *See* ECF 180-3, Interrogatory No. 4. On July 11, 2025, Defendants responded and provided the six statements attached as Exhibit 1. However, relying on the information available to counsel at the time, the DPSCS Defendants' discovery responses represented that because Ms. Grey's complaints related to verbal threats and did not allege any physical contact, and because the video did not have audio to show whether those statements were made, the video was not archived and was therefore deleted in the ordinary course of business.

Plaintiffs included the video in a list of purported deficiencies in DPSCS Defendants' discovery responses, and included it as one of the issues discussed in an August 13, 2025, meet and confer. *See* ECF 180-5, ¶ 2. DPSCS Defendants do not dispute that the video would have been responsive to the May 7, 2025, Interrogatories and Requests for Production of Documents propounded upon DPSCS by Plaintiffs, and that the video would have been produced if its existence had been confirmed.

On February 2, 2026, Plaintiffs filed the instant Motion. ECF 180. As of the time of filing, the proposed deadline for amendment of pleadings was February 17, 2026, and the discovery

5

deadline was May 26, 2026. ECF 174. Shortly after, on February 5, 2026, the parties filed a joint motion to adjust the scheduling order, ECF 187, and the Court modified the deadline for amendment of pleadings to April 20, 2026; the deadlines for expert disclosures to May and June 2026; and the discovery deadline to July 27, 2026. ECF 190. No trial date has been set.

In the course of preparing an opposition to Plaintiff's Motion, during the week of February 9-13, 2026, undersigned counsel attempted to gather additional information from DPSCS in order to evaluate the utility of possible supportive exhibits. During these conversations, undersigned counsel was referred to the investigations captain who oversaw the investigation of the June 28, 2024, incident, and who, for the first time, advised counsel that the video had not been destroyed. He indicated that his review of the silent video revealed no evidence of inappropriate behavior and that while the video footage does not contain audio, the officers' body language appeared professional throughout the relevant timeframe. Nevertheless, as soon as possible, on February 16, 2026, undersigned counsel contacted Plaintiffs' counsel and advised them of 1) the existence and content of the video and 2) DPSCS Defendants' intent to immediately forward a copy. *See* Email Between Parties dated February 16, 2026, attached hereto as **Exhibit 2.** DPSCS Defendants also requested that Plaintiffs withdraw their Motion as moot to avoid further expenditure of resources. *Id.*

Plaintiff's counsel responded and indicated a fundamental misunderstanding that Defendants were offering "a different copy of this video" and reiterated mistakenly that "the only copy of this footage was in fact spoliated." *See* Exhibit 2. In fact, no spoliation has occurred, and a copy of the original video will be provided to counsel for Plaintiffs shortly. Nevertheless, Plaintiffs' counsel refused to withdraw the Motion unless "DPSCS agreed to pay plaintiffs" for

the "attorneys' fees they incurred pursuing this spoliation motion," which "to date" they contended "total $16,471.50" for "31.9 hours of work" spent preparing the 11-page Motion. *Id.*

**III. STANDARD OF REVIEW**

Should this Court treat the Motion as one for spoliation, despite DPSCS Defendants' forthcoming production of the video in question, its actions are dictated by Federal Rule of Civil Procedure 37, which provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," *and* "it cannot be restored or replaced through additional discovery" *and* "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the court "may" either "presume that the lost information was unfavorable to the party" or "instruct the jury that it may or must presume the information was unfavorable to the party."[6] Absent this finding, Rule 37(e)(1), assuming the movant shows "prejudice . . . from loss of the information," limits the court's power to "order measures no greater than necessary to cure the prejudice."

Given DPSCS Defendants' agreement to provide the video immediately upon its discovery, the more relevant standard is that of Rule 37(c), which governs "failure to disclose, to supplement an earlier response, or to admit." Under that Rule, "if a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence of a motion, at a hearing, or at a trial" unless "the failure was substantially justified or harmless." Rule 37(c)(1). However, "in addition to or instead of this sanction," the court "on motion, and

---

[6] The court may also "dismiss the action or enter a default judgment," Rule 37(e)(2)(c), but Plaintiffs do not seek this here (nor would such remedy be appropriate). *See, e.g., Silvestri v. General Motor Corp.,* 271 F.3d 583, 593 (4th Cir. 2001)(the "harsh sanction of dismissal" requires "egregious" conduct).

after giving an opportunity to be heard, may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Rule 37(c)(1)(A).

## IV. ARGUMENT

### A. The Sanction of An Adverse Inference under Rule 37(e) is Inappropriate.

DPSCS Defendants will produce the video to Plaintiffs as soon as possible. Therefore, the video is not "electronically stored information that should have been preserved" because it was preserved; and it has not been "lost," therefore no spoliation sanctions are appropriate under either Rule 37(e)(1) or (e)(2). Moreover, the delay in access to the video has not caused Plaintiffs "prejudice . . . from loss of the information." Rule 37(e)(1). The information has not been lost, and there is no prejudice because sufficient time remains before both the July 27, 2026, discovery deadline and before trial – which has not even been scheduled yet – for Plaintiffs to investigate and expand on any material produced in discovery via depositions.[7] Neither sanctions nor any other relief is appropriate under Rule 37(e).

### B. Late Disclosure of the Video Does Not Warrant Sanctions Under Rule 37(c).

The late disclosure of the video in discovery, months before discovery is scheduled to end and before trial is even scheduled, does not warrant any discovery sanctions. At the time Defendants served their discovery responses, the available information indicated that the video had not been retained. As soon as the video was discovered on February 13, 2026, DPSCS Defendants indicated their intent to immediately provide the video and correct their discovery responses. *See* Exhibit 2.

---

[7] In fact, Plaintiffs have yet to depose any individual in connection to this matter.

**1. The Late Disclosure Was Substantially Justified and Harmless.**

The failure to provide the video is both "substantially justified" and "harmless" to Plaintiffs, and does not merit any sanction at all. District courts are accorded "broad discretion" in determining whether an untimely disclosure of evidence is substantially justified or harmless. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (citing *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). In their evaluation, district courts are guided by the following factors: "(1) the surprise to the party against whom the evidence would be offered"; "(2) the ability of that party to cure the surprise"; "(3) the extent to which allowing the evidence would disrupt the trial"; "(4) the importance of the evidence"; and "(5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States*, 318 F.3d at 597. "The first four factors listed above relate primarily to the harmlessness exception." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (citing *Southern States*, 318 F.3d at 597).

With regard to the first and second factors, any surprise from the late disclosure was "minimal" and did not impact Plaintiffs' "ability to conduct its [case] in any material respect." *Bresler*, 855 F.3d at 193-94. The video does not include sound, and Ms. Grey's allegations were, and continue to be, that she was verbally harassed, not physically harassed. Moreover, Ms. Grey's allegations are that the alleged verbal harassment of June 28, 2024, was part of a pattern of conduct (and Plaintiffs never amended their Complaint to assert allegations concerning this incident). Further, DPSCS Defendants timely produced the contemporaneous written statements of the officers who either were involved or witnessed the transport of Ms. Grey on June 28, 2024. ECF No. 180-3. Any of these officers could have been deposed – and still could be deposed – regarding their witness accounts "to mitigate the purported surprise caused by the [] delayed disclosure."

*Bresler*, 855 F.3d at 194.  Significantly, Ms. Grey is also a witness to the incident and never prepared a sworn statement, affidavit, or other documentation of the incident.

As to the third and fourth factors, there is no disruption to trial (regardless of which party offers the evidence), because trial is long in the future and discovery is ongoing.  Even as of the time of filing of the Motion prior to the latest amendment of the scheduling order, the deadline for Plaintiffs to amend their pleadings had not passed. ECF 174.  Discovery will remain open for many months and trial is not scheduled yet.  ECF 190.  Any potential disruption and surprise, as discussed above, may be mitigated by depositions or further discovery.  Finally, the importance of the video is objectively low.  The video does not capture any audio of a verbal assault as asserted by Ms. Grey, and is not claimed to reflect a unique action or any action that Plaintiffs deemed important enough to include in their pleadings.  The failure to provide the video between May 7, 2025, and February 18, 2026, is "harmless" and does not warrant sanctions, including sanctions of attorney's fees.

The fifth factor, "addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception" in Rule 27(c).  *Bresler*, 855 F.2d at 190 (citing *Southern States*, 318 F.3d at 597).  To avoid the imposition of costs and attorney's fees under Rule 37(c), "parties must sufficiently argue that they were substantially justified in their actions." *Kemp v. Harris,* 263 F.R.D. 293, 297 (D. Md. 2009).  A party "satisfies the 'substantially justified' standard 'if there is a "genuine dispute as to proper resolution or if a reasonable person could think [that the failure to produce discovery is] correct, that is, if it has a reasonable basis in law and fact.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 365 (D. Md. 2012) (quoting *Decision Insights, Inc. v. Sentia Grp., Inc.,* 311 Fed.Appx. 586, 599 (4th Cir. 2009) (citation and internal quotation marks omitted)). Here, the late disclosure was not willful, intended to mislead, or intended to cause

10

delay or prejudice (which, as explained above, it did not). Additionally, the delay in production was rectified as soon as possible. *See* Exhibit 2. Therefore, "a reasonable person could think" that this temporary oversight despite diligent investigation (and immediate correction) had "a reasonable basis." *Lynn*, 285 F.R.D. at 365. Although the delay is regrettable, it was substantially justified.

### 2. Even If This Court Determines a Violation of Rule 37(c), No Sanctions Are Appropriate.

However, if this Court is not satisfied that the delayed production of the June 28, 2024, video was harmless or substantially justified, the Fourth Circuit has developed a four-part test for a district court to use when determining what sanctions to impose under Rule 37. The court must determine: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians,* 155 F.3d 500, 504 (4th Cir. 1998).

As to the first consideration, there is no basis to conclude that Defendants or their counsel acted in bad faith because they reasonably and honestly believed, after a thorough investigation, that the video had been destroyed in the year between the incident and Plaintiffs' discovery requests. Further, courts have found that even when counsel should have been aware of an discovery violation, but were not, there is no justification for a finding of bad faith. *See Samsung Elecs. Co. v. Nvidia Corp.,* 314 F.R.D. 190, 201 (E.D. Va. 2016)("The record is clear that, although [] counsel should have been aware of the violation, they were not" and "in fact, they believed that they were acting in compliance with their obligations." (finding no bad faith)). Therefore, like in *Samsung,* "[a]lthough the failure to disclose was a violation . . . , it was an honest mistake." *Id.* Indeed, in *Samsung*, the violation was not discovered until trial, where here the late disclosure was

11

discovered with months left in discovery. This informs consideration of the second factor, i.e. prejudice. Again, as explained above, there is little to no prejudice to Plaintiffs for the delayed receipt of a video (1) that is of limited utility, (2) that relates to only one Plaintiff's allegation which was also not placed at issue in the Complaint; (3) whose content could be approximated by testimony of Ms. Grey and the officer statements already produced in discovery (or the deposition of these officers, should Plaintiffs choose); and (4) that does not in any way affect its use in motions or, when scheduled, at trial. ECF 190. There is no need for deterrence of this non-compliance, as it is impossible to deter or control for honest mistakes despite thorough mining of relevant discovery material, and sanctions will not be effective for the same reason.

None of the five *Southern States* factors weigh in favor of finding a sanctionable violation, and even if they did, no sanction is appropriate under *Anderson. See Anderson,* 155 F.3d at 504; *Southern States*, 318 F.3d at 597. For this reason, the Motion must be denied.

**C. Plaintiffs' Claim For Attorneys' Fees Is Unsupported and Not Reasonable.**

Even if this Court finds that Plaintiffs clear the hurdles of *Southern States,* 318 F.3d at 597, and *Anderson,* 155 F.3d at 504, their request for the "$16,471.50 (for 31.9 hours of work)" they allege were "incurred pursuing this spoliation motion" is unreasonable. *See* Exhibit 2. Plaintiffs allege that these fees are "for meeting and conferring with Defendants' counsel regarding the video and for filing this motion," but did not submit an itemization of their amount of fees either to the Court with their Motion[8] or with their refusal of Defendants' request for Plaintiffs to withdraw the moot Motion. *See Lismont v. Alexander Binzel Corp*., 47 F. Supp. 3d. 443, 449-50 (E.D. 2014)

---

[8] As part of Plaintiffs' proposed order, Plaintiffs state that they will provide a declaration of their itemization of their fees within 14 days, which will undoubtedly require additional expenditure of attorney's fees.

(citing *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) ("The party requesting fees bears the burden of demonstrating the reasonableness of what it seeks to recover.")

Moreover, the Motion is eleven pages, barely seven and a half of which contain argument. Even if it did take Plaintiffs' counsel nearly 32 hours to prepare the Motion, such expenditure of nearly three hours of attorney time per page is unreasonable on its face. *See Lismont*, 47 F. Supp. 3d. at 451 (finding that the plaintiff's attorney's fees related to a protective order in a patent case to be excessive because although counsel prepared an extensive and relatively complex protective order, the order and 10-page motion should not have taken 38.5 hours to complete by two professional attorneys when the arguments "were straight-forward and uncontroversial.") To the extent that additional counsel time was spent attending a single meet and confer on August 13, 2025, these meetings covered several issues in dispute, and only "one of the matters [the parties] discussed" was the alleged spoliation. *See* ECF 180-5, ¶ 2; *Doe v. Kidd*, 656 Fed. App'x. 643, 656 (4th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'") Plaintiffs' request is unjustified, *see* Section IV.B, above, and absent additional substantiation of the enormous amount of fees, remains unsupported. Most importantly, the Motion, seeking an adverse inference at trial, was filed months before expert deadlines, months before the end of discovery, without any trial date, and before the deadline to amend claims has even passed. ECF 174, 190.

Finally, even if the filing of the Motion indirectly led to the discovery of the preserved video, this does not warrant an award of fees. Analogously, under Rule 37, "if requested discovery is provided after a motion to compel is filed, unless an exception applies, the court must 'require the party ... whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A). However,

"an award of fees is not mandatory, despite the submission of discovery responses after filing a motion to compel" in three excepted circumstances, including when "'the opposing party's nondisclosure, response, or objection was substantially justified.'" *Lynn*, 285 F.R.D. at 365 (internal cites to Rule 37(a)(5)(A)(ii)). DPSCS Defendants have, and have continued to fulfill their continuing obligations in discovery, and as explained above, their "honest mistake" was substantially justified. *See Samsung Elecs. Co.,* 314 F.R.D. at 201; *see also* Exhibit 2.

WHEREFORE, for the reasons set forth in their response, the DPSCS Defendants respectfully request that this Court deny Plaintiffs' Motion.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

  /s/ Merrilyn E. Ratliff
MERRILYN E. RATLIFF
Assistant Attorney General
Federal Bar No. 30034
6776 Reisterstown Road, Suite 313
Baltimore, Maryland  21215
(410) 585-3947 (Telephone)
(410) 484-5939 (Telefax)
E-mail:  merrilyn.ratliff@maryland.gov

*/s/ Kelly M. Donoho*
KELLY M. DONOHO
Federal Bar No. 30786
Assistant Attorney General
Department of Public Safety and
Correctional Services
6776 Reisterstown Road, Suite 313
Baltimore, Maryland 21215
Tel: (410) 585-3544
Email: kelly.donoho@maryland.gov

*Attorneys for DPSCS Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of February, 2026, a copy of the foregoing was served on all counsel of record by electronic means.

                                                    /s/ Kelly M. Donoho
                                                   KELLY M. DONOHO